1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

9   | MELISSA LOWRY, ADAM ALZALDI,
10  | DWIGHT CHORNOMUD, MELISSA
    | CUEVAS, PAMELA GIARRIZZO, CAROLE
11  | GRANT, CYNTHIA MEUSE, and
    | LATRONYA WILLIAMS, individually and on
12  | behalf of all others similarly situated,

13              Plaintiffs,

14        v.

15  PROCTOR & GAMBLE COMPANY,

16              Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT
011290-11/2966577 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................... 1

II.     JURISDICTION AND VENUE ................................................................ 8

III.    PARTIES ................................................................................................... 9

        A.      Plaintiffs ........................................................................................ 9

                1.      Washington Plaintiff ........................................................ 9

                        a.      Melissa Lowry .......................................................... 9

                2.      California Plaintiffs ........................................................... 9

                        a.      Adam Alzaldi ........................................................... 9

                        b.      Dwight Chornomud ................................................ 10

                        c.      Melissa Cuevas ....................................................... 11

                3.      Illinois Plaintiffs ............................................................. 11

                        a.      Carole Grant ........................................................... 11

                        b.      LaTronya Williams ................................................ 12

                4.      Massachusetts Plaintiffs ................................................. 13

                        a.      Pamela Giarrizzo.................................................... 13

                        b.      Cynthia Meuse ....................................................... 14

        B.      Defendant ..................................................................................... 14

IV.     FACTUAL ALLEGATIONS .................................................................. 15

        A.      Environmental stewardship is a material attribute to consumers .......................... 15

        B.      P&G has also acknowledged that its environmental stewardship claims are material to consumers and can increase Charmin's growth opportunities. ........................ 17

        C.      Companies have developed sophisticated Greenwashing campaigns to leverage the growth opportunities in environmental and sustainability messaging.......................... 18


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

D.    The FTC's "Green Guides" provide critical information to
      consumers, companies, and courts about deceptive environmental-
      themed marketing claims. ........................................................................19

E.    P&G sells more than $2 billion worth of Charmin Toilet Paper
      each year. ..................................................................................................23

F.    P&G regularly touts its claim of environmental stewardship via its
      Greenwashing Campaign for Charmin Toilet Paper.................................23

      1.    P&G relies on its "Keep Forests as Forests" campaign and
            its "Protect-Grow-Restore" messaging at points of sale to
            position Charmin products as environmentally sustainable.....................23

            a.    Charmin Toilet paper packaging at points of sale
                  consistently includes the FSC logo in a prominent
                  location (at the front of the package) ...............................25

            b.    Charmin Toilet Paper packaging at points of sale
                  also consistently includes the "Protect-Grow-
                  Restore" logo. ..................................................................25

      2.    P&G extends the exposure and reach of its Greenwashing
            campaign at digital point of sale locations with national
            retailers................................................................................................26

            a.    Kroger Point-of-Sale Listing for Charmin Ultra
                  Strong Toilet Paper ..........................................................27

            b.    Walmart Point-of-Sale Listing for Charmin Ultra
                  Strong Toilet Paper ..........................................................27

            c.    Costco Point-of-Sale Listing for Charmin Ultra Soft
                  Toilet Paper......................................................................28

            d.    Lowe's Point-of-Sale Listing for Charmin Ultra
                  Soft Toilet Paper ..............................................................29

            e.    Amazon's Point-of-Sale Listing for Charmin Ultra
                  Gentle Toilet Paper ..........................................................30

      3.    P&G also directs consumers to visit its "Charmin
            Sustainability Promise website" which prominently
            features three videos reiterating the "Protect-Grow-
            Restore" message. ...............................................................................32

            a.    The "Protect" video depicts FSC-certified forests in
                  the United States that are owned by small

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

landowners who follow FSC responsible forest
management guidance.................................................................33

b.    The "Grow" video prominently displays the main
FSC and "Rainforest Alliance Certified" logos on
Charmin packaging and promises to replant at least
1-2 new trees for every tree used in its products. .........................33

c.    The "Restore" video promises that P&G will help
plant 1 million trees between 2020 and 2025 in
areas devastated by natural disasters..............................................34

4.    Charmin also produced a viral "Protect Grow Restore"
YouTube video reiterating its key promises to consumers.......................34

G.    P&G also touts its environmental messaging and enforcement
promises to investors........................................................................35

H.    P&G's Greenwashing campaign and "Protect-Grow-Restore"
promises are misleading because of the following
misrepresentations and material omissions.............................................35

1.    P&G's "Protect" promise misleads consumers because
P&G does not disclose that Charmin is sourced from
harvests that rely on industrial logging practices such as
clear cutting and burning of Canada's boreal forest. ...............................35

2.    P&G's "Grow" and "Restore" promises are misleading
because Charmin's suppliers are systematically converting
critically important old growth forests into environmentally
devastating Frankenforests.........................................................37

3.    P&G also misleads consumers at point of sale with
unauthorized and improper use of third-party logos................................39

a.    P&G's use of the FSC logo is misleading and
erroneous........................................................................39

b.    P&G continues to misuse and mislead consumers
regarding its Rainforest Alliance claims........................................40

I.    P&G's Greenwashing campaign and the overall impression of
environmental sustainability on the packaging of Charmin products
misled reasonable consumers and violates the FTC Green Guides. ..................41

J.    P&G has repeatedly promised to fulfill its promises, or to stop
making misleading claims, but has failed to do so. ................................43

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

K.      P&G's competitors demonstrate that more sustainable practices are possible. ................................................................................44

V.     TOLLING OF THE STATUTE OF LIMITATIONS.........................................45

       A.      Discovery rule tolling ....................................................................45

       B.      Fraudulent Concealment Tolling ....................................................46

       C.      Estoppel...........................................................................................46

VI.    CLASS ALLEGATIONS ...........................................................................47

VII.   CLAIMS FOR RELIEF .............................................................................50

       A.      Claims brought on behalf of the Washington Class....................50

COUNT I VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010, *ET SEQ*.) .............................50

COUNT II FRAUDULENT CONCEALMENT (BASED ON WASHINGTON LAW) ......................................................................................................51

       B.      Claims brought on behalf of the Alabama Class .........................52

COUNT III FRAUDULENT CONCEALMENT (BASED ON ALABAMA LAW) ......................................................................................................52

       C.      Claims brought on behalf of the Alaska Class............................53

COUNT IV FRAUDULENT CONCEALMENT (BASED ON ALASKA LAW).......................53

       D.      Claims brought on behalf of the Arizona Class ..........................54

COUNT V VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ARIZONA REV. STAT. § 44-1521, *ET SEQ*.).................................................54

COUNT VI FRAUDULENT CONCEALMENT (BASED ON ARIZONA LAW)....................55

       E.      Claims brought on behalf of the California Class........................56

COUNT VII VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.)...........................................56

COUNT VIII FRAUDULENT CONCEALMENT (BASED ON CALIFORNIA LAW) ......................................................................................................57

       F.      Claims brought on behalf of the Connecticut Class.............................59

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

COUNT IX VIOLATION OF THE CONNECTICUT UNFAIR  TRADE
PRACTICES ACT (CONN. GEN. STAT. § 42-110A, *ET SEQ.*) ...................................59

COUNT X FRAUDULENT CONCEALMENT (BASED ON CONNECTICUT
LAW) ..........................................................................................................59

    G.    Claims brought on behalf of the District of Columbia ("DC")............................60

COUNT XI FRAUDULENT CONCEALMENT (BASED ON DC LAW) ................................60

    H.    Claims brought on behalf of the Florida Class ......................................................62

COUNT XII FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW) ...................62

    I.    Claims brought on behalf of the Georgia Class.....................................................63

COUNT XIII FRAUDULENT CONCEALMENT (BASED ON GEORGIA
LAW) ..........................................................................................................63

    J.    Claims brought on behalf of the Idaho Class........................................................64

COUNT XIV VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CODE ANN. § 48-601, *ET SEQ.*) ........................................................64

COUNT XV FRAUDULENT CONCEALMENT (BASED ON IDAHO LAW).......................65

    K.    Claims brought on behalf of the Illinois Class......................................................66

COUNT XVI VIOLATION OF THE ILLINOIS CONSUMER FRAUD  AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ.*
AND 720 ILCS 295/1A) ..................................................................................66

COUNT XVII FRAUD BY CONCEALMENT (BASED ON ILLINOIS LAW) ......................67

    L.    Claims brought on behalf of the Indiana Class......................................................69

COUNT XVIII FRAUDULENT CONCEALMENT (BASED ON INDIANA
LAW) ..........................................................................................................69

    M.    Claims brought on behalf of the Maine Class.......................................................70

COUNT XIX FRAUDULENT CONCEALMENT (BASED ON MAINE LAW).....................70

    N.    Claim brought on behalf of the Maryland Class....................................................71

COUNT XX VIOLATION OF THE MARYLAND CONSUMER PROTECTION
ACT (MD. CODE, COM. LAW § 13-101, *ET SEQ.*))........................................71

COUNT XXI FRAUDULENT CONCEALMENT (BASED ON MARYLAND
LAW) ..........................................................................................................72



1     O.     Claim brought on behalf of the Massachusetts Class ...........................................73

COUNT XXII FRAUD BY CONCEALMENT (BASED ON
MASSACHUSETTS LAW) ..........................................................................73

P.     Claim brought on behalf of the Michigan Class ...................................................74

COUNT XXIII VIOLATION OF THE MICHIGAN CONSUMER
PROTECTION ACT (MICH. COMP. LAWS § 445.903, *ET SEQ.*)..............................74

COUNT XXIV FRAUDULENT CONCEALMENT (BASED ON MICHIGAN
LAW) ....................................................................................................75

Q.     Claims brought on behalf of the Minnesota Class .................................................76

COUNT XXV VIOLATIONS OF MINNESOTA DECEPTIVE TRADE
PRACTICES; ENVIRONMENTAL MARKETING CLAIMS (MINN.
STAT. § 325E.41, *ET SEQ.*)..........................................................................76

COUNT XXVI FRAUDULENT CONCEALMENT (BASED ON MINNESOTA
LAW) ....................................................................................................78

R.     Claims brought on behalf of the Montana Class.....................................................80

COUNT XXVII VIOLATION OF THE MONTANA UNFAIR TRADE
PRACTICES  AND CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101, *ET SEQ.*).....................................................80

COUNT XXVIII FRAUDULENT CONCEALMENT (BASED ON MONTANA
LAW) ....................................................................................................80

S.     Claims brought on behalf of the New Hampshire Class.......................................82

COUNT XXIX VIOLATION OF THE NEW HAMPSHIRE CONSUMER
PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*))..........................82

COUNT XXX FRAUDULENT CONCEALMENT (BASED ON NEW
HAMPSHIRE LAW) ....................................................................................82

T.     Claims on behalf of the New Mexico Class.........................................................84

COUNT XXXI VIOLATION OF THE NEW MEXICO UNFAIR TRADE
PRACTICES ACT (N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.*)..................................84

COUNT XXXII FRAUDULENT CONCEALMENT (BASED ON NEW
MEXICO LAW) ........................................................................................84

U.     Claims brought on behalf of the New York Class .................................................86

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COUNT XXXIII VIOLATION OF THE NEW YORK GENERAL BUSINESS
    LAW §§ 349-350 (N.Y. GEN. BUS. LAW §§ 349-350) ...................................................86

COUNT XXXIV FRAUDULENT CONCEALMENT (BASED ON NEW YORK
    LAW) ...............................................................................................................................86

    V.      Claims brought on behalf of the Ohio Class ...........................................................88

COUNT XXXV VIOLATION OF THE OHIO CONSUMER SALES
    PRACTICES ACT (OHIO REV. CODE ANN. § 1345.01, *ET SEQ*.) ...............................88

COUNT XXXVI FRAUDULENT CONCEALMENT (BASED ON OHIO LAW) ...................88

    W.    Claims brought on behalf of the Pennsylvania Class...............................................90

COUNT XXXVII VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
    PRACTICES  AND CONSUMER PROTECTION LAW (73 PA. CONS.
    STAT. § 201-1, *ET SEQ*.) ..............................................................................................90

COUNT XXXVIII FRAUDULENT CONCEALMENT (BASED ON
    PENNSYLVANIA LAW) ..................................................................................................90

    X.      Claims brought on behalf of the South Carolina Class...........................................92

COUNT XXXIX VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE
    PRACTICES ACT (S.C. CODE ANN. § 39-5-10, *ET SEQ*.) ...........................................92

COUNT XL FRAUDULENT CONCEALMENT (BASED ON SOUTH
    CAROLINA LAW) ...........................................................................................................92

    Y.      Claims brought on behalf of the Tennessee Class ..................................................94

COUNT XLI VIOLATION OF THE TENNESSEE CONSUMER PROTECTION
    ACT (TENN. CODE ANN. § 47-18-101, ***ET SEQ***.) ...........................................94

COUNT XLII FRAUDULENT CONCEALMENT (BASED ON TENNESSEE
    LAW) ...............................................................................................................................94

    Z.      Claims brought on behalf of the Texas Class ........................................................96

COUNT XLIII FRAUDULENT CONCEALMENT (BASED ON TEXAS LAW)....................96

    AA.    Claims brought on behalf of the Utah Class ..........................................................97

COUNT XLIV VIOLATION OF THE UTAH CONSUMER SALE PRACTICES
    ACT (UTAH CODE ANN. § 13-11-1, *ET SEQ*.) ............................................................97

COUNT XLV FRAUDULENT CONCEALMENT (BASED ON UTAH LAW) ......................98

    BB.    Claims brought on behalf of the Vermont Class....................................................99

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

2

COUNT XLVI VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
        (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ*.)........................................................99

3

COUNT XLVII FRAUDULENT CONCEALMENT (BASED ON VERMONT
        LAW).....................................................................................................................99

4

        CC.    Claims brought on behalf of the West Virginia Class ........................100

5

6

COUNT XLVIII FRAUDULENT CONCEALMENT (BASED ON WEST
        VIRGINIA LAW)...............................................................................................100

7

PRAYER FOR RELIEF ...........................................................................................102

8

DEMAND FOR JURY TRIAL ................................................................................102

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Melissa Lowry, Adam Alzaldi, Dwight Chornomud, Melissa Cuevas, Pamela Giarrizzo, Carole Grant, Cynthia Meuse, and LaTronya Williams, individually and on behalf of all others similarly situated, allege the following:

## I.     INTRODUCTION

1.       This is a greenwashing case involving one of the biggest consumer good companies in the world who, for years, has been complicit in the clear cutting of untouched ancient primary forests in order to sell billions of dollars of single use toilet paper – all the while reassuring consumers with false claims that it was helping to regrow and restore these unique forests.

2.       In truth, Proctor & Gamble Company ("P&G") sources its Charmin from the Canadian boreal forest which is one of the most important biological ecosystems in the world. Below is an area where P&G has sourced Charmin and such destruction is completely at odds with the environmental claims made to consumers by P&G at the point of sale and elsewhere:



3.       P&G manufactures a vast majority of consumer goods, including Charmin Toilet Paper.[1] P&G sells around $2 billion of Charmin a year and it currently enjoys around 25% of the

---

[1] Charmin Toilet Paper or Charmin means toilet tissue products made by P&G under the brands Charmin Ultra Soft, Charmin Ultra Strong, Charmin Ultra Gentle, Charmin Essentials Soft, and Charmin Essential Strong brands.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

1  North American market share for toilet paper.[2] Indeed, according to U.S. Census data, more than

2  86 million Americans used Charmin Ultra in the year 2020 alone.

3      4.      P&G's success in selling billions of dollars of Charmin Toilet Paper is due in part

4  to it environmental stewardship claims. A large portion of consumers increasingly care about the

5  environmental impact of products when making purchasing decisions, with many stating they are

6  willing to pay more for sustainable options and prioritize brands with environmentally conscious

7  practices. According to a joint study by McKinsey & Company and NielsenIQ entitled

8  "Consumers Care About Sustainability and Back it Up with Their Wallets" (hereinafter

9  "McKinsey study"), a staggering 60% of U.S. consumers disclosed that they care about buying

10 environmentally and ethically sustainable products.[3] The McKinsey study also found that "a

11 wide range of consumers across incomes, life stages, ages, races, and geographies are buying

12 products bearing ESG[4]-related labels." Moreover, other studies show that consumers are even

13 willing to pay a premium of around 9-10% for sustainably produced or sourced goods, even

14 when facing inflationary and cost-of-living headwinds.

15      5.      In light of these trends, companies are increasingly allocating time, attention, and

16 resources to position their products and supply chains as environmentally responsible. And P&G

17 is no exception. P&G relies on an umbrella campaign entitled "Keep Forests as Forests" to

18 consistently disseminate its environmental sustainability claims to consumers as depicted below:



---

[2] https://www.statista.com/statistics/188710/top-toilet-tissue-brands-in-the-united-states/

[3] https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets#/

[4] ESG-related labels mean labels that connote a company's claims regarding its environmental, social, or governance issues.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

6.      The "***Keep Forests as Forests***" campaign makes three promises to consumers at points of sale by leveraging the "Protect-Grow-Restore" logo. ***For its "Protect" promise, Charmin claims to only use pulp certified by the Forest Stewardship Council or "FSC."*** The Forest Stewardship Council ("FSC") is an international non-profit that promotes responsible forest management by offering a forest certification system for forests and forest products. ***For its "Grow" promise, Charmin promises that "for every tree used at least two are regrown in its place"*** and suggests that the Company is helping to replace the highly biodiverse boreal forest it actually uses via thoughtful and effective replanting efforts. ***For its "Restore" promise, Charmin touts its partnership with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters.***



7.      To reinforce the "Protect-Grow-Restore" promises to consumers at point of sale, P&G consistently includes a uniform "Protect-Grow-Restore" logo on all of its Charmin Toilet Paper packages. It also uses the logo of third-party certification entities, like the FSC and the Rainforest Alliance, who evaluate and support responsible forest management practices.



  

 

8.      P&G also extends the reach of its "Keep Forests as Forests" and "Protect-Grow-Restore" messaging with consistent and persistent displays at digital points of sale. For example, P&G relies on a robust network of retailers like Kroger, Costco, Amazon, Walmart and others to make Charmin available for sale in all 50 states and territories via their online selling platforms. According to the websites of these retailers, manufacturers like P&G are responsible for supplying the images, layout, and all "product detail" and "thumbnail" information to market the product on the retailer's webpage. Below are examples from some of the nation's leading retailers consistently displaying these "Protect-Grow-Restore" and "Keep Forests as Forests" messages, as recently as January 2025, which helps position Charmin to be perceived as environmentally responsible.

## Charmin Beyond The Roll









**FSC™ Certified**

We only use pulp certified by the Forest Stewardship Council® and support FSC® in their work to increase adoption of FSC products. These standards ensure that we are protecting wildlife and contributing to thriving local communities.

**Protect, Grow and Restore**

At Charmin, we are committed to making our toilet paper work hard to make a sustainable difference. 100% of our paper comes from responsibly managed forests.

**Forest Restoration**

P&G and Charmin are partnering with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters, like wildfires or hurricanes.

## Product Details



Get sparkly clean with Charmin Ultra Strong. Its 4X stronger when wet and has a diamond-weave texture. Its woven like a washcloth and holds up when you wipe. It even cleans better so you can use less and go longer without changing the roll. We also made it MEGA in size, so you get mega value. Thats right, our Charmin Ultra Strong Mega Roll is way bigger, equals 4 regular rolls, and its more bang for your behind so youll be running back to the store less and less (based on number of sheets in Charmin Regular Roll bath tissue). Our Charmin Ultra Strong toilet paper is also 2-ply and designed to be clog-safe and septic-safe so you can flush confidentially and keep clean. And at Charmin, we love trees so we work hard to protect, grow and restore forests. Its why all our pulp used is 100% FSC certified. Its why we plant two trees for every one used. And its why we help to restore forests devastated by natural disaster through the Arbor Day Foundation. Thats how were helping keep forests, forests. We all go, why not Enjoy The Go with Americas favorite toilet paper.

9.      P&G also claims that it enforces sustainable practices in its supply chain via its Forest Commodities Policy, and that this policy prohibits suppliers from relying on deforestation logging practices and converting intact forest into much less biodiverse "tree plantations."

10.      ***Unfortunately, P&G's environmental claims to "Keep Forests as Forests" and its commitment to "Protect-Grow-Restore" trees amounts to nothing more than greenwashing.*** "greenwashing" is the act of misleading consumers regarding the environmental practices of a company or a product. Greenwashing occurs when a company positions itself (or a specific product) as having a positive influence on environmental issues, when in reality, the company (or product) is either exaggerating its influence and/or actively engaging in negative environmental practices that do not align with its previously touted green goals. For example, P&G's "Protect" promise misleads consumers because P&G does not disclose that Charmin is sourced from harvests that rely on harmful logging practices such as clear cutting and burning of Canada's boreal forest—an ecological jewel and one of the last intact forests left in the world. Below are some examples of harvests through which P&G sources its wood pulp.

 

11.      P&G's "Grow" and "Restore" promises are also misleading because Charmin's suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests. More specifically, P&G's messaging about replanting 1-2 trees for every tree used in its products intentionally misleads consumers to believe that its Charmin suppliers are converting the specific boreal forest areas logged with replanting activities that mimic the intact, biodiverse ecosystem that was there before P&G's harvesting occurred. But P&G fails to disclose that, in reality, its suppliers are replanting single species conifers, evenly spaced, and then cover these trees with chemical herbicides to intentionally eliminate all growth other than just a handful of tree species most valuable for logging. Below are some examples of these practices.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

 

12.     Finally, P&G's use of the FSC and the Rainforest Alliance logos are misleading and erroneous. In the case of the FSC logo, P&G continues to put the "Main FSC" logo on the front of its packaging, and tout that "100%" of its wood pulp is FSC-certified, even though only a small fraction of P&G's pulp is sourced from FSC-certified forests. Similarly, as described below, P&G currently displays the "Rainforest Alliance Certified" logo on many consumer facing marketing materials, but this seal is now obsolete because the Rainforest Alliance ceased its certification program years ago, and does not even operate in Canada's boreal forest.

13.     ***All of these misleading claims and P&G's broken promises are clear violations of the FTC Green Guides.*** Developed by the Federal Trade Commission, the Green Guides are designed to help marketers avoid making environmental marketing claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45. The Green Guides also play a large role in state consumer protection law. At least twelve states[5] have laws that directly incorporate the standards set forth in the Green Guides as the legal standard for lawfully making certain marketing claims[6] and twenty-seven states and territories[7] have laws designating the FTC's interpretation in the Green Guides as persuasive authority for courts.. As explained more fully

---

[5] These states are Alabama, California, Florida, Indiana, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, Pennsylvania, Rhode Island, and Washington.

[6] April 24, 2023, Comments to FTC re Green Guides from the states of California, Connecticut, Delaware, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island and Wisconsin. https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf

[7] These are Alabama, Alaska, Arizona, Connecticut, District of Columbia, District of Guam, Florida, Idaho, Georgia, Illinois, Maine, Maryland, Massachusetts, Michigan, Montana, New Hampshire, New Mexico, Ohio, South Carolina, Rhode Island, Texas Tennessee, Utah, Vermont, Washington, and West Virginia.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  below, P&G's "Keep Forests as Forests" Campaign and packaging practices violates multiple

2  sections of the FTC Green Guides.

3        14.     In spite of P&G's clearly misleading claims and Green Guide valuations, P&G

4  refuses to act to either conform its environmental practices to be consistent with what it is telling

5  consumers—or admit to its reliance on environmentally devastating activities. And while there

6  has been some activity at the shareholder level—even the descendants of the Procter and Gamble

7  families have strongly criticized P&G's practices—P&G continues to dismiss shareholder

8  concerns and ignore major environmental issues in its supply chains. Plaintiffs therefore have no

9  choice but to seek judicial intervention to render P&G accountable for its egregious

10  environmental destruction of the largest intact forest in the world and stop hiding behind their

11  false and misleading claims of environmental stewardship.

12        15.     This is a proposed class action seeking damages and injunctive relief based on the

13  consumer protection law and common law of concealment of various states as defined below

14                        **II.        JURISDICTION AND VENUE**

15        16.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28

16  U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in

17  controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

18  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.

19  § 1367.

20        17.     Venue is proper in this District under 28 U.S.C. § 1367 because a substantial part

21  of the events or omissions and misrepresentations giving rise to Plaintiffs' claims occurred in this

22  District. Plaintiff Lowry purchased her Charmin Toilet Paper in this District and P&G has

23  marketed, advertised, and made available for sale Charmin Toilet Paper within this District.

24

25

26

27

28

III.    PARTIES

**A.    Plaintiffs**

    **1.    Washington Plaintiff**

        **a.    Melissa Lowry**

18.    Plaintiff Melissa Lowry (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington domiciled in Eastsound, Washington.  Over approximately the past 20 years, Plaintiff has routinely purchased Charmin Toilet Paper from Costco in Washington.  Prior to purchasing Charmin, Plaintiff viewed advertisements touting the "sustainability" of Charmin Toilet Paper like those included in this Class Action Complaint. Plaintiff selected and ultimately purchased the products, in part, because of these "sustainability" claims, as represented through advertisements and representations made by Defendant.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that Defendant's practices permanently degrade the environment as described in this Class Action Complaint. As a result, it was unknown to Plaintiff that Defendant was sourcing its pulp from environmentally devastating clear-cutting sources and doing little to restore the forest to the same level of biodiversity as before the logging occurred. Had Defendant disclosed these practices, Plaintiff would not have purchased the products or would have paid less for them. Defendant's unfair, unlawful, and deceptive conduct in manufacturing, marketing, and selling Charmin as environmentally beneficial has caused Plaintiff out-of-pocket loss. Defendant knew that the products were not environmentally beneficial but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased the products on the reasonable, but mistaken belief that Charmin was "sustainable" or environmentally beneficial.

    **2.    California Plaintiffs**

        **a.    Adam Alzaldi**

19.    Plaintiff Adam Alzaldi (for the purpose of this paragraph, "Plaintiff") is a citizen of California domiciled in Santa Rosa, California.  From approximately October 2019 to January 2024, Plaintiff routinely purchased Charmin Toilet Paper from Amazon and Safeway stores in California.  Prior to purchasing Charmin, Plaintiff viewed advertisements touting the

"sustainability" of Charmin Toilet Paper like those included in this Class Action Complaint. Plaintiff selected and ultimately purchased the products, in part, because of these "sustainability" claims, as represented through advertisements and representations made by Defendant. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that Defendant's practices permanently degrade the environment as described in this Class Action Complaint. As a result, it was unknown to Plaintiff that Defendant was sourcing its pulp from environmentally devastating clear-cutting sources and doing little to restore the forest to the same level of biodiversity as before the logging occurred. Had Defendant disclosed these practices, Plaintiff would not have purchased the products or would have paid less for them. Defendant's unfair, unlawful, and deceptive conduct in manufacturing, marketing, and selling Charmin as environmentally beneficial has caused Plaintiff out-of-pocket loss. Defendant knew that the products were not environmentally beneficial but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased the products on the reasonable, but mistaken belief that Charmin was "sustainable" or environmentally beneficial.

### b.    Dwight Chornomud

20.    Plaintiff Dwight Chornomud (for the purposes of this paragraph, "Plaintiff") is a citizen of California domiciled in Riverside, California. From approximately 2018 to 2024, Plaintiff routinely purchased Charmin Toilet Paper from Costco Wholesale stores in California.  Prior to purchasing Charmin, Plaintiff viewed advertisements touting the "sustainability" of Charmin Toilet Paper like those included in this Class Action Complaint. Plaintiff selected and ultimately purchased the products, in part, because of these "sustainability" claims, as represented through advertisements and representations made by Defendant. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that Defendant's practices permanently degrade the environment as described in this Class Action Complaint. As a result, it was unknown to Plaintiff that Defendant was sourcing its pulp from environmentally devastating clear-cutting sources and doing little to restore the forest to the same level of biodiversity as before the logging occurred. Had Defendant disclosed these practices, Plaintiff would not have purchased the products or would have paid less for them.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  Defendant's unfair, unlawful, and deceptive conduct in manufacturing, marketing, and selling

2  Charmin as environmentally beneficial has caused Plaintiff out-of-pocket loss. Defendant knew

3  that the products were not environmentally beneficial but did not disclose such facts or their

4  effects to Plaintiff, so Plaintiff purchased the products on the reasonable, but mistaken belief that

5  Charmin was "sustainable" or environmentally beneficial.

6              **c.    Melissa Cuevas**

7      21.    Plaintiff Melissa Cuevas (for the purpose of this paragraph, "Plaintiff") is a

8  citizen of California domiciled in Colton, California.  From approximately 2014 to December

9  2024, Plaintiff routinely purchased Charmin Toilet Paper from Walmart and Stater Bros. in

10 California.  Prior to purchasing Charmin, Plaintiff viewed advertisements touting the

11 "sustainability" of Charmin Toilet Paper like those included in this Class Action Complaint.

12 Plaintiff selected and ultimately purchased the products, in part, because of these "sustainability"

13 claims, as represented through advertisements and representations made by Defendant. None of

14 the advertisements reviewed or representations received by Plaintiff contained any disclosure

15 that Defendant's practices permanently degrade the environment as described in this Class

16 Action Complaint. As a result, it was unknown to Plaintiff that Defendant was sourcing its pulp

17 from environmentally devastating clear-cutting sources and doing little to restore the forest to the

18 same level of biodiversity as before the logging occurred. Had Defendant disclosed these

19 practices, Plaintiff would not have purchased the products or would have paid less for them.

20 Defendant's unfair, unlawful, and deceptive conduct in manufacturing, marketing, and selling

21 Charmin as environmentally beneficial has caused Plaintiff out-of-pocket loss. Defendant knew

22 that the products were not environmentally beneficial but did not disclose such facts or their

23 effects to Plaintiff, so Plaintiff purchased the products on the reasonable, but mistaken belief that

24 Charmin was "sustainable" or environmentally beneficial.

25          **3.    Illinois Plaintiffs**

26              **a.    Carole Grant**

27      22.    Plaintiff Carole Grant (for the purpose of this paragraph, "Plaintiff") is a citizen of

28 Illinois domiciled in Chicago, Illinois.  For approximately more than 20 years, Plaintiff has

1  routinely purchased Charmin Toilet Paper from Walmart and Walgreens stores in Illinois.  Prior
2  to purchasing Charmin, Plaintiff viewed advertisements touting the "sustainability" of Charmin
3  Toilet Paper like those included in this Class Action Complaint. Plaintiff selected and ultimately
4  purchased the products, in part, because of these "sustainability" claims, as represented through
5  advertisements and representations made by Defendant. None of the advertisements reviewed or
6  representations received by Plaintiff contained any disclosure that Defendant's practices
7  permanently degrade the environment as described in this Class Action Complaint. As a result, it
8  was unknown to Plaintiff that Defendant was sourcing its pulp from environmentally devastating
9  clear-cutting sources and doing little to restore the forest to the same level of biodiversity as
10  before the logging occurred. Had Defendant disclosed these practices, Plaintiff would not have
11  purchased the products or would have paid less for them. Defendant's unfair, unlawful, and
12  deceptive conduct in manufacturing, marketing, and selling Charmin as environmentally
13  beneficial has caused Plaintiff out-of-pocket loss. Defendant knew that the products were not
14  environmentally beneficial but did not disclose such facts or their effects to Plaintiff, so Plaintiff
15  purchased the products on the reasonable, but mistaken belief that Charmin was "sustainable" or
16  environmentally beneficial.

17  **b.    LaTronya Williams**

18  23.    Plaintiff LaTronya Williams (for the purpose of this paragraph, "Plaintiff") is a
19  citizen of Illinois domiciled in Chicago, Illinois.  From approximately 2015 to January 2025,
20  Plaintiff routinely purchased Charmin Toilet Paper from Walmart, Walgreens, Target, Family
21  Dollar, and Dollar General in Illinois.  Prior to purchasing Charmin, Plaintiff viewed
22  advertisements touting the "sustainability" of Charmin Toilet Paper like those included in this
23  Class Action Complaint. Plaintiff selected and ultimately purchased the products, in part,
24  because of these "sustainability" claims, as represented through advertisements and
25  representations made by Defendant. None of the advertisements reviewed or representations
26  received by Plaintiff contained any disclosure that Defendant's practices permanently degrade
27  the environment as described in this Class Action Complaint. As a result, it was unknown to
28  Plaintiff that Defendant was sourcing its pulp from environmentally devastating clear-cutting

1    sources and doing little to restore the forest to the same level of biodiversity as before the

2    logging occurred. Had Defendant disclosed these practices, Plaintiff would not have purchased

3    the products or would have paid less for them. Defendant's unfair, unlawful, and deceptive

4    conduct in manufacturing, marketing, and selling Charmin as environmentally beneficial has

5    caused Plaintiff out-of-pocket loss. Defendant knew that the products were not environmentally

6    beneficial but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased the

7    products on the reasonable, but mistaken belief that Charmin was "sustainable" or

8    environmentally beneficial.

9        **4.    Massachusetts Plaintiffs**

10               **a.    Pamela Giarrizzo**

11       24.    Plaintiff Pamela Giarrizzo (for the purpose of this paragraph, "Plaintiff") is a

12   citizen of Massachusetts domiciled in Lakeville, Massachusetts.  From approximately 2012 to

13   January 2025, Plaintiff routinely purchased Charmin Toilet Paper from Walgreens in

14   Massachusetts.  Prior to purchasing Charmin, Plaintiff viewed advertisements touting the

15   "sustainability" of Charmin Toilet Paper like those included in this Class Action Complaint.

16   Plaintiff selected and ultimately purchased the products, in part, because of these "sustainability"

17   claims, as represented through advertisements and representations made by Defendant. None of

18   the advertisements reviewed or representations received by Plaintiff contained any disclosure

19   that Defendant's practices permanently degrade the environment as described in this Class

20   Action Complaint. As a result, it was unknown to Plaintiff that Defendant was sourcing its pulp

21   from environmentally devastating clear-cutting sources and doing little to restore the forest to the

22   same level of biodiversity as before the logging occurred. Had Defendant disclosed these

23   practices, Plaintiff would not have purchased the products or would have paid less for them.

24   Defendant's unfair, unlawful, and deceptive conduct in manufacturing, marketing, and selling

25   Charmin as environmentally beneficial has caused Plaintiff out-of-pocket loss. Defendant knew

26   that the products were not environmentally beneficial but did not disclose such facts or their

27   effects to Plaintiff, so Plaintiff purchased the products on the reasonable, but mistaken belief that

28   Charmin was "sustainable" or environmentally beneficial.

**b.    Cynthia Meuse**

25.    Plaintiff Cynthia Meuse (for the purpose of this paragraph, "Plaintiff") is a citizen of Massachusetts domiciled in Middlesex, Massachusetts.  From approximately 2018 to January 2025, Plaintiff routinely purchased Charmin Toilet Paper from Target stores in Massachusetts. Prior to purchasing Charmin, Plaintiff viewed advertisements touting the "sustainability" of Charmin Toilet Paper like those included in this Class Action Complaint. Plaintiff selected and ultimately purchased the products, in part, because of these "sustainability" claims, as represented through advertisements and representations made by Defendant. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that Defendant's practices permanently degrade the environment as described in this Class Action Complaint. As a result, it was unknown to Plaintiff that Defendant was sourcing its pulp from environmentally devastating clear-cutting sources and doing little to restore the forest to the same level of biodiversity as before the logging occurred. Had Defendant disclosed these practices, Plaintiff would not have purchased the products or would have paid less for them. Defendant's unfair, unlawful, and deceptive conduct in manufacturing, marketing, and selling Charmin as environmentally beneficial has caused Plaintiff out-of-pocket loss. Defendant knew that the products were not environmentally beneficial but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased the products on the reasonable, but mistaken belief that Charmin was "sustainable" or environmentally beneficial..

**B.    Defendant**

26.    Proctor & Gamble Company ("P&G") is an American multinational consumer goods corporation doing business in all 50 states and the District of Columbia and is organized under the laws of the state of Ohio, with its principal place of business in Cincinnati, Ohio. P&G is the largest consumer goods company in the world and in 2024 had net sales of $84 billion, with 52 percent of that revenue coming from sales in North America. At all times relevant to this action, P&G manufactured and made available for sale Charmin Toilet Paper throughout the United States. P&G also created, designed, and disseminated information about the supply chain for Charmin Toilet Paper and P&G's commitment to environmental stewardship for the express

CLASS ACTION COMPLAINT - 14
011290-11/2966577 V1

1    purpose of having that information reach potential consumers. P&G also designed and

2    manufactured packaging for Charmin Toilet Paper with uniform logos regarding P&G's

3    environmental stewardship for the express purpose of having that information reach potential

4    consumers. Charmin is one of the top selling brands of toilet paper and it is estimated that P&G

5    sells billions of rolls a year in the United States. As explained more fully herein, Defendant

6    concealed, suppressed and omitted material facts regarding the ancient forest to toilet pipeline.

### IV.     FACTUAL ALLEGATIONS

**A.     Environmental stewardship is a material attribute to consumers.**

9        27.     A large portion of consumers increasingly care about the environmental impact of

10   products when making purchasing decisions, with many stating they are willing to pay more for

11   sustainable options and prioritize brands with environmentally conscious practices. According to

12   the McKinsey study, a staggering 78% of U.S. consumers say that a sustainable lifestyle is

13   important to them, and that more than 60% of U.S. consumers disclosed that they care about

14   buying environmentally and ethically sustainable products.[8] According to the study's authors

15   "the research shows that a wide range of consumers across incomes, life stages, ages, races, and

16   geographies are buying products bearing ESG-related labels."

17       28.     Moreover, as consumers become increasingly aware of the consequences of

18   climate change and environmental degradation, they begin to actively search for and purchase

19   more environmentally friendly products.[9] According to the Economist Intelligence Unit, the

20   number of nature-loss social media posts have grown by 65% on social media platforms like X,

21   and Google searches for sustainable goods increased by 71% over the past ten years.

22       29.     It is also well documented that consumers are willing to pay a premium for

23   products from supply chains that are less environmentally damaging. Price Waterhouse Coopers

24   ("PwC") recently published a survey that found that consumers were willing to spend 9.7%

25   more, on average, for sustainably produced or sourced goods, despite inflation and cost-of-living

---

[8] https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets#/

[9] https://impact.economist.com/sustainability/ecosystems-resources/an-eco-wakening-measuring-global-awareness-engagement-and-action-for-nature

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

1    concerns.[10] If one used this 9.7 percent as a value of overpayment in this case based on the

2    omissions described below, and assumed that P&G sells approximately two billion dollars a year

3    of Charmin Toilet Paper, then the minimum overpayment is roughly $200 million per year or

4    $800 million over the four-year class period. But again, this measure is conservative given the

5    materiality of the omissions described below.

6        30.    In light of these trends, companies are increasingly allocating time, attention, and

7    resources to position their products and supply chains as environmentally responsible. For

8    example, the McKinsey study reviewed actual consumer purchasing behavior over a five-year

9    period to compare products that made one or more ESG-related claims on their packaging to

10    similar products which made none. The McKinsey study found that the packages with the ESG-

11    related claims outperformed products that made none, and that there was "a clear and material

12    link between ESG-related claims and consumer spending." The McKinsey study's conclusion

13    was especially true in the Household Paper and Plastics (Category 24 below), which boasted

14    significant increases in growth and market share for products with ESG labels.[11]

---

27    [10] https://www.pwc.com/gx/en/news-room/press-releases/2024/pwc-2024-voice-of-consumer-survey.html

28    [11] https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets#/

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



**B.    P&G has also acknowledged that its environmental stewardship claims are material to consumers and can increase Charmin's growth opportunities.**

31.    P&G also understands the materiality and growth-maximizing value of environmental claims. Accordingly, P&G dedicates its considerable resources[12] to position Charmin Toilet Paper as being consistent with sustainable forestry practices. For example, the shareholder letter attached to P&G's 2024 Annual Report explains that the Company is "putting additional focus" on "improving the environmental sustainability profile of our brands" in order to "create [a] competitive advantage that can drive shareowner value creation."[13]

32.    Examples of this renewed focus includes highlighting Charmin's commitment to sustainability via its "Keep Forests as Forests" campaign, which included a wide variety of paid

---

[12] 1. P&G spent more than $150 million on advertising and marketing Charmin Toilet Paper in 2021 and over $119 million in 2022. https://www.statista.com/statistics/314871/charmin-ad-spend-usa/

[13] P&G 2024 Annual Report, page vi-vii.

social media activity, in-store signage, packaging, digital storytelling, virtual reality experiences, and various NGO partnerships. According to P&G Vice President Tonia Elrod, P&G closely monitors and evaluates its environmental and sustainability messaging to consumers. Through this process P&G ultimately concluded that the "Keep Forests as Forests" campaign succeeded in conveying a "sustainability message," and that consumers had developed a higher purchase intent from Charmin as a direct result of the environmental claims included in this campaign (in contrast to other attributes such as tissue softness or strength).[14]



C.     **Companies have developed sophisticated Greenwashing campaigns to leverage the growth opportunities in environmental and sustainability messaging.**

33.     "Greenwashing" is the act of misleading consumers regarding the environmental practices of a company or a product. Greenwashing occurs when a company positions itself (or a specific product) as having a positive influence on environmental issues, when in reality, the company (or product) is either exaggerating its influence and/or actively engaging in negative environmental practices that do not align with it previously touted green goals. Product-level Greenwashing refers to the act of misleading consumers about the environmental benefits of a

---

[14] FSC International, *Webinar on Promoting Consumer Engagement with Forest Sustainability* at 27:00 ("Conclusions from Charmin Brand Ambition Case Study") (Nov. 19, 2021), available at https://www.youtube.com/watch?v=BFB0J3jQlkw.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

1  specific product and can include tactics such as labeling products with false or misleading

2  information regarding their composition.[15] Firm-level Greenwashing arises when a company

3  makes false or misleading claims about its overall environmental practices, polices, or

4  performance, rather than just its individual products.  According to academic researchers from

5  Pace University's Sustainable Business Law Hub, Firm-level Greenwashing "involves creating a

6  false image of the company as environmentally responsible, even though its actual practices may

7  be environmental harmful or unsustainable. This form of greenwashing can be particularly

8  damaging as it misleads consumers and investors into thinking that the entire company is

9  environmentally friendly, when in fact only a small portion of its practices may be achieving the

10 stated sustainability goals."

11      34.     High-profile greenwashing examples include Chevron's "People Do" campaign,

12 which showed its employees protecting endangered wildlife such as bears, butterflies and sea

13 turtles—even though the company continued to spill oil in sensitive ecosystems and was being

14 sued for illegally dumping pollutants in Santa Monica Bay. Similarly, Illinois-based concrete

15 producer Ozinga Brothers promised that its proposed Invert mining project on Chicago's

16 Southeast Side neighborhood would eventually result in additional tree plantings, free solar

17 panels, increased recycling opportunities, and a "green" community center. But the company

18 failed to disclose its studies on the expected impact to air quality and transportation. According

19 to one community source, "you'll see tree plantings, recycling, promises for green infrastructure,

20 but then the means to get that supposed green infrastructure [involves] blowing up dynamite to

21 mine for 17 years and bringing thousands of additional diesel trucks into the neighborhood."[16]

22 **D.     The FTC's "Green Guides" provide critical information to consumers, companies,**
23 **and courts about deceptive environmental-themed marketing claims.**

24      35.     Increasingly, what companies think their "green" marketing claims mean and

25 what consumers think they mean may not be the same. As such, the Federal Trade Commission

26 ("FTC") monitors environmentally themed marketing for potentially deceptive claims, and on

27      [15] Barbara Ballan & Jason J. Czarnezki, *Disclosure, Greenwashing and the Future of ESG Litigation,* 81 Was.
    & Lee L. Rev. 545, 555-60 (2024).

28      [16] https://www.nrdc.org/stories/what-greenwashing

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  regular intervals, publishes guidelines to help develop uniform national standards for

2  environmental advertising. Known as the "Guides for the Use of Environmental Marketing

3  Claims"—or more colloquially as the "Green Guides"—this guidance is designed to help

4  marketers avoid making environmental marketing claims that are unfair or deceptive under

5  Section 5 of the FTC Act, 15 U.S.C. § 45.[17] Section 5 of the FTC Act prohibits "unfair or

6  deceptive acts and practices in or affecting commerce[.]"[18] A representation, omission, or

7  practice is deceptive if it is likely to mislead consumers acting reasonably under the

8  circumstances and is material to consumers' decisions.[19] According to the FTC, "marketers must

9  ensure that all reasonable interpretations of their claims are truthful, not misleading, and

10  supported by a reasonable basis before they make the claims" and that "a firm's failure to

11  possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive

12  act or practice in violation of Section 5 of the Federal Trade Commission Act."[20]

13        36.     More specifically, the Green Guides address environmental claims by elucidating

14  1) general principles that apply to all environmental marketing claims; 2) how consumers are

15  likely to interpret particular claims and how marketers can substantiate these claims; and 3) how

16  marketers can qualify their claims to avoid deceiving consumers.

17        37.     The Green Guides also play a large role in state consumer protection law. At least

18  twelve states[21] have laws that directly incorporate the standards set forth in the Green Guides as

19  the legal standard for lawfully making certain marketing claims.[22] Additionally, twenty-seven

20

21      [17] FTC, Green Guides, 16 C.F.R. part 260, available at https://www.ftc.gov/news-events/topics/truth-advertising/green-guides

22      [18] 15 U.S.C. § 45(a)(1).

23      [19] *See* "FTC Policy Statement on Deception," 103 F.T.C. 174 (1983) *available at* https://www.ftc.gov/system/files/documents/public_statements/410531/831014deceptionstmt.pd.

24      [20] "FTC Policy Statement Regarding Advertising Substantiation," 104 F.T.C. 839 (1984), available at
25  https://www.ftc.gov/legal-library/browse/ftc-policy-statement-regarding-advertising-substantiation (cited by 16 C.F.R. § 260.2).

26      [21] These states are Alabama, California, Florida, Indiana, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, Pennsylvania, Rhode Island, and Washington.

27      [22] April 24, 2023, Comments to FTC re Green Guides from the states of California, Connecticut, Delaware, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island and Wisconsin. https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    states and territories[23] have laws providing that the FTC's interpretation in the Green Guides

2    shall serve as persuasive authority for courts construing a particular state consumer protection

3    law. The Green Guides have also been used as evidence in court proceedings involving false

4    advertising litigation.[24]

5        38.    The FTC Green Guides expressly describe a marketer's responsibilities when

6    making environmental claims. Some of these include:

> **§ 260.2 Interpretation and substantiation of environmental marketing claims.** A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis *before* they make the claims. In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence [created] in an objective manner by qualified persons. (emphasis added) (citation omitted)

> **§ 260.3 (a) Qualifications & disclosures.** To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable.

> **§ 260.3 (c) Overstatement of environmental attribute.** An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the benefits are negligible. *Example 1:* An area rug is labeled "50% more recycled content than before" [but] the manufacturer increased the recycled content of its rug from 2% recycled fiber to 3%. Although the claim is technically true, it likely conveys the false impression that the manufacturer has increased significantly the use of recycled fiber.

> **§ 260.4 General environmental benefit claims.** (a) It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. (b) Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits that may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable

---

[23] These are Alabama, Alaska, Arizona, Connecticut, District of Columbia, District of Guam, Florida, Idaho, Georgia, Illinois, Maine, Maryland, Massachusetts, Michigan, Montana, New Hampshire, New Mexico, Ohio, South Carolina, Rhode Island, Texas Tennessee, Utah, Vermont, Washington, and West Virginia.

[24] Ballan & Czarnezki, *supra* note 15, at 565.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

interpretations of these claims, markets should not make unqualified general environmental benefit claims.

. . .

*Example 3:* A marketer's advertisement features a laser printer in a bird's nest balancing on a tree branch, surrounded by dense forest. In green type, the marketer states, "Buy our printer. Make a change." Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that a marketer can substantiate these claims, this advertisement is deceptive.

. . .

**§ 260.6 Certifications and seals of approval**: (a) It is deceptive to misrepresent, directly or by implication, that a product, package has been endorsed or certified by an independent third party. (b) A marketers use of the name, logo, or seal of approval of a third party certifier or organization may be an endorsement, which should meet the criteria of the FTC's Endorsement Guides . . . (c) Third-party certification does not eliminate a marketers' obligation to ensure that it has substantiation for all claims reasonably communicated by the certification. (d) A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit . . . . Because it is highly unlikely that marketers can substantiate general environmental benefit claims, marketers should not use environmental certifications or seals that do not convey the basis for the certification. (e) . . . To avoid deception, marketers should use clear and prominent qualifying language that clearly conveys that the certification or seal refers only specific and limited benefits.

39.    The Green Guides also provide guidance regarding the use of terms such as "sustainability" as this term likely implies certain environmental benefits. Although the Green Guides do not define sustainability per se, "this does not mean unscrupulous marketers are free to deceive consumers."[25] Indeed, according to the FTC, "marketers still are responsible for substantiating consumers' reasonable understanding of these claims." For example, "if in context reasonable consumers perceive a sustainable claim as a general environmental benefit claim, the marketer must be able to substantiate that claim and all attendant reasonably implied claims" and that, typically, a generic sustainability claim "presents substantiation challenges." For that

---

[25] *FTC The Green Guides Statement of Basis and Purpose* at 258, *available at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guidesstatement.pdf.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    reason, the FTC has admonished companies not to use unqualified claims such as "sustainable"

2    due to its determination that "it is highly unlikely that they can substantiate reasonable

3    interpretations of these claims."[26]

4    **E.    P&G sells more than $2 billion worth of Charmin Toilet Paper each year.**

5        40.    P&G is one of the biggest consumer goods companies in the world. In 2016, the

6    company generated net sales worth about 65.3 billion U.S. dollars and is the leading

7    manufacturer in a vast majority of consumer goods product categories—including Charmin

8    Toilet Paper. According to P&G's 2024 Annual Report, Charmin Toilet Paper represents

9    approximately 25% of the North American market for toilet paper and Charmin Toilet Paper is

10    routinely found in the top 10 sales of the leading toilet paper brands in the United States, with

11    typical sales of over $2 billion a year.[27] Indeed, according to U.S. Census data and the Simmons

12    National Consumer Survey, 86.27 million Americans used Charmin Ultra in 2020 alone.

13    **F.    P&G regularly touts its claim of environmental stewardship via its Greenwashing
      Campaign for Charmin Toilet Paper.**

14

15        **1.    P&G relies on its "Keep Forests as Forests" campaign and its "Protect-
          Grow-Restore" messaging at points of sale to position Charmin products as
          environmentally sustainable.**

16

17        41.    P&G employs a multitude of layered and integrated marketing practices, such as

18    paid social media activity, in-store signage, packaging, digital storytelling, virtual reality

19    experiences, and various NGO partnerships, to consistently position Charmin as an

20    environmentally sustainable choice for consumers. Layered and integrated marketing are

21    strategies that use multiple channels to promote a brand or message. These channels, or

22    "vehicles," can include packaging, social media, ads, content, and digital or live events. Layered

23    and integrated marketing practices are especially effective in establishing credibility and

24    conveying a consistent and unified message to consumers over time.

25

26    _____

27    [26] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures* (Apr. 2, 2019), *available at*
      https://www.ftc.gov/news-events/news/press-releases/2019/04/ftc-sends-warning-letters-companies-regarding-
      diamond-ad-disclosures.

28    [27] https://www.statista.com/statistics/188710/top-toilet-tissue-brands-in-the-united-states/



42.     For example, P&G's Vice President of Family Care Communications and P&G Responsible Sourcing, Tonia Elrod, explains that P&G relies on the "Charmin Brand Ambition" to consistently and persistently disseminate its environmental sustainability claims to consumers under the umbrella of "Keep Forests as Forests."



43.     The "Keep Forests as Forests" campaign makes three promises to consumers using the "Protect-Grow-Restore" logo. For its "Protect" promise, Charmin claims to only use pulp certified by the Forest Stewardship Council or "FSC." The Forest Stewardship Council ("FSC") is an international non-profit that promotes responsible management by offering a forest certification system for forests and forest products. For its "Grow" promise, Charmin promises that "for every tree used at least two are regrown in its place" and suggests that the company is helping to replace the forest it uses via thoughtful and effective replanting efforts. For its "Restore" promise, Charmin touts its partnership with the Arbor Day Foundation to plant one million trees in forests affected by natural disasters.

44.     The "Keep Forests as Forests" campaign and "Protect-Grow-Restore" messaging have been persistently and consistently used by P&G in relation to Charmin products to tout environmental responsibility at point of sale. Below are some examples.

1

2

   **a.    Charmin Toilet paper packaging at points of sale consistently includes the FSC logo in a prominent location (at the front of the package)**

3

   45.    Companies who work with the FSC are entitled to display various FSC logos to

4

reflect the company's commitment to various levels of responsible forest management. The main

5

FSC logo looks like this:

6



7

8

   46.    The below pictures are from the front packaging for Charmin Ultra Strong oilet

9

paper (upper left), Charmin Ultra Soft Mega size (upper right), Charmin Ultra Soft toilet paper

10

standard size (bottom left), and Charmin Ultra Gentle (bottom right). The main "FSC" logo is

11

prominently included on the front of each Charmin variation and are practically identical.

12

    

13

14

15

16

    

17

18

19

20

21

22

   **b.    Charmin Toilet Paper packaging at points of sale also consistently includes the "Protect-Grow-Restore" logo.**

23

   47.    The below pictures are from the back packaging for Charmin Ultra Strong toilet

24

paper (upper left), Charmin Ultra Soft Mega size (upper right), Charmin Ultra Soft toilet paper

25

standard size (bottom left), and Charmin Ultra Gentle (bottom right). The "Protect-Grow-

26

Restore" logo is included on each Charmin variation and are practically identical.

27

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX







**2.    P&G extends the exposure and reach of its Greenwashing campaign at digital point of sale locations with national retailers.**

48.    P&G also relies on a robust network of retailers to make Charmin available for sale in all 50 states and territories via their online selling platforms. In so doing, P&G drastically increases the reach of its "Protect-Grow-Restore" and other "Keep Forests as Forests" messaging. According to the websites of these retailers, manufacturers like P&G are responsible for supplying the images, layout, and all "product detail" and "thumbnail" information to market the product on the retailer's webpage. Below are examples from some of the nation's leading retailers consistently displaying these "Protect-Grow-Restore" and "Keep Forests as Forests" messages, which helps position Charmin to be perceived as environmentally responsible.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

a.    **Kroger Point-of-Sale Listing for Charmin Ultra Strong Toilet Paper**[28]

49.    This Kroger listing depicts a listing for Charmin Ultra Strong Toilet Paper for sale on Kroger's website. As seen below, Charmin continues to prominently show the FSC Certified Label on the front of the package. And in the product details section Charmin reiterates its "Protect-Grow-Restore" message while also stating that "all our pulp used is 100% FSC certified" and "we plant two trees for every one used." According to Charmin "that's how we're helping keep forests, forests."

**Product Details**



Get sparkly clean with Charmin Ultra Strong. Its 4X stronger when wet and has a diamond-weave texture. Its woven like a washcloth and holds up when you wipe. It even cleans better so you can use less and go longer without changing the roll. We also made it MEGA in size, so you get mega value. Thats right, our Charmin Ultra Strong Mega Roll is way bigger, equals 4 regular rolls, and its more bang for your behind so youll be running back to the store less and less (based on number of sheets in Charmin Regular Roll bath tissue). Our Charmin Ultra Strong toilet paper is also 2-ply and designed to be clog-safe and septic-safe so you can flush confidentially and keep clean. And at Charmin, we love trees so we work hard to protect, grow and restore forests. Its why all our pulp used is 100% FSC certified. Its why we plant two trees for every one used. And its why we help to restore forests devastated by natural disaster through the Arbor Day Foundation. Thats how were helping keep forests, forests. We all go, why not Enjoy The Go with Americas favorite toilet paper.

b.    **Walmart Point-of-Sale Listing for Charmin Ultra Strong Toilet Paper**[29]

50.    This Walmart listing depicts a listing for Charmin Ultra Strong Toilet Paper for sale on Walmart's website. It is almost identical to the Kroger listing above. Again, Charmin continues to prominently show the FSC Certified Label on the front of the package. And in the product details section, Charmin reiterates its "Protect-Grow-Restore" message while also stating that "all our pulp used is 100% FSC certified" and "we plant two trees for every one used." The claim that Charmin is "helping keep forests, forests" is also reiterated.

---

[28] https://www.kroger.com/p/charmin-ultra-strong-toilet-paper-231-sheets-roll-32-rolls-/0003077208632 (accessed Jan. 15, 2025).

[29] https://www.walmart.com/ip/Charmin-Ultra-Strong-Toilet-Paper-231-Sheets-Roll-32-Rolls/6137370255?wmlspartner=wlpa&selectedSellerId=102537451&sid=4818cbef-50ce-4890-a9f2-f1917941ff93 (accessed Jan. 15, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



c.    **Costco Point-of-Sale Listing for Charmin Ultra Soft Toilet Paper[30]**

51.    This Costco listing depicts a listing for Charmin Ultra Soft Toilet Paper for sale on Costco's website. As seen below, Charmin continues to prominently show the FSC certified label on the front of the package. The back of the package also includes the "Protect-Grow-Restore" logo, which also directs consumers to Charmin's Sustainability Promise website. And as with the Kroger listing, this Costco listing makes the same "Protect-Grow-Restore" promises in the Product Details section of the listing. The visual thumbnails displayed next to a picture of Charmin toilet paper profiles the main FSC logo, the Protect-Grow-Restore logo and a statement that "100% of our paper comes from responsibly managed forests."





---

[30] https://www.costco.com/charmin-ultra-soft-bath-tissue%2C-2-ply%2C-213-sheets%2C-30-rolls.product.4000221238.tml (accessed Jan. 15, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**Charmin Beyond The Roll**







**FSC™ Certified**

We only use pulp certified by the Forest Stewardship Council® and support FSC® in their work to increase adoption of FSC products. These standards ensure that we are protecting wildlife and contributing to thriving local communities.

**Protect, Grow and Restore**

At Charmin, we are committed to making our toilet paper work hard to make a sustainable difference. 100% of our paper comes from responsibly managed forests.

**Forest Restoration**

P&G and Charmin are partnering with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters, like wildfires or hurricanes.

     **d.**    **Lowe's Point-of-Sale Listing for Charmin Ultra Soft Toilet Paper[31]**

    52.    This Lowe's listing for Charmin Ultra Soft Toilet Paper contains the same prominent FSC certified logo on the front of the package and includes the same "Protect-Grow-Restore" promises in the Product Features section of the listing. The thumbnails displayed next to the photograph of the product have the same FSC certified claims, and claims that "100% of our paper comes from responsibly managed forests."  In addition, this Lowe's Listing also highlights Charmin's promise to "regrow two trees for every one used."





---

[31] https://www.lowes.com/pd/Charmin-Ultra-Soft-Super-Mega-12-Pack-2-ply-Toilet-Paper/5014633869 (accessed Jan. 15 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**Charmin Beyond The Roll**







**FSC™ Certified**

We only use pulp certified by the Forest Stewardship Council® and support FSC® in their work to increase adoption of FSC products. These standards ensure that we are protecting wildlife and contributing to thriving local communities.

**Protect, Grow and Restore**

At Charmin, we are committed to making our toilet paper work hard to make a sustainable difference. 100% of our paper comes from responsibly managed forests.

**Forest Restoration**

P&G and Charmin are partnering with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters, like wildfires or hurricanes.

  e.  **Amazon's Point-of-Sale Listing for Charmin Ultra Gentle Toilet Paper[32]**

  53.  This Amazon listing for Charmin Ultra Gentle Toilet Paper contains the same prominent FSC certified logo on the front of the package and the same FSC-certified thumbnails, and includes the same "Protect-Grow-Restore" promises in the Product Features section of the listing.



---

[32] https://a.co/d/2ldcVhu (accessed Jan 15 2025)

CLASS ACTION COMPLAINT - 30
011290-11/2966577 V1



**Charmin Beyond The Roll**





**FSC™ Certified**

We only use pulp certified by the Forest Stewardship Council® and support FSC® in their work to increase adoption of FSC products. These standards ensure that we are protecting wildlife and contributing to thriving local communities.

**Protect, Grow and Restore**

At Charmin, we are committed to making our toilet paper work hard to make a sustainable difference. 100% of our paper comes from responsibly managed forests.

**Forest Restoration**

P&G and Charmin are partnering with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters, like wildfires or hurricanes.

3.    **P&G also directs consumers to visit its "Charmin Sustainability Promise website"[33] which prominently features three videos reiterating the "Protect-Grow-Restore" message.**



**SUSTAINABILITY**

We are committed to helping keep forests as forests.
That's why we:



**PROTECT**
We only use pulp certified by the Forest Stewardship Council® and support FSC® in their work to increase adoption of FSC products. These standards ensure that we are protecting wildlife and contributing to thriving local communities.



**GROW**
For every tree used, at least two are regrown in its place.



**RESTORE**
P&G and Charmin are partnering with the Arbor Day Foundation to plant 1 million trees in forests affected by natural disasters, like wildfires or hurricanes.

---

[33] https://www.charmin.com/en-us/sustainability

CLASS ACTION COMPLAINT - 32
011290-11/2966577 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

       **a.**     **The "Protect" video depicts FSC-certified forests in the United States that are owned by small landowners who follow FSC responsible forest management guidance.**

 

54.     The caption next to the "Protect Video" states that Charmin only uses pulp certified by the FSC. The video also features P&G employee and Papermaking Materials Leader Lois Forde-Kohler, who states: "*When you see an FSC logo on a Charmin package, you know that we are working with suppliers to bring their products to us in a sustainable, responsible way. They have foresters who have the best forest management plans, including replanting, in order to continue to 'Keep Forests as Forests.'*" As explained more fully below, this claim is objectively false.

       **b.**     **The "Grow" video prominently displays the main FSC and "Rainforest Alliance Certified" logos on Charmin packaging and promises to replant at least 1-2 new trees for every tree used in its products.**

 

55.     The "Grow Video" on the Charmin Sustainability Promise website also depicts the FSC-certified label on the front of a Charmin package while stating that Charmin wood pulp is sourced from "*responsibly managed forests, which means for every tree [Charmin] uses in its products a new one is planted in its place.*"  As explained below, this claim is misleading.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

c.    **The "Restore" video promises that P&G will help plant 1 million trees between 2020 and 2025 in areas devastated by natural disasters.**



56.    The "Restore Video" also states: "*replanting efforts must involve thinking into the future 20 years, 50 years, 100 years out so you are planting it for the next generation.*"

4.    **Charmin also produced a viral "Protect Grow Restore" YouTube video reiterating its key promises to consumers.**



57.    In 2022, Charmin also created a "Protect Grow Restore" YouTube video that as of January 14, 2025, has been viewed over 58.3 million times.[34] While exclaiming that, at Charmin, "we LOVE trees" P&G reiterates the following claims to consumers: "*we protect forests by using pulp certified by the Forest Stewardship Council*"; "*we regrow at least two trees for every tree we use*"; and "*Charmin helps restore trees through the Arbor Day Foundation, so you can enjoy the go, but forests remain forests.*" As explained below, these claims are misleading.

---

[34] https://www.youtube.com/watch?v=9WARhjajugQ

**G.      P&G also touts its environmental messaging and enforcement promises to investors.**

58.      P&G also touts its environmental messaging in its investor relations materials. For example, in its 2023 Citizenship Report, P&G states: "We are committed to responsible sourcing of key commodities like wood pulp, palm oil and paper packaging together with respecting human, labor and land tenure rights in our supply chains. We are also going beyond responsible sourcing to help restore and protect landscapes near our existing supply chains and invest in natural climate solutions that can remove and store more carbon." Similarly, on the "Mapping Our Impact" and "Environment – Pulp" webpages on P&G's investor relations website, P&G states that "[w]e are committed to no deforestation in our wood pulp, paper packaging, and palm supply chains and are delivering on our responsible sourcing goals." And in P&G's 2022 Forestry Update, P&G stated that it was going to "hold[] our Suppliers to Higher Standards" by emphasizing that its "Wood Pulp Sourcing Policy does not allow deforestation or forest conversion."

**H.      P&G's Greenwashing campaign and "Protect-Grow-Restore" promises are misleading because of the following misrepresentations and material omissions.**

      **1.      P&G's "Protect" promise misleads consumers because P&G does not disclose that Charmin is sourced from harvests that rely on industrial logging practices such as clear cutting and burning of Canada's boreal forest.**

59.      Most of the wood pulp used by P&G to manufacture Charmin is sourced from Canada's boreal forest—one of the last large primary forests on earth.



60.      Primary forests are intact ecosystems, filled with centuries-old conifers and birches that have not been altered by human activity. Because of these unique characteristics,

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Canada's boreal forest provides refuge to a wide variety of wildlife, including keystone species such as salmon, black bears, caribou, and snowshoe hares. The boreal is also critical to North America's bird population, serving as the nesting grounds for more than three billion birds, from songbirds to whooping cranes to the great gray owl. The boreal forest is also home to an extensive range of mammals, insects, fungi and microorganisms.

 

61.     Primary forests are also responsible for storing around 30-40% of the earth's land-based carbon. And the boreal forest in Canada is no exception. Because of their cold climate and slow decomposition rates, boreal forests accumulate large amounts of carbon in their soil and peat, making them one of the largest terrestrial carbon sinks on Earth. Indeed, the boreal forest can store twice as much carbon per acre as the Amazon rainforest. Thus, changes in the quality and biodiversity of the primary forests like Canada's boreal have significant impacts worldwide.

62.     P&G understands the unique nature and role of the boreal forest. As such, P&G consistently states that it is committed to no deforestation in its supply chain. But P&G's harvesting practices result in the opposite from the plain meaning of the term deforestation that would be understood by reasonable consumers. By relying on an extremely narrow technical definition of "deforestation," P&G can skirt accountability for industrial practices such as clear cutting and burning, like those pictured below, as long as the area does not permanently change its land use designations. Below are some documented results of harvesting practices that are consistent with P&G's "no deforestation" policy which are really deforestation as any reasonable consumer would understand these practices and is certainly deforestation from the standpoint of the animals and organisms living in the boreal forest.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX





**2.    P&G's "Grow" and "Restore" promises are misleading because Charmin's suppliers are systematically converting critically important old growth forests into environmentally devastating Frankenforests.**

63.    P&G's "Protect-Grow-Restore" messaging about replanting 1-2 trees for every tree used in its products intentionally misleads consumers to believe that its Charmin suppliers are converting the specific boreal forest areas logged with replanting activities that mimic the intact ecosystem that was there before P&G's harvesting occurred. But P&G fails to disclose that, in reality, its suppliers are replanting single-species conifers, evenly spaced, and with even ages. In other words, instead of a primary forest with an intact ecosystem, the boreal forest is being converted into monoculture tree crops or "plantations." P&G's suppliers also spray chemical herbicides like aerial glyphosate spray (a key ingredient in Monsanto's Roundup product) to intentionally eliminate all growth other than just a handful of tree species most valuable for logging.[35] These Frankenforests degrade overall forest health, reduce biodiversity and alter the boreal forest's unique structure. Moreover these Frankenforests have exponentially less carbon storage capability.

---

[35] https://www.greenpeace.org/canada/en/story/49427/how-glyphosate-herbicide-is-used-to-poison-forests-and-what-you-can-do/

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

64.     Below are aerial photographs of a Charmin supplier's replanting efforts in the Waibigoon area in Northern Ontario after clearcutting the area several years ago. Thes photographs are a far cry from the lush, dense, forests depicted by P&G as part of its "Grow" and "Restore" promises. Even worse, this area has already been designated with a slash pile burn plan in 2025, which means that this permanently destructive cycle will begin again. For these reasons, Charmin's commitment to "Keep Forests as Forests" is egregiously misleading.

 

65.     Also below is an example of some of the trees ostensibly replanted. For the wildlife left behind after the clear-cutting activities, these saplings provide little use for years and won't provide the same biodiversity benefits for at least a few more decades (unless, of course, Charmin suppliers decide to clear cut the area again).



CLASS ACTION COMPLAINT - 38
011290-11/2966577 V1

3.      **P&G also misleads consumers at point of sale with unauthorized and improper use of third-party logos.**

a.      **P&G's use of the FSC logo is misleading and erroneous.**

66.     The FSC clearly explains that different FSC logos depict different levels of commitment to responsible forest management.



67.     P&G consistently claims on its packaging, in its "Protect-Grow-Restore" videos, and on its Charmin Sustainability Promise website, that 100% of its wood pulp is sourced from FSC-certified forests. But P&G makes these claims on its packaging and consumer facing marketing materials while also acknowledging that "the availability of FSC-certified pulp [in Canada] is insufficient to meet the demands of our industry"[36] and as a result the Company has had to water down its FSC certification standards with two misleading approaches.

68.     First, recently P&G began to rely on FSC CoC (chain of custody) and FSC CW (controlled wood) designations, instead of the FSC-certified forest designation. These designations refer to requirements around the tracking and segregation of FSC-certified and non-FSC material throughout a supply chain. As such, companies that rely on these designations should use the FSC "Mix" logo, above. Companies like P&G who primarily use FSC CoC and

---

[36] Forestry practices report, March 2021.

1     CW designations are prevented from using the "FSC 100%" logo in association with their

2     products (which denotes the product was manufactured with 100% FSC-certified virgin fiber

3     from FSC-certified forests).

4           69.      Second, P&G also now relies on wood pulp certifications from the Sustainable

5     Forestry Initiative ("SFI") and the Programme for the Endorsement of Forest Certification

6     ("PEFC"). But both these entities have been criticized as weak[37] and ineffective[38] at certifying

7     and enforcing responsible forest management practices. Nevertheless P&G still prominently

8     displays the FSC logo on the front of its Charmin Toilet Paper packaging, and claims that 100%

9     of its paper is FSC certified, with no qualifying language. The logos of the other organizations

10     are not included on the packaging.

11           70.      As described in detail above, P&G continues to claim that 100% of its wood pulp

12     is FSC-certified, or comes from FSC-certified forests and continues to use the FSC logo on the

13     front of its packaging without any "Mix" qualifier language. Nor has P&G ever disclosed in any

14     consumer-facing materials that it relies on other certification providers besides FSC or that it

15     watered down its own FSC certifications. These misleading practices violate the FTC Green

16     Guides.

17           **b.     P&G continues to misuse and mislead consumers regarding its Rainforest Alliance claims.**

18

19           71.      In 2016, P&G began sourcing pulp from Forest Stewardship forests certified by

20     the Rainforest Alliance and started featuring the "Rainforest Alliance Certified" seal on Charmin

21     packages. P&G continues to use the "Rainforest Alliance Certified" seal in reference to its

22     products on the Charmin Sustainability Promise website, even though this seal is obsolete.

23     According to the Rainforest Alliance, "Rainforest Alliance Certified" is a sustainability

24     certification program and its seal indicates that a product meets rigorous sustainability standards.

25

26

27     [37] https://www.greenpeace.org/southeastasia/press/591/greenpeace-ran-warn-of-forest-certification-greenwash/

28     [38] https://www.greenpeace.org/canada/en/press-release/57244/competition-bureau-launches-investigation-into-greenwashing-complaint-against-north-americas-largest-forest-certification-scheme/

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

2



3

4

5

6      72.      In contrast, the "Rainforest Alliance Forest Allies" seal has no certification

7   process, but is instead a community of practice that supports forest communities located in the

8   tropics. It was launched in 2021, and P&G is one of two founding members of this program.

9



10

11

12      73.      As explained above, P&G continues to use the Rainforest Alliance Certified seal

13   on its Charmin Sustainability Promise website, in direct violation of the Rainforest Alliance

14   policy.[39] And while P&G has altered its Charmin packaging to only include the "Forest Allies"

15   seal, which makes no claims as to the product's provenance or certification, it is practically

16   identical to the previous seal and therefore highly likely to mislead consumers because the Forest

17   Allies program does not conduct any activities in the boreal forests. These practices are

18   misleading and violate the FTC Green Guides.

19   I.      **P&G's Greenwashing campaign and the overall impression of environmental
            sustainability on the packaging of Charmin products misled reasonable consumers
20          and violates the FTC Green Guides.**

21      74.      P&G's "Keep Forests as Forests" campaign clearly violates several portions of

22   the FTC Green Guides. For example, P&G continues to use the more well-known FSC

23   certification logo and Rainforest Alliance certification logo on its Charmin Sustainability

24   Promise Website, even though the Rainforest Alliance no longer certifies Charmin products and

25   most of Charmin's wood pulp is not sourced from FSC certified forests. P&G's certification

26   claims directly overstate the environmental attribute or benefit of using Charmin products and

27

28   _____
      [39] https://www.rainforest-alliance.org/business/marketing-sustainability/using-our-logo-and-seal/

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1   therefore violates section 260.3(c) "Overstatement of environmental attribute" of the FTC Green

2   Guides. Similarly, by adopting substantially similar logos without qualification or disclosure

3   (such as the FSC logo compared to the FSC mix logo and the Rainforest Allies Certification logo

4   compared to the Rainforest Alliance Forest Allies Logo and including the FSC logo on the front

5   of Charmin packaging) P&G violates section 260.3(a) "Qualifications and disclosures" as well as

6   section 260.6 "Certifications and Seals of Approval" of the FTC Green Guides.

7        75.    Next, P&G's claim to regrow two trees for every one it uses is virtually

8   impossible to verify given the information the company has shared with investors. Nowhere does

9   the company share how it verifies the trees are regrown, where they are regrown, and how long

10  they monitor the trees to ensure they do, in fact, grow and reach maturity. As such, P&G violates

11  section 260.2 "Interpretation and Substantiation of Environmental Marketing Claims" of the FTC

12  Green Guides, which requires markets to provide scientific evidence to justify its claims.

13       76.    Additionally Charmin's Sustainability Promise website—which prominently

14  features the environmental benefits of old-growth forests, along with a consistent depiction of

15  lush dense forests, and in addition to text that uses the phrases like "Keep Forests as Forests" and

16  "Protect-Grow-Restore" (including on the back of Charmin packaging) and "for every tree used

17  we are replacing two in its place"—likely conveys that P&G is replacing trees in a manner that

18  preserves the same level of biodiversity in the same location where the old-growth forests were

19  harvested. This in turn helps to convey that Charmin's supply chain has no lasting negative

20  environmental impact. Because it is highly unlikely that P&G can substantiate these claims using

21  scientific evidence, the "Protect-Grow-Restore" and Charmin Sustainability Promise Website is

22  substantially similar to Example 3 and therefore P&G violates section 260.4 "General

23  Environmental Benefit Claims" of the FTC Green Guides. And because these representations are

24  negligible claims at best when compared to the devastating clear cutting, burning, and

25  Frankenforest practices condoned by P&G, the "Protect-Grow-Restore" claim and Charmin

26  Sustainability Promise website is substantially similar to Example 1, and therefore P&G also

27  violates section 260.3(c) "Overstatement of environmental attribute" of the FTC Green Guides.

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

**J.    P&G has repeatedly promised to fulfill its promises, or to stop making misleading claims, but has failed to do so.**

2

77.    There have been several instances where P&G has had to confront its deceptive,

3

unfair, and environmentally devastating practices. For example, in October 2019, after giving

4

Charmin Toilet Paper an "F" for its environmental impact in its annual toilet paper sustainability

5

report, the National Resources Defense Council ("NRDC") protested a P&G shareholder meeting

6

to urge the company to stop sourcing its wood pulp from Canada's boreal forest and instead

7

increase its reliance on recycled fibers. Then in 2020, 67% of P&G shareholders voted in favor

8

of a resolution put forward by Green Century Equity Fund that called on the company to report

9

on how and whether it can eliminate deforestation and intact forest degradation. This vote was all

10

the more stunning as P&G's Board of Directors had recommended that shareholders oppose it.

11

78.    In 2022, the NRDC filed a complaint with the Securities and Exchange

12

Commission ("SEC") claiming that P&G's claims that the company prohibited forest

13

degradation in its supply chains was materially misleading to investors. In response, P&G simply

14

removed the statement regarding prohibition of forest degradation in its pulp supply chain from

15

its Forest Commodities Policy.

16

79.    And then in 2023, even the descendants of the founders of P&G urged their

17

fellow shareholders to vote against current members of the board of directors, due to the

18

company's failure to address unsustainable sourcing of wood pulp and palm oil from climate-

19

critical forests in the Canadian boreal and southeast Asia. In their September 8, 2023, letter to

20

shareholders, which was filed with the SEC, the descendants wrote that even in response to the

21

2020 Green Century resolution and NRDC's SEC complaint, "the company has delivered weak

22

and internally inconsistent policy and issued statements that obfuscate the continued risk

23

associated with its procurement of forest commodities, leaving the company's actions to address

24

forest risk incoherent and inadequate." Moreover, the P&G descendants concluded that due to

25

P&G actions: "we are deeply concerned that P&G is not effectively communicating a coherent

26

policy regarding the highly material risks caused by supply chain deforestation and forest

27

28



1    degradation, and therefore regarding the capability of P&G's board to effectively manage risk
2    and shareholder concerns."

3        80.    Nevertheless, P&G continues to dismiss its shareholders' concerns and ignore
4    major environmental issues in its supply chains. For example, P&G still lacks non-compliance
5    protocols that transparently articulate what thresholds and metrics it will use to measure
6    compliance and non-compliance with its policies; what supplier actions would trigger supplier
7    suspension or exclusion from the company's supply chain; and what steps a supplier would need
8    to take to re-enter the company's supply chain.

9    **K.    P&G's competitors demonstrate that more sustainable practices are possible.**

10        81.    P&G is ceding competitive advantage to its peers for its failure to meet its no-
11    deforestation commitment and continued use of 100% virgin forest fiber in its tissue products.
12    For example, P&G's competitor Kimberly-Clark has committed to halving its sourcing from
13    natural forests by 2025. P&G was also rated below its peers by both Forest 500 and CDP
14    Forest in terms of the strength of its commitments, reporting, and implementation in ensuring
15    deforestation-free supply chains. Kimberly-Clark has also purchased a higher percentage of FSC-
16    certified fiber (i.e., not including Controlled Wood) than P&G in each of the last three years.

17        82.    P&G also incorporates zero recycled materials into the manufacturing of
18    Charmin, which is in significant contrast with other major toilet paper manufacturers such as
19    Whole Foods 365, Trader Joe's, and Seventh Generation.

20        83.    NRDC released *The Issue with Tissue* Sixth Edition scorecard in 2024, which
21    shows movement among the industry's biggest players toward greater sustainability. Still,
22    Procter & Gamble (P&G) remains stuck in the past, rejecting demands from consumers and
23    shareholders alike to end its almost exclusive use of forest fiber for Charmin and its other
24    flagship tissue brands. P&G remains the only one of the three largest U.S. toilet paper producers
25    to earn F grades for its Charmin toilet paper across all six editions of NRDC's scorecard.

26

27

28

**V.     TOLLING OF THE STATUTE OF LIMITATIONS**

**A.     Discovery rule tolling**

84.     Class members had no way of knowing about P&G's deception with respect to the environmental sustainability of the Charmin Toilet Paper supply chain.  To be sure, P&G continues to this day to make the same claims that it "Protect-Grow-Restore" the trees in the boreal forest, and that the pulp it purchases is sustainably sourced, all while actively promoting their obsolete and misleading sustainability credentials on the packing itself.

85.     Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that P&G was concealing the conduct complained of herein and was misrepresenting the Company's true position with respect to the environmental stewardship of its Charmin Toilet Paper supply chain.

86.     Plaintiffs and the other Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that P&G did not report information

1   within its knowledge to federal and state authorities or consumers; nor would a reasonable and

2   diligent investigation have disclosed this information, which was discovered by Plaintiffs only

3   shortly before this action was filed.  Nor in any event would such an investigation on the part of

4   Plaintiffs and other Class members have disclosed that P&G valued profits over truthful

5   marketing and compliance with law.

6          87.    For these reasons, all applicable statutes of limitation have been tolled by

7   operation of the discovery rule with respect to claims alleged herein.

8   **B.     Fraudulent Concealment Tolling**

9          88.    All applicable statutes of limitation have also been tolled by P&G's knowing and

10  active fraudulent concealment, omissions, and suppressions and denial of the facts alleged herein

11  throughout the period relevant to this action.

12         89.    Instead of disclosing the environmentally devastating Charmin Toilet Paper

13  supply chain, or that the quality and quantity of replanted forests was far worse than represented,

14  P&G chose instead to tout its environmental bona fides via its websites and the packaging used

15  for Charmin Toilet Paper.

16  **C.     Estoppel**

17         90.    After consistently touting its environmental stewardship, P&G was under a

18  continuous duty to disclose to Plaintiffs and the other Class members the true character, quality,

19  and nature of the harvesting and replanting efforts within the Charmin Toilet Paper supply chain.

20         91.    P&G knowingly, affirmatively, and actively concealed, omitted, or suppressed, or

21  recklessly disregarded the true character, quality, and nature of the harvesting and replanting

22  efforts within the Charmin Toilet Paper supply chain.

23         92.    Based on the foregoing, P&G is estopped from relying on any statutes of

24  limitations in defense of this action.

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.     CLASS ALLEGATIONS

93.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:[40]

**Washington Class**

> All persons who purchased Charmin Toilet Paper between January 16, 2021, and January 16, 2025, in the state of Washington.

**California Class**

> Al persons who purchased Charmin Toilet Paper between January 16, 2021, and January 16, 2025, in the state of California.

**Illinois Class**

> All persons who purchased Charmin Toilet Paper between January 16, 2021, and January 16, 2025, in the state of Illinois.

**Massachusetts Class**

> All persons who purchased Charmin Toilet Paper between January 16, 2021, and January 16, 2025, in the state of Massachusetts.

**Multistate Class One**

> All persons who purchased Charmin Toilet Paper between January 16, 2021, and January 16, 2025, in the states of Alabama, Florida, Indiana, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, and Pennsylvania.

**Multistate Class Two**

> All persons who purchased Charmin Toilet Paper between January 16, 2021, and January 16, 2025, in the states of Alaska, Arizona, Connecticut, Idaho, Georgia, Montana, New Hampshire, Ohio, South Caroline, Utah, Vermont Texas, Tennessee, West Virginia, and the District of Columbia.

94.     Excluded from the Class are P&G and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

---

[40] Collectively, the "Class," unless otherwise noted.

CLASS ACTION COMPLAINT - 47
011290-11/2966577 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

1    95.    Certification of Plaintiffs' claims for classwide treatment is appropriate because

2    Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as

3    would be used to prove those elements in individual actions alleging the same claims.

4    96.    This action has been brought and may be properly maintained on behalf of each of

5    the Classes proposed herein under Federal Rule of Civil Procedure 23.

6    97.    <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class

7    are so numerous and geographically dispersed that individual joinder of all Class members is

8    impracticable. While Plaintiffs are informed and believe that annual sales of Charmin toilet paper

9    are estimated to be $1 billion and that P&G spends around $119 million each year in advertising

10   for the Charmin brand in the United States. Class members may be notified of the pendency of

11   this action by recognized, Court-approved notice dissemination methods, which may include

12   U.S. Mail, email, text messages, social media, Internet postings, and/or published notice.

13   98.    <u>Commonality and Predominance.</u> Federal Rule of Civil Procedure 23(a)(2) and

14   23(b)(3): This action involves common questions of law and fact, which predominate over any

15   questions affecting individual Class members, including, without limitation:

16        a)    Whether P&G engaged in the conduct alleged herein;

17        b)    Whether P&G designed, advertised, marketed, distributed, sold, or otherwise

18   placed Charmin Toilet Paper into the stream of commerce in the United States;

19        c)    Whether P&G sources its Charmin Toilet Paper from the boreal forest in Canada;

20        d)    Whether P&G made specific claims to consumers of environmental stewardship

21   regarding the supply chain for Charmin Toilet Paper;

22        e)    Whether P&G knew about the highly destructive industrial logging practices

23   taking place in its supply chain for Charmin Toilet Paper and, if so, how long P&G has known of

24   the issue;

25        f)    Whether P&G knew that replanting efforts in the boreal forest are mainly for

26   future harvesting purposes and do not recreate the same level of biodiversity and carbon capture

27   capability characteristic of the trees previously harvested and, if so, how long P&G has known of

28   the issue;



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

g)      Whether P&G's conduct violates consumer protection statutes, the common law of fraudulent concealment, and other laws as asserted herein;

h)      Whether P&G knew or should have known of the industrial logging and replanting issues inherent in the Charmin Toilet Paper supply chain;

i)      Whether Plaintiffs and the other Class members overpaid for their Charmin Toilet Paper as a result of the fraud alleged herein;

j)      Whether Plaintiffs and the other Class members are entitled to equitable relief; and

k)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

99.     Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through P&G's wrongful conduct as described above.

100.    Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

101.    Declaratory and Injunctive Relief. Federal Rule of Civil Procedure 23(b)(2): P&G has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

102.    Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  litigate their claims against P&G, so it would be impracticable for Class members to individually

2  seek redress for P&G's wrongful conduct. Even if Class members could afford individual

3  litigation, the court system could not. Individualized litigation creates a potential for inconsistent

4  or contradictory judgments, and increases the delay and expense to all parties and the court

5  system. By contrast, the class action device presents far fewer management difficulties and

6  provides the benefits of single adjudication, economy of scale, and comprehensive supervision

7  by a single court.

8  ## VII.    CLAIMS FOR RELIEF

9  ### A.    Claims brought on behalf of the Washington Class

10  ### COUNT I
## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
11  ### (WASH. CODE ANN. § 19.86.010, *ET SEQ.*)

12  103.    Plaintiff Melissa Lowry ("Plaintiff" for purposes of all Washington Class Counts)

13  incorporates by reference all preceding allegations as though fully set forth herein.

14  104.    Plaintiff brings this Count on behalf of the Washington Class.

15  105.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits

16  "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any

17  trade or commerce." Wash. Rev. Code Ann. § 19.96.010.

18  106.    P&G committed the acts complained of herein in the course of "trade" or

19  "commerce" within the meaning of Wash. Rev. Code Ann. § 19.96.010.

20  107.    P&G deceptive practices, as alleged herein, are injurious to the public interest as

21  it has the capacity to injure other persons.

22  108.    P&G has violated portions of section 260 of the FTC Green Guides, which have

23  been incorporated into RCWA 70A.455.020 and RCWA 19.86.920.

24  109.    P&G is liable to Plaintiff for damages in amounts to be proven at trial, including

25  attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem

26  appropriate under Wash. Rev. Code Ann. § 19.86.090.

27

28



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1
2

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON WASHINGTON LAW)**

3    110.    Plaintiff incorporates by reference all preceding allegations as though fully set
4    forth herein.

5    111.    Plaintiff brings this Count on behalf of the Washington Class.

6    112.    P&G intentionally concealed and suppressed material facts regarding its Charmin
7    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial
8    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically
9    converting critically important old-growth forests into environmentally devastating
10   Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and
11   (iv) the Rainforest Alliance continues to provide certification to Charmin products.

12   113.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally
13   sustainable and therefore is required to make a full and fair disclosure under Washington law.
14   P&G therefore had a duty to disclose the material facts as additional information in order to
15   make its Charmin Sustainability Promise website (as well as P&G's other environmental claims
16   including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these
17   representations were false when made.

18   114.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and
19   the other Washington Class members to make their Charmin purchases. Plaintiffs were unaware
20   of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs
21   and the other Washington Class members would not have purchased Charmin products, or would
22   not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the
23   other Washington Class members have suffered injury in fact, including lost money or property,
24   as a result of P&G's misrepresentations and omissions.

25   115.    Accordingly, P&G is liable to Plaintiffs and the other Washington Class members
26   for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-
27   bargain damages, restitution and/or diminution of value.

28

CLASS ACTION COMPLAINT - 51
011290-11/2966577 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    116.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

2    intent to defraud, and in reckless disregard of Plaintiff's and other Washington Class members'

3    rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

4    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

5    future, which amount is to be determined according to proof.

6    **B.    Claims brought on behalf of the Alabama Class**

7                              **COUNT III**
                        **FRAUDULENT CONCEALMENT**
8                        **(BASED ON ALABAMA LAW)**

9    117.    Plaintiffs incorporate by reference all preceding allegations as though fully set

10   forth herein.

11   118.    Plaintiffs bring this Count on behalf of the Alabama Class.

12   119.    P&G intentionally concealed and suppressed material facts regarding its Charmin

13   Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

14   logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

15   converting critically important old-growth forests into environmentally devastating

16   Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

17   (iv) the Rainforest Alliance continues to provide certification to Charmin products.

18   120.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

19   sustainable and therefore is required to make a full and fair disclosure under Alabama law. P&G

20   therefore had a duty to disclose the material facts as additional information in order to make its

21   Charmin Sustainability Promise website (as well as P&G's other environmental claims including

22   on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

23   representations were false when made.

24   121.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

25   the other Alabama Class members to make their Charmin purchases. Plaintiffs were unaware of

26   these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

27   and the other Alabama Class members would not have purchased Charmin products, or would

28   not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1   other Alabama Class members have suffered injury in fact, including lost money or property, as

2   a result of P&G's misrepresentations and omissions.

3       122.    Accordingly, P&G is liable to Plaintiffs and the other Alabama Class members for

4   damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

5   damages, restitution and/or diminution of value.

6       123.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

7   intent to defraud, and in reckless disregard of Plaintiffs' and other Alabama Class members'

8   rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

9   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

10  future, which amount is to be determined according to proof.

11  **C.    Claims brought on behalf of the Alaska Class**

12                          **COUNT IV**
                    **FRAUDULENT CONCEALMENT**
13                     **(BASED ON ALASKA LAW)**

14      124.    Plaintiffs incorporate by reference all preceding allegations as though fully set

15  forth herein.

16      125.    Plaintiffs bring this Count on behalf of the Alaska Class.

17      126.    P&G intentionally concealed and suppressed material facts regarding its Charmin

18  Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

19  logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

20  converting critically important old-growth forests into environmentally devastating

21  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

22  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

23      127.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

24  sustainable and therefore is required to make a full and fair disclosure under Alaska law. P&G

25  therefore had a duty to disclose the material facts as additional information in order to make its

26  Charmin Sustainability Promise website (as well as P&G's other environmental claims including

27  on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

28  representations were false when made.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

128.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Alaska Class members to make their Charmin purchases. Plaintiffs were unaware of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the other Alaska Class members would not have purchased Charmin products, or would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other Alaska Class members have suffered injury in fact, including lost money or property, as a result of P&G's misrepresentations and omissions.

129.    Accordingly, P&G is liable to Plaintiffs and the other Alaska Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

130.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Alaska Class members' rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**D.    Claims brought on behalf of the Arizona Class**

**COUNT V**
**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**
**(ARIZONA REV. STAT. § 44-1521, *et seq*.)**

131.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

132.    This claim is brought by Plaintiffs on behalf of the Arizona Class.

133.    The Arizona Consumer Fraud Act (Arizona CFA) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. § 44-1522(A).



134.     Defendants, Plaintiffs, and Arizona Class members are "persons" within the meaning of the Arizona CFA, Ariz. Rev. Stat. § 44-1521(6).

135.     The Charmin Toilet Paper at issue is "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

136.     Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

137.     Pursuant to the Arizona CFA, Plaintiffs seek monetary relief against Defendant in an amount to be determined at trial.  Plaintiffs also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind.

138.     Plaintiffs also seek an order enjoining each Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT VI**
**FRAUDULENT CONCEALMENT**
**(BASED ON ARIZONA LAW)**

139.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

140.     Plaintiffs bring this Count on behalf of the Arizona Class.

141.     P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products.

142.     P&G voluntarily represented that its Charmin Toilet Paper was environmentally sustainable and therefore is required to make a full and fair disclosure under Arizona law. P&G therefore had a duty to disclose the material facts as additional information in order to make its Charmin Sustainability Promise website (as well as P&G's other environmental claims including

1  on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

2  representations were false when made.

3      143.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

4  the other Arizona Class members to make their Charmin purchases. Plaintiffs were unaware of

5  these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

6  and the other Arizona Class members would not have purchased Charmin products, or would not

7  have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other

8  Arizona Class members have suffered injury in fact, including lost money or property, as a result

9  of P&G's misrepresentations and omissions.

10      144.    Accordingly, P&G is liable to Plaintiffs and the other Arizona Class members for

11  damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

12  damages, restitution and/or diminution of value.

13      145.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

14  intent to defraud, and in reckless disregard of Plaintiffs' and other Arizona Class members'

15  rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

16  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

17  future, which amount is to be determined according to proof.

18  **E.**    **Claims brought on behalf of the California Class**

19                                   **COUNT VII**

    **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

20                 **(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

21      146.    Plaintiffs incorporate by reference all preceding allegations as though fully set

22  forth herein.

23      147.    Plaintiffs bring this Count on behalf of the California Class.

24      148.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200,

25  *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent

26  business act or practice and unfair, deceptive, untrue or misleading advertising."

27      149.    P&G's conduct, as described herein, was and is in violation of the UCL in at least

28  the following ways:



i.     By knowingly and intentionally concealing from Plaintiffs and the other California Class members that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products, while obtaining money from Plaintiffs and California Class members;

ii.    By marketing Charmin as an environmentally sustainable product;

iii.   By violating federal guidance, such as the FTC Green Guides; and

vi.    By violating other California laws, including Cal. Civ. Code §§ 1709, 1710, and 1750, *et seq.*, and Cal. Com. Code § 2313.

150.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other California Class members to make their Charmin purchases. Absent those omissions and/or misrepresentations, Plaintiffs and the other California Class members would not have purchased Charmin products, or would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other California Class members have suffered injury in fact, including lost money or property, as a result of P&G's misrepresentations and omissions.

151.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by P&G under Cal. Bus. & Prof. Code § 17200.

152.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin P&G from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the California Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

### COUNT VIII
### FRAUDULENT CONCEALMENT
### (BASED ON CALIFORNIA LAW)

153.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

154.    Plaintiffs bring this Count on behalf of the California Class.



1    155.    P&G intentionally concealed and suppressed material facts regarding its Charmin

2    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

3    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

4    converting critically important old-growth forests into environmentally devastating

5    Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

6    (iv) the Rainforest Alliance continues to provide certification to Charmin products.

7    156.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

8    sustainable and therefore is required to make a full and fair disclosure under California law. P&G

9    therefore had a duty to disclose the material facts as additional information in order to make its

10    Charmin Sustainability Promise website (as well as P&G's other environmental claims including

11    on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

12    representations were false when made.

13    157.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

14    the other California Class members to make their Charmin purchases. Plaintiffs were unaware of

15    these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

16    and the other California Class members would not have purchased Charmin products, or would

17    not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

18    other California Class members have suffered injury in fact, including lost money or property, as

19    a result of P&G's misrepresentations and omissions.

20    158.    Accordingly, P&G is liable to Plaintiffs and the other California Class members

21    for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-

22    bargain damages, restitution and/or diminution of value.

23    159.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

24    intent to defraud, and in reckless disregard of Plaintiffs' and other California Class members'

25    rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

26    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

27    future, which amount is to be determined according to proof.

28

CLASS ACTION COMPLAINT - 58
011290-11/2966577 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F.      **Claims brought on behalf of the Connecticut Class**

**COUNT IX**
**VIOLATION OF THE CONNECTICUT UNFAIR**
**TRADE PRACTICES ACT**
**(Conn. Gen. Stat. § 42-110A, *ET SEQ.*)**

160.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

161.    This claim is brought by Plaintiffs on behalf of the Connecticut Class.

162.    The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

163.    Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

164.    Defendant's challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

165.    Plaintiffs and Connecticut Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

166.    Defendant's acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights and safety of others. Therefore, punitive damages are warranted.

**COUNT X**
**FRAUDULENT CONCEALMENT**
**(BASED ON CONNECTICUT LAW)**

167.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

168.    Plaintiffs bring this Count on behalf of the Connecticut Class.

169.    P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating



1  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

2  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

3      170.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

4  sustainable and therefore is required to make a full and fair disclosure under Connecticut law.

5  P&G therefore had a duty to disclose the material facts as additional information in order to

6  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

7  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

8  representations were false when made.

9      171.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

10  the other Connecticut Class members to make their Charmin purchases. Plaintiffs were unaware

11  of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

12  and the other Connecticut Class members would not have purchased Charmin products, or would

13  not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

14  other Connecticut Class members have suffered injury in fact, including lost money or property,

15  as a result of P&G's misrepresentations and omissions.

16      172.    Accordingly, P&G is liable to Plaintiffs and the other Connecticut Class members

17  for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-

18  bargain damages, restitution and/or diminution of value.

19      173.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

20  intent to defraud, and in reckless disregard of Plaintiffs' and other Connecticut Class members'

21  rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

22  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

23  future, which amount is to be determined according to proof.

24  **G.    Claims brought on behalf of the District of Columbia ("DC")**

25                    **COUNT XI**
                **FRAUDULENT CONCEALMENT**
26                **(BASED ON DC LAW)**

27      174.    Plaintiffs incorporate by reference all preceding allegations as though fully set

28  forth herein.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    175.    Plaintiffs bring this Count on behalf of the DC Class.

2    176.    P&G intentionally concealed and suppressed material facts regarding its Charmin

3    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

4    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

5    converting critically important old-growth forests into environmentally devastating

6    Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

7    (iv) the Rainforest Alliance continues to provide certification to Charmin products.

8    177.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

9    sustainable and therefore is required to make a full and fair disclosure under District of Columbia

10   law. P&G therefore had a duty to disclose the material facts as additional information in order to

11   make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

12   including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

13   representations were false when made.

14   178.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

15   the other DC Class members to make their Charmin purchases. Plaintiffs were unaware of these

16   material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the

17   other DC Class members would not have purchased Charmin products, or would not have

18   purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other DC

19   Class members have suffered injury in fact, including lost money or property, as a result of

20   P&G's misrepresentations and omissions.

21   179.    Accordingly, P&G is liable to Plaintiffs and the other DC Class members for

22   damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

23   damages, restitution and/or diminution of value.

24   180.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

25   intent to defraud, and in reckless disregard of Plaintiffs' and other DC Class members' rights and

26   the representations that P&G made to them, in order to enrich P&G. P&G's conduct warrants an

27   assessment of punitive damages in an amount sufficient to deter such conduct in the future,

28   which amount is to be determined according to proof.



1

**H.    Claims brought on behalf of the Florida Class**

2

<b>COUNT XII<br>FRAUDULENT CONCEALMENT<br>(BASED ON FLORIDA LAW)</b>

3

4       181.    Plaintiffs incorporate by reference all preceding allegations as though fully set

5   forth herein.

6       182.    Plaintiffs bring this Count on behalf of the Florida Class.

7       183.    P&G intentionally concealed and suppressed material facts regarding its Charmin

8   Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

9   logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

10  converting critically important old-growth forests into environmentally devastating

11  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

12  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

13      184.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

14  sustainable and therefore is required to make a full and fair disclosure under Washington law.

15  P&G therefore had a duty to disclose the material facts as additional information in order to

16  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

17  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

18  representations were false when made.

19      185.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

20  the other Florida Class members to make their Charmin purchases. Plaintiffs were unaware of

21  these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

22  and the other Florida Class members would not have purchased Charmin products, or would not

23  have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other

24  Florida Class members have suffered injury in fact, including lost money or property, as a result

25  of P&G's misrepresentations and omissions.

26      186.    Accordingly, P&G is liable to Plaintiffs and the other Florida Class members for

27  damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

28  damages, restitution and/or diminution of value.

CLASS ACTION COMPLAINT - 62
011290-11/2966577 V1



187.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Florida Class members' rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**I.    Claims brought on behalf of the Georgia Class**

**COUNT XIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON GEORGIA LAW)**

188.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

189.    Plaintiffs bring this Count on behalf of the Georgia Class.

190.    P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products.

191.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally sustainable and therefore is required to make a full and fair disclosure under Georgia law. P&G therefore had a duty to disclose the material facts as additional information in order to make its Charmin Sustainability Promise website (as well as P&G's other environmental claims including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these representations were false when made.

192.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Georgia Class members to make their Charmin purchases. Plaintiffs were unaware of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the other Georgia Class members would not have purchased Charmin products, or would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    Georgia Class members have suffered injury in fact, including lost money or property, as a result

2    of P&G's misrepresentations and omissions.

3        193.    Accordingly, P&G is liable to Plaintiffs and the other Georgia Class members for

4    damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

5    damages, restitution and/or diminution of value.

6        194.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

7    intent to defraud, and in reckless disregard of Plaintiffs' and other Georgia Class members'

8    rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

9    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

10   future, which amount is to be determined according to proof.

11   **J.    Claims brought on behalf of the Idaho Class**

12   
13   

**COUNT XIV**
**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**
**(IDAHO CODE ANN. § 48-601, *ET SEQ.*)**

14       195.    Plaintiffs hereby incorporate by reference the allegations contained in the

15   preceding paragraphs of this complaint.

16       196.    This claim is brought by Plaintiffs on behalf of the Idaho Class.

17       197.    The Idaho Consumer Protection Act (Idaho CPA) prohibits deceptive business

18   practices, including, but not limited to, "(11) [m]aking false or misleading statements of fact

19   concerning the reasons for, existence of, or amounts of price reductions;" "(17) [e]ngaging in any

20   act or practice which is otherwise misleading, false, or deceptive to the consumer;" or

21   "(18) engaging in any unconscionable method, act or practice in the conduct of trade or

22   commerce," Idaho Code Ann. § 48-603.

23       198.    Defendant is a "person" under Idaho Code Ann. § 48-602(1).

24       199.    Defendant's acts or practices as set forth above occurred in the conduct of "trade"

25   or "commerce" under Idaho Code Ann. § 48-602(2).

26       200.    Pursuant to Idaho Code § 48-608, Plaintiffs seek monetary relief against

27   Defendant measured as the greater of (a) actual damages in an amount to be determined at trial

28   and (b) statutory damages in the amount of $1000 for each plaintiff.

---

CLASS ACTION COMPLAINT - 64
011290-11/2966577 V1



1    201.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or

2    deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho

3    CPA.

4    202.    Plaintiffs also seek punitive damages against Defendant because Defendant's

5    conduct evidences an extreme deviation from reasonable standards.  Defendant flagrantly,

6    maliciously, and fraudulently misrepresented the environmental sustainability of Charmin Toilet

7    Paper and concealed facts that only it knew.  Defendant's unlawful conduct constitutes malice,

8    oppression and fraud warranting punitive damages.

9

10                                           COUNT XV
                                  FRAUDULENT CONCEALMENT
11                                     (BASED ON IDAHO LAW)

12    203.    Plaintiffs incorporate by reference all preceding allegations as though fully set

13    forth herein.

14    204.    Plaintiffs bring this Count on behalf of the Idaho Class.

15    205.    P&G intentionally concealed and suppressed material facts regarding its Charmin

16    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

17    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

18    converting critically important old-growth forests into environmentally devastating

19    Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

20    (iv) the Rainforest Alliance continues to provide certification to Charmin products.

21    206.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

22    sustainable and therefore is required to make a full and fair disclosure under Washington law.

23    P&G therefore had a duty to disclose the material facts as additional information in order to

24    make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

25    including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

26    representations were false when made.

27    207.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

28    the other Idaho Class members to make their Charmin purchases. Plaintiffs were unaware of

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

2  and the other Idaho Class members would not have purchased Charmin products, or would not

3  have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other

4  Idaho Class members have suffered injury in fact, including lost money or property, as a result of

5  P&G's misrepresentations and omissions.

6       208.    Accordingly, P&G is liable to Plaintiffs and the other Idaho Class members for

7  damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

8  damages, restitution and/or diminution of value.

9       209.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

10  intent to defraud, and in reckless disregard of Plaintiffs' and other Idaho Class members' rights

11  and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

12  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

13  future, which amount is to be determined according to proof.

14  **K.    Claims brought on behalf of the Illinois Class**

15                              **COUNT XVI**
                **VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
16              **AND DECEPTIVE BUSINESS PRACTICES ACT**
                   **(815 ILCS 505/1, *et seq.* AND 720 ILCS 295/1A)**
17
        210.    Plaintiffs Carole Grant and Latronya Williams ("Plaintiffs" for purposes of all
18
    Illinois Class Counts) incorporate by reference all preceding allegations as though fully set forth
19
    herein.
20
        211.    Plaintiffs bring this Count on behalf of the Illinois Class.
21
        212.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois
22
    CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of
23
    employment of any deception, fraud, false pretense, tales promise, misrepresentation or the
24
    concealment, suppression or omission of any material fact, with intent that others rely upon the
25
    concealment, suppression or omission of such material fact . . . in the conduct of trade or
26
    commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815
27
    ILCS 505/2.
28

CLASS ACTION COMPLAINT - 66
011290-11/2966577 V1

213.    P&G is a "person" as that term is defined in 815 ILCS 505/1(c).

214.    Plaintiffs and Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

215.    815 Ill. Comp. Stat. Ann. 505/2 provides that "in construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

216.    P&G's overall packaging misled and deceived reasonable consumers because P&G omitted, suppressed, and concealed that its Charmin Toilet Paper was not environmentally beneficial, while representing environmentally beneficial quality and characteristics.

217.    P&G's communications on its Charmin Toilet Paper packaging demonstrate the misleading nature of the material omissions, concealments, and suppression of material facts about its environmentally degrading manufacturing practices.

218.    Based on the overall impression given by the packaging communications and misrepresentations and omissions, reasonable consumers would be misled by Charmin Toilet Paper's true environmental impact based on overall impression of labels. Based on the overall impression of the packaging, no reasonable consumer could expect or understand that Charmin Toilet Paper was manufactured using environmentally degrading practices.

219.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against P&G in the amount of actual damages as well as punitive damages because P&G acted with fraud and/or malice and/or was grossly negligent, and concealed, suppressed, and omitted material information.

220.    Plaintiffs also seek an order enjoining P&G's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq.*

**COUNT XVII**
**FRAUD BY CONCEALMENT**
**(BASED ON ILLINOIS LAW)**

221.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    222.    Plaintiffs bring this Count on behalf of the Illinois Class.

2    223.    P&G intentionally concealed and suppressed material facts regarding its Charmin

3  Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

4  logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

5  converting critically important old-growth forests into environmentally devastating

6  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

7  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

8    224.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

9  sustainable and therefore is required to make a full and fair disclosure under Illinois law. P&G

10  therefore had a duty to disclose the material facts as additional information in order to make its

11  Charmin Sustainability Promise website (as well as P&G's other environmental claims including

12  on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

13  representations were false when made.

14    225.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

15  the other California Class members to make their Charmin purchases. Plaintiffs were unaware of

16  these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

17  and the other California Class members would not have purchased Charmin products, or would

18  not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

19  other Illinois Class members have suffered injury in fact, including lost money or property, as a

20  result of P&G's misrepresentations and omissions.

21    226.    Accordingly, P&G is liable to Plaintiffs and the other Illinois Class members for

22  damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

23  damages, restitution and/or diminution of value.

24    227.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

25  intent to defraud, and in reckless disregard of Plaintiffs' and other Illinois Class members' rights

26  and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

27  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

28  future, which amount is to be determined according to proof.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1

**L.    Claims brought on behalf of the Indiana Class**

2

**COUNT XVIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON INDIANA LAW)**

3

4        228.    Plaintiffs incorporate by reference all preceding allegations as though fully set

5    forth herein.

6        229.    Plaintiffs bring this Count on behalf of the Indiana Class.

7        230.    P&G intentionally concealed and suppressed material facts regarding its Charmin

8    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

9    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

10   converting critically important old-growth forests into environmentally devastating

11   Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

12   (iv) the Rainforest Alliance continues to provide certification to Charmin products.

13       231.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

14   sustainable and therefore is required to make a full and fair disclosure under Indiana law. P&G

15   therefore had a duty to disclose the material facts as additional information in order to make its

16   Charmin Sustainability Promise website (as well as P&G's other environmental claims including

17   on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

18   representations were false when made.

19       232.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

20   the other Indiana Class members to make their Charmin purchases. Plaintiffs were unaware of

21   these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

22   and the other Indiana Class members would not have purchased Charmin products, or would not

23   have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other

24   Indiana Class members have suffered injury in fact, including lost money or property, as a result

25   of P&G's misrepresentations and omissions.

26       233.    Accordingly, P&G is liable to Plaintiffs and the other Indiana Class members for

27   damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

28   damages, restitution and/or diminution of value.



234. P&G's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Indiana Class members' rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**M.    Claims brought on behalf of the Maine Class**

**COUNT XIX**
**FRAUDULENT CONCEALMENT**
**(BASED ON MAINE LAW)**

235. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

236. Plaintiffs bring this Count on behalf of the Maine Class.

237. P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products.

238. P&G voluntarily represented that its Charmin Toilet Paper was environmentally sustainable and therefore is required to make a full and fair disclosure under Maine law. P&G therefore had a duty to disclose the material facts as additional information in order to make its Charmin Sustainability Promise website (as well as P&G's other environmental claims including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these representations were false when made.

239. P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Maine Class members to make their Charmin purchases. Plaintiffs were unaware of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the other Maine Class members would not have purchased Charmin products, or would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1   Maine Class members have suffered injury in fact, including lost money or property, as a result

2   of P&G's misrepresentations and omissions.

3       240.    Accordingly, P&G is liable to Plaintiffs and the other Maine Class members for

4   damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

5   damages, restitution and/or diminution of value.

6       241.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

7   intent to defraud, and in reckless disregard of Plaintiffs' and other Maine Class members' rights

8   and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

9   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

10  future, which amount is to be determined according to proof.

11  **N.    Claim brought on behalf of the Maryland Class**

12                              **COUNT XX**
                **VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
13              **(MD. CODE, COM. LAW § 13-101, *ET SEQ.*))**

14      242.    Plaintiffs hereby incorporate by reference the allegations contained in the

15  preceding paragraphs of this complaint.

16      243.    This claim is brought by Plaintiffs on behalf of the Maryland Class.

17      244.    The Maryland Consumer Protection Act (Maryland CPA) provides that a person

18  may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer

19  good, including "failure to state a material fact if the failure deceives or tends to deceive;" "false

20  or misleading representation[s] of fact which concern[] . . . [t]he reason of or the existence or

21  amount of a price reduction;" and "[d]eception, fraud, false pretense, false premise,

22  misrepresentation, or knowing concealment, suppression, or omission of any material fact with

23  the intent that a consumer rely on the same," Md. Code, Com. Law § 13-301, regardless of

24  whether the consumer is actually deceived or damaged, Md. Code, Com. Law § 13-302.

25      245.    Defendant, Plaintiffs, and Maryland Class members are "persons" within the

26  meaning of Md. Code, Com. Law § 13-101(h).

27      246.    Pursuant to Md. Code, Com. Law § 13-408, Plaintiffs seek actual damages,

28  attorneys' fees, and any other just and proper relief available under the Maryland CPA.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**COUNT XXI**
**FRAUDULENT CONCEALMENT**
**(BASED ON MARYLAND LAW)**

247.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

248.     Plaintiffs bring this Count on behalf of the Maryland Class.

249.     P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products.

250.     P&G voluntarily represented that its Charmin Toilet Paper was environmentally sustainable and therefore is required to make a full and fair disclosure under Maryland law. P&G therefore had a duty to disclose the material facts as additional information in order to make its Charmin Sustainability Promise website (as well as P&G's other environmental claims including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these representations were false when made.

251.     P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Maryland Class members to make their Charmin purchases. Plaintiffs were unaware of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the other Maryland Class members would not have purchased Charmin products, or would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other Maryland Class members have suffered injury in fact, including lost money or property, as a result of P&G's misrepresentations and omissions.

252.     Accordingly, P&G is liable to Plaintiffs and the other Maryland Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    253.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

2    intent to defraud, and in reckless disregard of Plaintiffs' and other Maryland Class members'

3    rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

4    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

5    future, which amount is to be determined according to proof.

6

7    **O.    Claim brought on behalf of the Massachusetts Class**

8                        **COUNT XXII**
                     **FRAUD BY CONCEALMENT**
9                 **(BASED ON MASSACHUSETTS LAW)**

10    254.    Plaintiffs incorporate by reference all preceding allegations as though fully set

11    forth herein.

12    255.    Plaintiffs bring this Count on behalf of the Massachusetts Class.

13    256.    P&G intentionally concealed and suppressed material facts regarding its Charmin

14    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

15    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

16    converting critically important old-growth forests into environmentally devastating

17    Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

18    (iv) the Rainforest Alliance continues to provide certification to Charmin products.

19    257.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

20    sustainable and therefore is required to make a full and fair disclosure under Massachusetts law.

21    P&G therefore had a duty to disclose the material facts as additional information in order to

22    make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

23    including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

24    representations were false when made.

25    258.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

26    the other Massachusetts Class members to make their Charmin purchases. Plaintiffs were

27    unaware of these material facts, and had P&G communicated these material facts to consumers,

28    Plaintiffs and the other Massachusetts Class members would not have purchased Charmin



1   products, or would not have purchased Charmin products at the prices they paid. Accordingly,

2   Plaintiffs and the other Massachusetts Class members have suffered injury in fact, including lost

3   money or property, as a result of P&G's misrepresentations and omissions.

4        259.   Accordingly, P&G is liable to Plaintiffs and the other Massachusetts Class

5   members for damages in an amount to be proven at trial, including but not limited to, benefit-of-

6   the-bargain damages, restitution and/or diminution of value.

7        260.   P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

8   intent to defraud, and in reckless disregard of Plaintiffs' and other Massachusetts Class

9   members' rights and the representations that P&G made to them, in order to enrich P&G. P&G's

10  conduct warrants an assessment of punitive damages in an amount sufficient to deter such

11  conduct in the future, which amount is to be determined according to proof.

12  **P.    Claim brought on behalf of the Michigan Class**

13                        **COUNT XXIII**
                **VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
14              **(MICH. COMP. LAWS § 445.903, *ET SEQ.*)**

15       261.   Plaintiffs hereby incorporate by reference the allegations contained in the

16  preceding paragraphs of this complaint.

17       262.   This claim is brought by Plaintiffs on behalf of the Michigan Class.

18       263.   The Michigan Consumer Protection Act (Michigan CPA) prohibits "[u]nfair,

19  unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce,"

20  including "[m]aking false or misleading statements of fact concerning the reasons for, existence

21  of, or amounts of price reductions;" "[f]ailing to reveal a material fact, the omission of which

22  tends to mislead or deceive the consumer, and which fact could not reasonably be known by the

23  consumer;" "charging the consumer a price that is grossly in excess of the price at which similar

24  property or services are sold;" "[m]aking a representation of fact or statement of fact material to

25  the transaction such that a person reasonably believes the represented or suggested state of affairs

26  to be other than it actually is;" or "[f]ailing to reveal facts that are material to the transaction in

27  light of representations of fact made in a positive manner."  Mich. Comp. Laws § 445.903(1).

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

264.     Plaintiffs and Michigan Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

265.     Defendant is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

266.     Plaintiffs seek injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

267.     Plaintiffs also seek punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others.  Defendants maliciously and egregiously misrepresented the environmental sustainability of Charmin Toilet Paper. Defendant's conduct constitutes malice, oppression, and fraud warranting punitive damages.

**COUNT XXIV**
**FRAUDULENT CONCEALMENT**
**(BASED ON MICHIGAN LAW)**

268.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

269.     Plaintiffs bring this Count on behalf of the Michigan Class.

270.     P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products.

271.     P&G voluntarily represented that its Charmin Toilet Paper was environmentally sustainable and therefore is required to make a full and fair disclosure under Michigan law. P&G therefore had a duty to disclose the material facts as additional information in order to make its

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  Charmin Sustainability Promise website (as well as P&G's other environmental claims including

2  on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

3  representations were false when made.

4  272.  P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

5  the other Michigan Class members to make their Charmin purchases. Plaintiffs were unaware of

6  these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

7  and the other Michigan Class members would not have purchased Charmin products, or would

8  not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

9  other Michigan Class members have suffered injury in fact, including lost money or property, as

10  a result of P&G's misrepresentations and omissions.

11  273.  Accordingly, P&G is liable to Plaintiffs and the other Michigan Class members

12  for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-

13  bargain damages, restitution and/or diminution of value.

14  274.  P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

15  intent to defraud, and in reckless disregard of Plaintiffs' and other Michigan Class members'

16  rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

17  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

18  future, which amount is to be determined according to proof.

19  **Q.  Claims brought on behalf of the Minnesota Class**

20  **COUNT XXV**
**VIOLATIONS OF MINNESOTA DECEPTIVE TRADE PRACTICES;**
**ENVIRONMENTAL MARKETING CLAIMS**
**(MINN. STAT. § 325E.41, *et seq.*)**

22  275.  Plaintiffs incorporate by reference all preceding allegations as though fully set

23  forth herein.

24  276.  Plaintiffs bring this Count on behalf of the Minnesota Class.

25  277.  Defendant violated Minn. Stat. §325E.41 by making deceptive and misleading

26  general environmental benefit claims (including sustainability claims) and failing to disclose

27  material omitted information related to these statements.

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1    278.    Defendant made these material misrepresentations and omissions to induce

2    reasonable consumers to purchase its Charmin Toilet Paper.

3    279.    Defendant knew or should have known the material misrepresentations and

4    omissions were misleading to reasonable consumers and in violation of Code of Federal

5    Regulations, title 16, part 260, "Guides for the Use of Environmental Marketing Claims"

6    ("Green Guides").

7    280.    Specifically, 260.4 General environmental benefit claims states: "It is deceptive to

8    misrepresent, directly or by implication, that a product, package, or service offers a general

9    environmental benefit…Unqualified general environmental benefit claims are difficult to

10    interpret and likely convey a wide range of meanings. *In many cases, such claims likely convey*

11    *that the product, package, or service has specific and far-reaching environmental benefits and*

12    *may convey that the item or service has no negative environmental impact. Because it is highly*

13    *unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers*

14    *should not make unqualified general environmental benefit claims.*" (Emphasis added.)

15    281.    Defendant's pattern of deceptive and misleading misrepresentations and

16    omissions, and other misleading conduct were likely to deceive or cause misunderstanding and

17    did in fact deceive Plaintiffs and the Minnesota Class with respect to the Charmin Toilet Papers'

18    quality, nature of the ingredients, and suitability for consumption.

19    282.    Defendant intended for Plaintiffs and the Minnesota Class to rely the material

20    misrepresentations and omissions, concealment, expressed warranties, and/or deceptions

21    regarding the environmental benefits and sustainability of its Charmin Toilet Paper.

22    283.    Defendant's conduct described herein occurred repeatedly in its trade or business

23    and were capable of deceiving a substantial portion of the consuming public.

24    284.    Defendant violated Minn. Stat. §325E.41 by making misrepresentations on its

25    packaging and website that violated the Green Guides.

26    285.    Defendant was under a duty to disclose the omissions because Defendant

27    undertook the disclosure of information about the Charmin Toilet Paper that violated the Green

28    Guides.



286.    Defendant failed to discharge its duty to disclose the Omissions.

287.    The facts concealed, omitted, or not disclosed by Defendant were material facts in that Plaintiffs, the Minnesota Class, and any reasonable consumer would have considered them in deciding whether to purchase the Charmin Toilet Paper.  Had Plaintiffs and the Minnesota Class known the truth, they would not have purchased the Charmin Toilet Paper or paid the premium price.

288.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

289.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Minnesota Class suffered actual damages by: (1) paying a premium price; (2) purchasing Charmin Toilet Paper they would not have purchased; and/or (3) receiving Charmin Toilet Paper that were worth less.

290.    Plaintiff and the members of the Minnesota Class would not have purchased Charmin Toilet Paper at all had they known that Charmin Toilet Paper does not conform to the packaging.

291.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325E.41, Plaintiffs and the Minnesota Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the Minn. Stat. §325E.41.

**COUNT XXVI**
**FRAUDULENT CONCEALMENT**
**(BASED ON MINNESOTA LAW)**

292.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

293.    Plaintiffs bring this Count on behalf of the Minnesota Class.

294.    P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

2  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

3      295.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

4  sustainable and therefore is required to make a full and fair disclosure under Minnesota law.

5  P&G therefore had a duty to disclose the material facts as additional information in order to

6  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

7  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

8  representations were false when made.

9      296.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

10 the other Minnesota Class members to make their Charmin purchases. Plaintiffs were unaware of

11 these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

12 and the other Minnesota Class members would not have purchased Charmin products, or would

13 not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

14 other Minnesota Class members have suffered injury in fact, including lost money or property, as

15 a result of P&G's misrepresentations and omissions.

16     297.    Accordingly, P&G is liable to Plaintiffs and the other Minnesota Class members

17 for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-

18 bargain damages, restitution and/or diminution of value.

19     298.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

20 intent to defraud, and in reckless disregard of Plaintiffs' and other Minnesota Class members'

21 rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

22 warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

23 future, which amount is to be determined according to proof.

24

25

26

27

28

1    **R.    Claims brought on behalf of the Montana Class**

2                          **COUNT XXVII**
         **VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES**
3            **AND CONSUMER PROTECTION ACT OF 1973**
              **(MONT. CODE ANN. § 30-14-101, *ET SEQ.*)**
4
         299.    Plaintiffs hereby incorporate by reference the allegations contained in the
5
preceding paragraphs of this complaint.
6
         300.    This claim is brought by Plaintiffs on behalf of the Montana Class.
7
         301.    The Montana Unfair Trade Practices and Consumer Protection Act (Montana
8
CPA) makes unlawful any "unfair methods of competition and unfair or deceptive acts or
9
practices in the conduct of any trade or commerce."  Mont. Code Ann. § 30-14-103.
10
         302.    Defendant, Plaintiffs, and Montana Class members are "persons" within the
11
meaning of Mont. Code Ann. § 30-14-102(6).
12
         303.    Plaintiffs and Montana Class members are "consumer[s]" under Mont. Code Ann.
13
§ 30-14-102(1).
14
         304.    The sale of each package of Charmin Toilet Paper occurred within "trade and
15
commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Defendant committed
16
deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory
17
section.
18
         305.    Because Defendant's unlawful methods, acts, and practices have caused Plaintiffs
19
to suffer an ascertainable loss of money and property, Plaintiffs seek from Defendant: the greater
20
of actual damages or $500; discretionary treble damages; reasonable attorneys' fees.
21
         306.    Plaintiffs additionally seek an order enjoining Defendant's unfair, unlawful,
22
and/or deceptive practices, and any other relief the Court considers necessary or proper, under
23
Mont. Code Ann. § 30-14-133.
24
                          **COUNT XXVIII**
25                     **FRAUDULENT CONCEALMENT**
                      **(BASED ON MONTANA LAW)**
26
         307.    Plaintiffs incorporate by reference all preceding allegations as though fully set
27
forth herein.
28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    308.    Plaintiffs bring this Count on behalf of the Montana Class.

2    309.    P&G intentionally concealed and suppressed material facts regarding its Charmin

3    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

4    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

5    converting critically important old-growth forests into environmentally devastating

6    Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

7    (iv) the Rainforest Alliance continues to provide certification to Charmin products.

8    310.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

9    sustainable and therefore is required to make a full and fair disclosure under Montana law. P&G

10    therefore had a duty to disclose the material facts as additional information in order to make its

11    Charmin Sustainability Promise website (as well as P&G's other environmental claims including

12    on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

13    representations were false when made.

14    311.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

15    the other Montana Class members to make their Charmin purchases. Plaintiffs were unaware of

16    these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

17    and the other Montana Class members would not have purchased Charmin products, or would

18    not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

19    other Montana Class members have suffered injury in fact, including lost money or property, as a

20    result of P&G's misrepresentations and omissions.

21    312.    Accordingly, P&G is liable to Plaintiffs and the other Montana Class members for

22    damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

23    damages, restitution and/or diminution of value.

24    313.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

25    intent to defraud, and in reckless disregard of Plaintiffs' and other Montana Class members'

26    rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

27    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

28    future, which amount is to be determined according to proof.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    **S.    Claims brought on behalf of the New Hampshire Class**

2                                **COUNT XXIX**
     **VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT**
3                     **(N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*))**

4        314.    Plaintiffs hereby incorporate by reference the allegations contained in the

5    preceding paragraphs of this complaint.

6        315.    This claim is brought by Plaintiffs on behalf of the New Hampshire Class.

7        316.    The New Hampshire Consumer Protection Act (New Hampshire CPA) prohibits a

8    person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or

9    practice," including, "but . . . not limited to" "[m]aking false or misleading statements of fact

10   concerning the reasons for, existence of, or amounts of price reductions." N.H. Rev. Stat. Ann.

11   § 358-A:2.

12       317.    Defendant, Plaintiffs, and New Hampshire Class members are "persons" under

13   N.H. Rev. Stat. Ann. § 358-A:1.

14       318.    Defendant's actions as set forth herein occurred in the conduct of trade or

15   commerce as defined under N.H. Rev. Stat. Ann. § 358-A:1.

16       319.    Because Defendants' willful conduct caused injury to Plaintiffs' property through

17   violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000,

18   whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining

19   each Defendant's unfair and/or deceptive acts and practices; and any other just and proper relief

20   under N.H. Rev. Stat. Ann. § 358-A:10.

21                               **COUNT XXX**
                          **FRAUDULENT CONCEALMENT**
22                      **(BASED ON NEW HAMPSHIRE LAW)**

23       320.    Plaintiffs incorporate by reference all preceding allegations as though fully set

24   forth herein.

25       321.    Plaintiffs bring this Count on behalf of the New Hampshire Class.

26       322.    P&G intentionally concealed and suppressed material facts regarding its Charmin

27   Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

28   logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

CLASS ACTION COMPLAINT - 82
011290-11/2966577 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  converting critically important old-growth forests into environmentally devastating

2  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

3  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

4        323.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

5  sustainable and therefore is required to make a full and fair disclosure under New Hampshire

6  law. P&G therefore had a duty to disclose the material facts as additional information in order to

7  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

8  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

9  representations were false when made.

10       324.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

11 the other New Hampshire Class members to make their Charmin purchases. Plaintiffs were

12 unaware of these material facts, and had P&G communicated these material facts to consumers,

13 Plaintiffs and the other New Hampshire Class members would not have purchased Charmin

14 products, or would not have purchased Charmin products at the prices they paid. Accordingly,

15 Plaintiffs and the other New Hampshire Class members have suffered injury in fact, including

16 lost money or property, as a result of P&G's misrepresentations and omissions.

17       325.    Accordingly, P&G is liable to Plaintiffs and the other New Hampshire Class

18 members for damages in an amount to be proven at trial, including but not limited to, benefit-of-

19 the-bargain damages, restitution and/or diminution of value.

20       326.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

21 intent to defraud, and in reckless disregard of Plaintiffs' and other New Hampshire Class

22 members' rights and the representations that P&G made to them, in order to enrich P&G. P&G's

23 conduct warrants an assessment of punitive damages in an amount sufficient to deter such

24 conduct in the future, which amount is to be determined according to proof.

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**T.      Claims on behalf of the New Mexico Class**

**COUNT XXXI**
**VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**(N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.*)**

327.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

328.     This claim is brought by Plaintiffs on behalf of the New Mexico Class.

329.     The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including, but not limited to, "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).

330.     Defendant, Plaintiffs, and New Mexico Class members are "person[s]" under N.M. Stat. Ann. § 57-12-2.

331.     Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

332.     Because Defendant's unconscionable, willful conduct caused actual harm to Plaintiffs, Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

**COUNT XXXII**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW MEXICO LAW)**

333.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

334.     Plaintiffs bring this Count on behalf of the New Mexico Class.

335.     P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  converting critically important old-growth forests into environmentally devastating

2  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

3  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

4       336.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

5  sustainable and therefore is required to make a full and fair disclosure under New Mexico law.

6  P&G therefore had a duty to disclose the material facts as additional information in order to

7  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

8  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

9  representations were false when made.

10       337.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

11  the other New Mexico Class members to make their Charmin purchases. Plaintiffs were unaware

12  of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

13  and the other New Mexico Class members would not have purchased Charmin products, or

14  would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and

15  the other New Mexico Class members have suffered injury in fact, including lost money or

16  property, as a result of P&G's misrepresentations and omissions.

17       338.    Accordingly, P&G is liable to Plaintiffs and the other New Mexico Class

18  members for damages in an amount to be proven at trial, including but not limited to, benefit-of-

19  the-bargain damages, restitution and/or diminution of value.

20       339.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

21  intent to defraud, and in reckless disregard of Plaintiffs' and other New Mexico Class members'

22  rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

23  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

24  future, which amount is to be determined according to proof.

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  **U.      Claims brought on behalf of the New York Class**

2                              **COUNT XXXIII**
        **VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW §§ 349-350**
3                      **(N.Y. GEN. BUS. LAW §§ 349-350)**

4          340.    Plaintiffs hereby incorporate by reference the allegations contained in the

5  preceding paragraphs of this complaint.

6          341.    This claim is brought by Plaintiffs on behalf of the New York Class.

7          342.    The New York General Business Law (New York GBL) makes unlawful

8  "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen.

9  Bus. Law § 349.

10         343.    Plaintiffs and New York Class members are "persons" within the meaning of

11 N.Y. Gen. Bus. Law § 349(h).

12         344.    Defendant is a "person," "firm," "corporation," or "association" within the

13 meaning of N.Y. Gen. Bus. Law § 349.

14         345.    Defendant's deceptive acts and practices, which were intended to mislead

15 consumers who purchased Charmin Toilet Paper, was conduct directed at consumers.

16         346.    Because Defendant's willful and knowing conduct caused injury to Plaintiffs,

17 Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble

18 damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order

19 enjoining Defendant's deceptive conduct; and any other just and proper relief available under

20 N.Y. Gen. Bus. Law § 349.

21                              **COUNT XXXIV**
                        **FRAUDULENT CONCEALMENT**
22                      **(BASED ON NEW YORK LAW)**

23         347.    Plaintiffs incorporate by reference all preceding allegations as though fully set

24 forth herein.

25         348.    Plaintiffs bring this Count on behalf of the New York Class.

26         349.    P&G intentionally concealed and suppressed material facts regarding its Charmin

27 Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

28 logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1 | converting critically important old-growth forests into environmentally devastating

2 | Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

3 | (iv) the Rainforest Alliance continues to provide certification to Charmin products.

4 |      350.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

5 | sustainable and therefore is required to make a full and fair disclosure under New York law.

6 | P&G therefore had a duty to disclose the material facts as additional information in order to

7 | make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

8 | including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

9 | representations were false when made.

10 |      351.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

11 | the other New York Class members to make their Charmin purchases. Plaintiffs were unaware of

12 | these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

13 | and the other New York Class members would not have purchased Charmin products, or would

14 | not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

15 | other New York Class members have suffered injury in fact, including lost money or property, as

16 | a result of P&G's misrepresentations and omissions.

17 |      352.    Accordingly, P&G is liable to Plaintiffs and the other New York Class members

18 | for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-

19 | bargain damages, restitution and/or diminution of value.

20 |      353.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

21 | intent to defraud, and in reckless disregard of Plaintiffs' and other New York Class members'

22 | rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

23 | warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

24 | future, which amount is to be determined according to proof.

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

V.    **Claims brought on behalf of the Ohio Class**

**COUNT XXXV**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE ANN. § 1345.01, *ET SEQ*.)**

354.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

355.    This claim is brought by Plaintiffs on behalf of the Ohio Class.

356.    Ohio Consumer Sales Practices Act (Ohio CSPA), Ohio Rev. Code Ann. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing that "a specific price advantage exists, if it does not." Ohio Rev. Code Ann. § 1345.02.

357.    Defendant is a "supplier" as that term is defined in Ohio Rev. Code Ann. § 1345.01(C).

358.    Plaintiffs and Ohio Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchases of Charmin Toilet Paper is a "consumer transaction" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

359.    As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendant's deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees, pursuant to Ohio Rev. Code Ann. § 1345.09, *et seq*.

**COUNT XXXVI**
**FRAUDULENT CONCEALMENT**
**(BASED ON OHIO LAW)**

360.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

361.    Plaintiffs bring this Count on behalf of the Ohio Class.

362.    P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1   logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

2   converting critically important old-growth forests into environmentally devastating

3   Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

4   (iv) the Rainforest Alliance continues to provide certification to Charmin products.

5       363.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

6   sustainable and therefore is required to make a full and fair disclosure under Ohio law. P&G

7   therefore had a duty to disclose the material facts as additional information in order to make its

8   Charmin Sustainability Promise website (as well as P&G's other environmental claims including

9   on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

10  representations were false when made.

11      364.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

12  the other Ohio Class members to make their Charmin purchases. Plaintiffs were unaware of these

13  material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the

14  other Ohio Class members would not have purchased Charmin products, or would not have

15  purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other Ohio

16  Class members have suffered injury in fact, including lost money or property, as a result of

17  P&G's misrepresentations and omissions.

18      365.    Accordingly, P&G is liable to Plaintiffs and the other Ohio Class members for

19  damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

20  damages, restitution and/or diminution of value.

21      366.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

22  intent to defraud, and in reckless disregard of Plaintiffs' and other Ohio Class members' rights

23  and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

24  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

25  future, which amount is to be determined according to proof.

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**W.     Claims brought on behalf of the Pennsylvania Class**

**COUNT XXXVII**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(73 PA. CONS. STAT. § 201-1, *ET SEQ*.)**

367.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

368.     This claim is brought by Plaintiffs on behalf the Pennsylvania Class.

369.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including: "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa. Cons. Stat. § 201-2(4).

370.     Defendant, Plaintiffs, and Pennsylvania Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

371.     Plaintiffs and the Pennsylvania Class members purchased Charmin Toilet paper primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

372.     All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

373.     Defendant is liable to Plaintiffs for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 Pa. Cons. Stat. § 201-9.2(a).  Plaintiffs are also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**COUNT XXXVIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON PENNSYLVANIA LAW)**

374.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

375.     Plaintiffs bring this Count on behalf of the Pennsylvania Class.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

376.    P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products.

377.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally sustainable and therefore is required to make a full and fair disclosure under Pennsylvania law. P&G therefore had a duty to disclose the material facts as additional information in order to make its Charmin Sustainability Promise website (as well as P&G's other environmental claims including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these representations were false when made.

378.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Pennsylvania Class members to make their Charmin purchases. Plaintiffs were unaware of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the other Pennsylvania Class members would not have purchased Charmin products, or would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other Pennsylvania Class members have suffered injury in fact, including lost money or property, as a result of P&G's misrepresentations and omissions.

379.    Accordingly, P&G is liable to Plaintiffs and the other Pennsylvania Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

380.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Pennsylvania Class members' rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**X.      Claims brought on behalf of the South Carolina Class**

**COUNT XXXIX**
**VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C.**
**CODE ANN. § 39-5-10, *ET SEQ.*)**

381.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

382.    This claim is brought by Plaintiffs on behalf of the South Carolina Class.

383.    The South Carolina Unfair Trade Practices Act (South Carolina UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  S.C. Code Ann. § 39-5-20(a).

384.    Defendant is a "person" under S.C. Code Ann. § 39-5-10.

385.    Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiffs seek monetary relief to recover their economic losses.  Because Defendant's actions were willful and knowing, Plaintiffs' damages should be trebled.

386.    Plaintiffs further allege that Defendant's malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result.  Defendant misrepresented the environmental sustainability of Charmin Toilet Paper.  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

387.    Plaintiffs further seek an order enjoining each Defendant's unfair or deceptive acts or practices.

**COUNT XL**
**FRAUDULENT CONCEALMENT**
**(BASED ON SOUTH CAROLINA LAW)**

388.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

389.    Plaintiffs bring this Count on behalf of the South Carolina Class.

390.    P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

2  converting critically important old-growth forests into environmentally devastating

3  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

4  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

5      391.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

6  sustainable and therefore is required to make a full and fair disclosure under South Carolina law.

7  P&G therefore had a duty to disclose the material facts as additional information in order to

8  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

9  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

10  representations were false when made.

11      392.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

12  the other South Carolina Class members to make their Charmin purchases. Plaintiffs were

13  unaware of these material facts, and had P&G communicated these material facts to consumers,

14  Plaintiffs and the other South Carolina Class members would not have purchased Charmin

15  products, or would not have purchased Charmin products at the prices they paid. Accordingly,

16  Plaintiffs and the other South Carolina Class members have suffered injury in fact, including lost

17  money or property, as a result of P&G's misrepresentations and omissions.

18      393.    Accordingly, P&G is liable to Plaintiffs and the other South Carolina Class

19  members for damages in an amount to be proven at trial, including but not limited to, benefit-of-

20  the-bargain damages, restitution and/or diminution of value.

21      394.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

22  intent to defraud, and in reckless disregard of Plaintiffs' and other South Carolina Class

23  members' rights and the representations that P&G made to them, in order to enrich P&G. P&G's

24  conduct warrants an assessment of punitive damages in an amount sufficient to deter such

25  conduct in the future, which amount is to be determined according to proof.

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**Y.    Claims brought on behalf of the Tennessee Class**

**COUNT XLI**
**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**
**(Tenn. Code Ann. § 47-18-101, *ET SEQ.*)**

395.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

396.    This claim is brought by Plaintiffs on behalf of the Tennessee Class.

397.    Tennessee Consumer Protection Act (Tennessee CPA) prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including, but not limited to, "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  Tenn. Code Ann. § 47-18-104.

398.    Plaintiffs and Tennessee Class members are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

399.    Defendant is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

400.    Defendant's conduct complained of herein affected "trade," "commerce," or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

401.    Pursuant to Tenn. Code Ann. § 47-18-109(a), Plaintiffs seek monetary relief against each Defendant measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendants' willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

**COUNT XLII**
**FRAUDULENT CONCEALMENT**
**(BASED ON TENNESSEE LAW)**

402.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

403.    Plaintiffs bring this Count on behalf of the Tennessee Class.

404.    P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  converting critically important old-growth forests into environmentally devastating

2  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

3  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

4        405.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

5  sustainable and therefore is required to make a full and fair disclosure under Tennessee law.

6  P&G therefore had a duty to disclose the material facts as additional information in order to

7  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

8  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

9  representations were false when made.

10       406.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

11 the other Tennessee Class members to make their Charmin purchases. Plaintiffs were unaware of

12 these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

13 and the other Tennessee Class members would not have purchased Charmin products, or would

14 not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

15 other Tennessee Class members have suffered injury in fact, including lost money or property, as

16 a result of P&G's misrepresentations and omissions.

17       407.    Accordingly, P&G is liable to Plaintiffs and the other Tennessee Class members

18 for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-

19 bargain damages, restitution and/or diminution of value.

20       408.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

21 intent to defraud, and in reckless disregard of Plaintiffs' and other Tennessee Class members'

22 rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

23 warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

24 future, which amount is to be determined according to proof.

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

**Z.      Claims brought on behalf of the Texas Class**

2

**COUNT XLIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON TEXAS LAW)**

3

4          409.     Plaintiffs incorporate by reference all preceding allegations as though fully set

5    forth herein.

6          410.     Plaintiffs bring this Count on behalf of the Texas Class.

7          411.     P&G intentionally concealed and suppressed material facts regarding its Charmin

8    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

9    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

10   converting critically important old-growth forests into environmentally devastating

11   Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

12   (iv) the Rainforest Alliance continues to provide certification to Charmin products.

13         412.     P&G voluntarily represented that its Charmin Toilet Paper was environmentally

14   sustainable and therefore is required to make a full and fair disclosure under Texas law. P&G

15   therefore had a duty to disclose the material facts as additional information in order to make its

16   Charmin Sustainability Promise website (as well as P&G's other environmental claims including

17   on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

18   representations were false when made.

19         413.     P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

20   the other Texas Class members to make their Charmin purchases. Plaintiffs were unaware of

21   these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

22   and the other Texas Class members would not have purchased Charmin products, or would not

23   have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other

24   Texas Class members have suffered injury in fact, including lost money or property, as a result

25   of P&G's misrepresentations and omissions.

26         414.     Accordingly, P&G is liable to Plaintiffs and the other Texas Class members for

27   damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

28   damages, restitution and/or diminution of value.

1    415.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

2  intent to defraud, and in reckless disregard of Plaintiffs' and other Texas Class members' rights

3  and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

4  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

5  future, which amount is to be determined according to proof.

6  **AA.    Claims brought on behalf of the Utah Class**

7                        **COUNT XLIV**
   **VIOLATION OF THE UTAH CONSUMER SALE PRACTICES ACT**
8            **(UTAH CODE ANN. § 13-11-1, *ET SEQ.*)**

9    416.    Plaintiffs hereby incorporate by reference the allegations contained in the

10  preceding paragraphs of this complaint.

11    417.    This claim is brought by Plaintiffs on behalf of the Utah Class.

12    418.    The Utah Consumer Sales Practices Act (Utah CSPA) makes unlawful any

13  "deceptive act or practice by a supplier in connection with a consumer transaction," including,

14  but not limited to, "indicat[ing] that a specific price advantage exists, if it does not."  Utah Code

15  Ann. § 13-11-4.  "An unconscionable act or practice by a supplier in connection with a consumer

16  transaction" also violates the Utah CSPA.  Utah Code Ann. § 13-11-5.

17    419.    Defendant knew, or had reason to know, that consumers would rely on

18  Defendant's representations and omissions regarding the environmental sustainability of

19  Charmin Toilet Paper and chose to conceal, suppress and omit material facts required to make

20  their environmental claims not misleading. Defendant therefore engaged in an unconscionable

21  act within the meaning of Utah Code Ann. § 13-11-5.

22    420.    Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs seek monetary relief measured

23  as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory

24  damages in the amount of $2,000 for each Plaintiff; reasonable attorneys' fees; and any other just

25  and proper relief available under the Utah CSPA.

26

27

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**COUNT XLV**
**FRAUDULENT CONCEALMENT**
**(BASED ON UTAH LAW)**

421.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

422.     Plaintiffs bring this Count on behalf of the Utah Class.

423.     P&G intentionally concealed and suppressed material facts regarding its Charmin Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically converting critically important old-growth forests into environmentally devastating Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and (iv) the Rainforest Alliance continues to provide certification to Charmin products.

424.     P&G voluntarily represented that its Charmin Toilet Paper was environmentally sustainable and therefore is required to make a full and fair disclosure under Utah law. P&G therefore had a duty to disclose the material facts as additional information in order to make its Charmin Sustainability Promise website (as well as P&G's other environmental claims including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these representations were false when made.

425.     P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Utah Class members to make their Charmin purchases. Plaintiffs were unaware of these material facts, and had P&G communicated these material facts to consumers, Plaintiffs and the other Utah Class members would not have purchased Charmin products, or would not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the other Utah Class members have suffered injury in fact, including lost money or property, as a result of P&G's misrepresentations and omissions.

426.     Accordingly, P&G is liable to Plaintiffs and the other Utah Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    427.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

2    intent to defraud, and in reckless disregard of Plaintiffs' and other Utah Class members' rights

3    and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

4    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

5    future, which amount is to be determined according to proof.

6    **BB.    Claims brought on behalf of the Vermont Class**

7                                  **COUNT XLVI**
                    **VIOLATION OF THE VERMONT CONSUMER FRAUD ACT**
8                      **(VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)**

9    428.    Plaintiffs hereby incorporate by reference the allegations contained in the

10    preceding paragraphs of this complaint.

11    429.    This claim is brought by Plaintiffs on behalf of the Vermont Class.

12    430.    The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair

13    methods of competition in commerce, and unfair or deceptive acts or practices in

14    commerce . . . ." Vt. Stat. Ann. tit. 9, § 2453(a).

15    431.    Defendant was a seller within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

16    432.    Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of

17    [their] damages, or the consideration or the value of the consideration given by [them],

18    reasonable attorney's fees, and exemplary damages not exceeding three times the value of the

19    consideration given by [them]," pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

20                                  **COUNT XLVII**
                        **FRAUDULENT CONCEALMENT**
21                        **(BASED ON VERMONT LAW)**

22    433.    Plaintiffs incorporate by reference all preceding allegations as though fully set

23    forth herein.

24    434.    Plaintiffs bring this Count on behalf of the Vermont Class.

25    435.    P&G intentionally concealed and suppressed material facts regarding its Charmin

26    Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

27    logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

28    converting critically important old-growth forests into environmentally devastating

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

2  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

3      436.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

4  sustainable and therefore is required to make a full and fair disclosure under Vermont law. P&G

5  therefore had a duty to disclose the material facts as additional information in order to make its

6  Charmin Sustainability Promise website (as well as P&G's other environmental claims including

7  on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

8  representations were false when made.

9      437.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

10  the other Vermont Class members to make their Charmin purchases. Plaintiffs were unaware of

11  these material facts, and had P&G communicated these material facts to consumers, Plaintiffs

12  and the other Vermont Class members would not have purchased Charmin products, or would

13  not have purchased Charmin products at the prices they paid. Accordingly, Plaintiffs and the

14  other Vermont Class members have suffered injury in fact, including lost money or property, as a

15  result of P&G's misrepresentations and omissions.

16      438.    Accordingly, P&G is liable to Plaintiffs and the other Vermont Class members for

17  damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain

18  damages, restitution and/or diminution of value.

19      439.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

20  intent to defraud, and in reckless disregard of Plaintiffs' and other Vermont Class members'

21  rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

22  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

23  future, which amount is to be determined according to proof.

24  **CC.    Claims brought on behalf of the West Virginia Class**

25                          **COUNT XLVIII**
                      **FRAUDULENT CONCEALMENT**
26                  **(BASED ON WEST VIRGINIA LAW)**

27      440.    Plaintiffs incorporate by reference all preceding allegations as though fully set

28  forth herein.

1    441.    Plaintiffs bring this Count on behalf of the West Virginia Class.

2    442.    P&G intentionally concealed and suppressed material facts regarding its Charmin

3  Toilet Paper. These material facts included that (i) Charmin sources its wood pulp via industrial

4  logging practices such as clear cutting and burning; (ii) Charmin suppliers are systematically

5  converting critically important old-growth forests into environmentally devastating

6  Frankenforests; (iii) only a fraction of its wood pulp is sourced from FSC certified forests; and

7  (iv) the Rainforest Alliance continues to provide certification to Charmin products.

8    443.    P&G voluntarily represented that its Charmin Toilet Paper was environmentally

9  sustainable and therefore is required to make a full and fair disclosure under West Virginia law.

10  P&G therefore had a duty to disclose the material facts as additional information in order to

11  make its Charmin Sustainability Promise website (as well as P&G's other environmental claims

12  including on its Charmin Toilet Paper packaging) not misleading. P&G also knew that these

13  representations were false when made.

14    444.    P&G's omissions and/or misrepresentations alleged herein caused Plaintiffs and

15  the other West Virginia Class members to make their Charmin purchases. Plaintiffs were

16  unaware of these material facts, and had P&G communicated these material facts to consumers,

17  Plaintiffs and the other West Virginia Class members would not have purchased Charmin

18  products, or would not have purchased Charmin products at the prices they paid. Accordingly,

19  Plaintiffs and the other West Virginia Class members have suffered injury in fact, including lost

20  money or property, as a result of P&G's misrepresentations and omissions.

21    445.    Accordingly, P&G is liable to Plaintiffs and the other West Virginia Class

22  members for damages in an amount to be proven at trial, including but not limited to, benefit-of-

23  the-bargain damages, restitution and/or diminution of value.

24    446.    P&G's acts were done wantonly, maliciously, oppressively, deliberately, with

25  intent to defraud, and in reckless disregard of Plaintiffs' and other West Virginia Class members'

26  rights and the representations that P&G made to them, in order to enrich P&G. P&G's conduct

27  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

28  future, which amount is to be determined according to proof.



1

2 **PRAYER FOR RELIEF**

3   WHEREFORE, Plaintiffs, individually and on behalf of members of the State Classes,

4 respectfully request that the Court enter judgment in their favor and against P&G, as follows:

5   A.  Certification of the proposed State Law Classes, including appointment of

6 Plaintiffs' counsel as Class Counsel;

7   B.  An order temporarily and permanently enjoining P&G from continuing the

8 unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

9   E.  Costs, restitution, damages, including punitive damages, and disgorgement in an

10 amount to be determined at trial;

11   F.  An order requiring P&G to pay both pre- and post-judgment interest on any

12 amounts awarded;

13   G.  An award of costs and attorneys' fees; and

14   H.  Such other or further relief as may be appropriate.

15 **DEMAND FOR JURY TRIAL**

16   Plaintiff hereby demands a jury trial for all claims so triable.

17

18

19

20

21

22

23

24

25

26

27

28



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1   DATED: January 16, 2025              Respectfully submitted,

2

3                                 HAGENS BERMAN SOBOL SHAPIRO LLP

4                                 By:    */s/ Steve W. Berman*
                                 Steve W. Berman (WSBA No. 12536)

5                               By:    */s/ Catherine Y.N. Gannon*
                                 Catherine Y.N. Gannon (WSBA No. 47664)

6                                 1301 Second Avenue, Suite 2000
                                 Seattle, WA 98101

7                                 Telephone: (206) 623-7292
                                 Facsimile:  (206) 623-0594

8                                 Email: steve@hbsslaw.com

9                                         catherineg@hbsslaw.com

10

11                               Rebecca A. Peterson (*pro hac* forthcoming)
                               GEORGE FELDMAN MCDONALD, PLLC

12                               1650 W. 82nd Street, Suite 880
                               Bloomington, Minnesota 55431

13                               Telephone: (612) 778-9595
                               Email: RPeterson@4-Justice.com

14

15                               *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX