The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELISSA LOWRY, ADAM ALZALDI, DWIGHT CHORNOMUD, MELISSA CUEVAS, PAMELA GIARRIZZO, CAROLE GRANT, CYNTHIA MEUSE, and LATRONYA WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PROCTER & GAMBLE COMPANY, <br><br> Defendant. | Case No. 2:25-CV-00108-JHC <br><br> THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS <br><br> NOTE ON MOTION CALENDAR: May 9, 2025[1] |

---

[1] Pursuant to the Stipulated Motion and Order re: Briefing Schedule (Dkt. 11).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    The Forestry Companies in P&G's Supply Chain Harvest and Replant
        Trees in Accordance with Canada's Strict Forestry Laws................................... 2

    B.    All Charmin Products Are Certified by the Forest Stewardship Council............ 5

    C.    P&G Closely Partners with the Rainforest Alliance............................................ 6

    D.    Plaintiffs' Lawsuit Against P&G ........................................................................ 7

LEGAL STANDARDS ....................................................................................................... 8

ARGUMENT ....................................................................................................................... 9

I.    Plaintiffs Fail to Plausibly Allege that They Were Actually Deceived ........................... 9

    A.    *Protect:* Plaintiffs Do Not Deny that Charmin Products Are FSC Certified
        and Appropriately Use the "FSC Mix" Logo .................................................... 11

    B.    *Grow:* Plaintiffs Do Not Deny that the Forestry Companies in P&G's
        Supply Chain Replant At Least Two Trees for Every One Harvested .............. 13

    C.    *Restore:* Plaintiffs Do Not Deny that P&G Has Partnered with the Arbor
        Day Foundation to Replant One Million Trees.................................................. 16

    D.    Plaintiffs Do Not Deny that P&G Properly Uses the Rainforest Alliance
        Forest Allies Logo on Charmin Packaging ....................................................... 16

    E.    P&G's Statements to Investors About Its Deforestation Policies Have No
        Bearing on Plaintiffs' Consumer Claims .......................................................... 17

II.    Plaintiffs Do Not Plead Their Claims with the Particularity Required by Rule 9(b) ..... 18

III.    Fraudulent Concealment Is Not an Independent Cause of Action Under Many of
      the Applicable State Laws ............................................................................................ 19

IV.    The Court Lacks Personal Jurisdiction Over P&G for Claims of Out-of-State
       Named Plaintiffs ......................................................................................................... 20

    A.    P&G Is Not Subject to General Jurisdiction in Washington ............................. 20

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

B.    P&G Is Not Subject to Specific Jurisdiction in Washington for Out-of-State Named Plaintiffs' Claims....................................................21

V.    Plaintiffs Lack Standing to Bring State-Law Claims Under the Laws of States Where They Do Not Reside ...........................................................22

VI.    Many of Plaintiffs' Claims Are Untimely ......................................................23

A.    The Washington Plaintiff's Claims Are Barred by the Statutes of Limitations ..............................................................................................23

1.    Lowry's claims accrued no later than 2020 ............................24

2.    The discovery rule is not applicable .......................................25

3.    Lowry fails to plead fraudulent concealment tolling or estoppel ...........26

B.    Many Other Claims Are Likewise Time-Barred .................................27

CONCLUSION..........................................................................................................29

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.T. v. Everett Sch. Dist.*
  2017 WL 4811361 (W.D. Wash. Oct. 25, 2017) ................................................................27

*Alonso v. Weiss,*
  2015 WL 7008129 (N.D. Ill. Nov. 12, 2015) ...................................................................28

*Apple Inc. v. Allan & Assocs. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020) ...............................................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................9

*Baughn v. Johnson & Johnson*,
  2015 WL 4759151 (W.D. Wash. Aug. 12, 2015) ..............................................................18

*Bell Atlantic Corp. v. Twombley*,
  550 U.S. 544 (2007) ............................................................................................................9

*Bettles v. Toyota Motor Corp.*,
  645 F. Supp. 3d 978 (C.D. Cal. 2022) ..............................................................................26

*BP West Coast Prods., LLC v. Shalabi*,
  2012 WL 2277843 (W.D. Wash. June 14, 2012) ..............................................................10

*Brenner v. Vizio, Inc.*,
  2018 WL 2229274 (W.D. Wash. May 16, 2018) ...............................................................23

*Casimir v. Remington Arms Co.*,
  2013 WL 179756 (W.D. Wash. Jan. 16, 2013) .................................................................24

*Chancellor v. Bank of Am. N.A.*,
  2015 WL 5730103 (N.D. Ill. Sept. 29, 2015) ...................................................................19

*Chen v. Dunkin' Brands, Inc.*,
  2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020) ...............22

*Cristia v. Trader Joe's Co.*,
  2022 WL 17551552 (N.D. Ill. Dec. 9, 2022) ....................................................................10

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ..........................................................................................................21

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)..................................................................................................9

*Dwyer v. Allbirds, Inc.*,
   598 F. Supp. 3d 137 (S.D.N.Y. 2022).......................................................12, 17

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ................................................................................10

*Eclectic Prop. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ..................................................................................9

*Ervin v. Irani*,
   2014 WL 4966909 (W.D. Wash. Oct. 3, 2014) ....................................................9

*Eugster v. Wash. State Bar Ass'n*,
   2015 WL 5175722 (W.D. Wash. Sept. 3, 2015).....................................................6

*Ferrie v. Woodford Rsch., LLC*,
   2020 WL 3971343 (W.D. Wash. July 14, 2020) ...............................................10

*Fikes v. Whitesell*,
   2011 WL 5025523 (S.D. Ind. Oct. 20, 2011) ....................................................20

*Gary v. Waste Mgmt., Inc.*,
   2012 WL 1622231 (D. Mass. May 8, 2012) ........................................................28

*Goldstein v. General Motors LLC*,
   445 F. Supp. 3d 1000 (S.D. Cal. 2020)................................................................22

*Greene v. Mizuho Bank, Ltd.*,
   289 F. Supp. 3d 870 (N.D. Ill. 2017) ..................................................................22

*Grill v. Philip Morris USA, Inc.*,
   653 F. Supp. 2d 481 (S.D.N.Y. 2009)...................................................................27

*Hamilton v. NuWest Grp. Holdings LLC*,
   2023 WL 130485 (W.D. Wash. Jan. 9, 2023)...........................................8, 22, 23

*Hamilton v. O'Connor Chevrolet, Inc.*,
   2003 WL 22953337 (N.D. Ill Dec. 12, 2003) ......................................................28

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..............................................................14

*Harry v. Am. Brokers Conduit*,
   2017 WL 129997 (D. Mass. Jan. 12, 2017).........................................................29

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*HDT Bio Corp. v. Emcure Pharma., Ltd.*,
    704 F. Supp. 3d 1175 (W.D. Wash. 2023)..............................................................9

*Hellgren v. Providential Home Income Plan Inc.*,
    2006 WL 8447964 (N.D. Cal. Oct. 26, 2006), *aff'd*, 291 Fed. Appx. 70 (9th Cir.
    2008) (unpublished) ................................................................................24, 25

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ..............................................................................14

*In re Amazon Serv. Fee Litig.*,
    705 F. Supp. 3d 1255 (W.D. Wash. 2023)...........................................................19

*In re Natera Prenatal Testing Litig.*,
    664 F. Supp. 3d 995 (N.D. Cal. 2023) ................................................................18

*In re Park West Galleries, Inc.*,
    732 F. Supp. 2d 1181 (W.D. Wash. 2010)...........................................................26

*Int'l Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945)...........................................................................................20

*Kay v. Wells Fargo Co. N.A.*,
    2007 WL 2141292 (N.D. Cal. July 24, 2007).......................................................28

*Kuboyama v. Wells Fargo Bank, NA*,
    561 F. App'x 640 (9th Cir. 2014) ........................................................................27

*La Barbera v. Ole Mexican Foods Inc.*,
    2023 WL 4162348 (C.D. Cal. May 18, 2023) ......................................................14

*La Fosse v. Sanderson Farms, Inc.*,
    2020 WL 3617786 (N.D. Cal. July 2, 2020)..........................................................22

*Lapinski v. Bank of Am., N.A.*,
    2014 WL 347274 (W.D. Wash. Jan. 30, 2014)......................................................24

*Lee v. Can. Goose US, Inc.*,
    2021 WL 2665955 (S.D.N.Y. June 29, 2021) ..................................................12, 17

*Leonard v. Recontrust Co., N.A.*,
    2016 WL 304802 (W.D. Wash. Jan. 26, 2016), *aff'd sub nom. Bruce v. Recontrust
    Co., N.A.*, 719 F. App'x 713 (9th Cir. 2018) ..................................................25, 26

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Lizama v. H&M Hennes & Mauritz LP,*
 2023 WL 3433957 (E.D. Mo. May 12, 2023) ...............................................15, 18

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992)...........................................................................................8

*Maadanian v. Mercedes-Benz USA, LLC.,*
 2023 WL 4546376 (W.D. Wash. July 14, 2023) ...........................................9, 22

*Maple v. Costco Wholesale Corp.,*
 2013 WL 11842009 (E.D. Wash. Aug. 1, 2013) ..................................................5

*Marolda v. Symantec Corp.,*
 672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................18

*Martinez v. Aero Caribbean,*
 764 F.3d 1062 (9th Cir. 2014) ............................................................................20

*McGinity v. Procter & Gamble Co.,*
 69 F.4th 1093 (9th Cir. 2023) .............................................................................11

*Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.,*
 127 F. Supp. 3d 1107 (W.D. Wash. 2015)...........................................................20

*Miller v. United States,*
 2011 WL 43616 (E.D. Wash. Jan. 6, 2011) .........................................................26

*Mollicone v. Universal Handicraft, Inc.,*
 2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ........................................................23

*Moore v. Trader Joe's Co.,*
 4 F.4th 874 (9th Cir. 2021) .............................................................................9, 14

*Myers v. Starbucks Corp.,*
 2020 WL 13302437 (C.D. Cal. July 29, 2020)................................................12, 17

*Nicholas v. Amazon.com, Inc.,*
 740 F. Supp. 3d 1099 (W.D. Wash. 2024)...........................................................19

*Noramex, LLC v. Am. Paper Recycling Corp.,*
 2005 WL 2921988 (W.D. Wash. Nov. 4, 2005) ...................................................21

*Nordhorn v. Ladish Co.,*
 9 F.3d 1402 (9th Cir. 1993) ................................................................................26

*Orellana v. Croplife Int'l,*
 711 F. Supp. 2d 81 (D.D.C. 2010) ......................................................................19

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - vi

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Palmer v. Apple Inc.*,
   2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ...................................................................18

*Pattison v. Omnitrition Int'l, Inc.*,
   2018 WL 2984820 (W.D. Wash. June 14, 2018)......................................................24, 25, 26

*Power Quality & Elec. Sys., Inc. v. BP W. Coast Prods. LLC*,
   2017 WL 6375760 (N.D. Cal. Dec. 12, 2017) ...................................................................28

*Rakes v. United States*,
   352 F. Supp. 2d 47 (D. Mass. 2005) ...................................................................................28

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ...........................................................................................21

*Saepoff v. N. Cascade Tr. Servs., Inc.*,
   2019 WL 4597504 (W.D. Wash. Sept. 23, 2019).................................................................25

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ......................................................................................18, 19

*Shepard v. Winter*,
   2007 WL 3070495 (W.D. Wash. Oct. 19, 2007) ..................................................................26

*Slattery v. Athena Cosmetics, Inc.*,
   740 F. Supp. 3d 1009 (C.D. Cal. 2024) ..............................................................................23

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) .......................................................................................13

*Van Mourik v. Big Heart Pet Brands, Inc.*,
   2018 WL 1116715 (N.D. Cal. March 1, 2018) .....................................................................23

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2023) ......................................................................................18, 19

*West v. Kalicmi*,
   2008 WL 4542987 (N.D. Ill. Apr. 29, 2008) .......................................................................28

**State Cases**

*Brown v. Otake*,
   138 A.3d 951 (Conn. 2016) ................................................................................................19

*First Md. Leasecorp v. Rothstein*,
   864 P.2d 17 (Wash. Ct. App. 1993)....................................................................................25

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - vii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Iverson v. Dolce Mktg. Grp.*,
    2014 WL 1415106 (Tex. Ct. App. Mar. 28, 2014) ................................................ 20

*Lavie v. Procter & Gamble Co.*,
    129 Cal.Rptr.2d 486 (Cal. Ct. App. 2003) .......................................................... 14

*Niedner v. Ortho-McNeil Pharm., Inc.*,
    58 N.E.3d 1080 (Mass. App. Ct. 2016) .............................................................. 20

*Raymond v. Robinson*,
    15 P.3d 697 (Wash. Ct. App. 2001) ................................................................... 21

*Wisniewski v. Diocese of Belleville*,
    943 N.E. 2d 43 (Ill. App. Ct. 2011) ................................................................... 19

*Young v. Toyota Motor Sales, U.S.A.*,
    442 P.3d 5 (Wash. App. 2019) .......................................................................... 10

**State Statutes**

12 V.S.A. § 511 ........................................................................................................ 27

735 ILCS 5/13-215 .................................................................................................. 27

815 ILCS 505/10a(e) ............................................................................................... 27

14 M.R.S.A. § 859 ................................................................................................... 27

42 Pa. C.S.A.
    §§ 5502 and 5524(7) ........................................................................................ 27
    §§ 5502 and 5527(b) ........................................................................................ 27

Ala. Code 1975 § 6-2-3 ........................................................................................... 27

Alaska Stat. Ann. § 09.10.070 ................................................................................ 27

Ariz. Rev. Stat. Ann.
    § 12-541 ........................................................................................................... 27
    § 12-543(3) ....................................................................................................... 27

Cal. Bus. & Prof. Code § 17208 .............................................................................. 27

Cal. Civ. Proc. Code § 338(d) ................................................................................. 27

Conn. Gen. Stat. § 42-110G(f) ............................................................................... 27

Fla. Stat § 95.11(3)(i) .............................................................................................. 27

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - viii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Idaho Code
    § 5-218(4) .................................................................................................27
    § 48-619 ....................................................................................................27

M.G.L. c. 260, § 2A .....................................................................................27

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ...................................................27

Mich. Comp. Laws
    § 445.903 ...................................................................................................27
    § 600.5813 .................................................................................................27

Minn. Stat. Ann.
    § 541.05, 1(2) ............................................................................................27
    § 541.05, subd.1(6) ...................................................................................27

Mont. Code Ann. § 27-2-203 ......................................................................27

N.M. Stat. Ann. §§ 57-1-12 ........................................................................27

N.Y. Gen. Bus. Law § 349(h) ......................................................................27

Ohio Rev. Code Ann.
    § 1345.10(C) ..............................................................................................27
    § 2305.09 ...................................................................................................27

RCW
    7.72.060(3) .................................................................................................24
    19.86.120 ...................................................................................................24

N.H. RSA § 358-A:3(IV-a) ...........................................................................27

S.C. Code Ann.
    § 15-3-530(7) .............................................................................................27
    § 39-5-150 ..................................................................................................27

T.C.A. § 47-18-110 ......................................................................................27

Utah Code
    §§ 13-2-1(2) & 13-2-6(6)(b) ......................................................................27
    § 78B-2-305(3) ...........................................................................................27

Wash. Rev. Code. Ann. § 19.86.120 ............................................................27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**Rules**

Fed. R. Civ. P.
    8.................................................................................................................................10
    9(b)........................................................................................................ *passim*
    12(b)(1)...................................................................................................8, 29
    12(b)(2)...................................................................................................8, 29
    12(b)(6)...................................................................................................8, 29

**Regulations**

16 C.F.R. § 260.4(c).....................................................................................15

16 C.F.R. § 260.2 ........................................................................................16

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - x

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# INTRODUCTION

This is a false advertising lawsuit. But Plaintiffs' complaint, despite its extraordinary length, does not plausibly allege that any Charmin advertising is actually false. Instead, Plaintiffs take issue with forestry practices in general, while at the same time acknowledging (as they must) that third-party organizations certify these practices. But mere disagreement with external standards and requirements, including those set forth by the Canadian government, does not establish any consumer fraud. In reality, Plaintiffs' complaint is not about consumer deception— it is about concern with the forestry industry. But a false advertising lawsuit is not the appropriate vehicle to address these concerns, and Plaintiffs' complaint fails as a matter of law.

Plaintiffs' deception theory relies heavily on The Procter & Gamble Company's ("P&G") use of certain third-party logos on Charmin packaging. But Plaintiffs do not allege that P&G is misusing the logos, or that the Charmin products fail to meet the third-party requirements for using those logos. Instead, Plaintiffs' actual grievance appears to be with the third-party requirements themselves, including requirements set forth by the Forest Stewardship Council ("FSC"). But if Plaintiffs have concerns with these standards, they should petition the relevant third parties to have them changed—not bring meritless claims against P&G for complying with them.

Beyond these third-party logos, Plaintiffs also allege P&G deceives consumers through its use of the phrases, "Keep Forests as Forests" and "Protect-Grow-Restore," despite acknowledging that P&G explains exactly what these statements mean. *See* Compl. ¶¶ 6, 43. Nowhere in their complaint do Plaintiffs allege that P&G does not deliver on these claims. *First*, Plaintiffs do not dispute that Charmin products are third-party certified by the FSC, or that P&G appropriately uses the "FSC Mix" logo on its packaging in accordance with the FSC's rules. *See id.* ¶¶ 6, 43, 45, 68. *Second*, Plaintiffs do not dispute that the forestry companies in P&G's supply chain replant two trees for every one that they harvest. *See id.* ¶¶ 6, 43. *Third*, Plaintiffs do not dispute that P&G has partnered with the Arbor Day Foundation to replant one million trees in areas affected by natural disasters. *See id.* Instead, Plaintiffs allege these statements actually communicate something *more* than what P&G actually says, *i.e.*, that P&G has the ability to return forests to

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

their original biodiversity levels the moment new trees are replanted in place of older ones. No reasonable consumer could possibly adopt this interpretation.

Ultimately, Plaintiffs' claims against P&G fail for the following reasons: *First*, Plaintiffs fail to plausibly allege that they were actually deceived by any statements by P&G. *Second*, none of Plaintiffs' claims—all of which are subject to Rule 9(b)'s heightened pleading standard—are alleged with the necessary particularity required for fraud-based claims. *Third*, Plaintiffs assert a variety of fraudulent concealment causes of action that do not even exist under applicable state laws. *Fourth*, this Court lacks personal jurisdiction over P&G for the claims of the Named Plaintiffs who do not reside in Washington. *Fifth*, the Named Plaintiffs do not have standing to sue for claims arising under the laws of states where they do not reside and were not allegedly injured. *Sixth*, the Washington Plaintiff's claims are barred by the applicable statutes of limitations, as are many of Plaintiffs' other claims.

The Court should dismiss all of Plaintiffs' claims with prejudice.

## BACKGROUND[2]

P&G is a leading producer of high-quality consumer goods, including Charmin, one of the nation's most popular toilet paper brands. *See* Compl. ¶ 26. Because Charmin relies on wood pulp, P&G works to protect and restore critical forestry ecosystems, and to protect the long-term health of our planet. To that end, P&G works with a network of suppliers that are committed to sustainable forestry practices, and P&G uses wood pulp that is sourced in accordance with applicable laws and regulations, established by the Canadian government, as well as third-party certifications, which require efforts beyond what is legally required.

### A.    The Forestry Companies in P&G's Supply Chain Harvest and Replant Trees in Accordance with Canada's Strict Forestry Laws

Plaintiffs allege that P&G sources wood pulp used to make Charmin products from "the Canadian boreal forest," "one of the most important biological ecosystems in the world." *Id.* ¶ 2.

---

[2] Most of the facts in this motion come from Plaintiffs' complaint or the documents it incorporates by reference, and are accepted as true solely for purposes of this motion. P&G concurrently files a Request for Judicial Notice, which sets forth the basis for the Court to consider additional documents in connection with this Motion to Dismiss.

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 2

P&G does not own the land or harvest wood.  Rather, P&G relies on wood pulp suppliers.  Those suppliers produce wood pulp primarily from the byproduct that is generated as part of the wood harvesting process.  P&G's suppliers in turn source that wood pulp byproduct from forestry companies that harvest and regrow trees used to make a vast array of other industrial and consumer products.  *See id.* ¶¶ 54, 57.  "The majority of Canada's forest land, about 94%, is publicly owned and managed by provincial, territorial and federal governments."[3]  "Canada's forest laws are among the strictest in the world."[4]  These laws, which govern harvesting and replanting of trees in public forests, are "based on sustainable forest management principles," "developed in consultation with the public, industries and other interested parties," and "grounded in scientific research and analysis."  *Id.*  As a result, Canada's "forests are healthy, productive and thriving."[5]  In fact, "[a]t 0.02% of its forested area, deforestation in Canada is among the world's lowest."  *Id.*

"In Canada, forest management planning is one of the primary tools used to ensure that the country's publicly owned forests remain healthy and vibrant and are managed sustainably."[6]  "Provincial and territorial governments grant forest companies rights to harvest timber on public land and stipulate the responsibilities tied to those rights."[7]  Any forestry company that wishes to harvest on public lands in Canada must prepare a forest management plan and submit it for government approval.[8]  "By law, governments must first approve forest management plans and authorize the proposed harvesting before any trees are felled."[9]  Forest companies generally must develop forest management plans with input from an array of stakeholders, including

---

[3] Declaration of David R. Singh ("Singh Decl.") Ex. 1 (*Forest Land Ownership*, Gov't of Canada, https://natural-resources.canada.ca/forest-forestry/sustainable-forest-management/forest-land-ownership (last updated Jan. 16, 2025)).

[4] Singh Decl. Ex. 2 (*Canada's Forest Laws*, Gov't of Canada, https://natural-resources.canada.ca/forest-forestry/sustainable-forest-management/canada-s-forest-laws (last updated Jan. 16, 2025); *see, e.g.*, Timber Regulations, SOR/94-118 (Can.) (dictating that "no person shall cut and remove timber in a forest area except under the authority of a permit issued by a forestry officer … or an agreement entered into with the Minister").

[5] Singh Decl. Ex. 3 (*Deforestation in Canada: Key Myths and Facts*, Gov't of Canada, https://natural-resources.canada.ca/forest-forestry/insects-disturbances/deforestation-canada-key-myths-facts (last updated Jan. 10, 2025)).

[6] Singh Decl. Ex. 4 (*Forest Management Planning*, Gov't of Canada, https://natural-resources.canada.ca/forest-forestry/sustainable-forest-management/forest-management-planning (last updated Jan. 16, 2025)).

[7] Singh Decl. Ex. 2 (*Canada's Forest Laws*).

[8] Singh Decl. Ex. 4 (*Forest Management Planning*).

[9] Singh Decl. Ex. 2 (*Canada's Forest Laws*).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 3

"environmental groups," "Aboriginal peoples," "government agencies," and "community representatives."[10] And "[e]ven after a forest management plan is approved, government oversight continues." *Id.* Provincial and territorial governments "closely monitor forest companies to ensure they comply with the plans," "track the timber that is removed from the tenured lands," and "ensure that the companies meet the regeneration standards after harvest." *Id.*

"According to laws, regulations and policies in place across Canada, all areas harvested on public land must be reforested, either by replanting or through natural regeneration."[11] Per P&G's "Grow" promise and applicable forest management plans, the forestry companies in P&G's supply chain replant two trees for each one they harvest. *See* Compl. ¶¶ 3–4, 7–10. Plaintiffs allege that those forestry companies sometimes "spray chemical herbicides like aerial glyphosate spray … to intentionally eliminate all growth other than just a handful of tree species." *Id.* ¶ 63. Most provinces in Canada require forest companies to "use herbicides (particularly glyphosate) to ensure effective and efficient regeneration, which in turn contributes to overall sustainable forest management."[12] As the Canadian Forest Service explains, herbicides are "necessary to control competing vegetation following harvesting in forestry" because "numerous pioneer plant species (e.g., Canada blue-joint grass, raspberry, trembling aspen), which are well-adapted to disturbed sites and open growing conditions, easily outcompete newly planted crop tree seedlings (e.g., spruce and pine species) for nutrients, light, water and growing space." *Id.* "Similar to what happens in the home garden, reduced crop growth or outright crop failure will occur if weeds are not controlled effectively." *Id.* Notably, Plaintiffs do not allege that P&G or its suppliers engage in any practices that are inconsistent with the Canadian government's strict requirements for harvesting and replanting.

---

[10] Singh Decl. Ex. 4 (*Forest Management Planning*).
[11] Singh Decl. Ex. 3 (*Deforestation in Canada*).
[12] Singh Decl. Ex. 5 (D.G. Thompson & D.G. Pitt, *Frequently Asked Questions (FAQs) on the Use of Herbicides in Canadian Forestry*, Canadian Forest Service Technical Note No. 112 (2011), https://publications.gc.ca/collections/collection_2011/rncan-nrcan/Fo123-1-112-eng.pdf).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 4

**B.    All Charmin Products Are Certified by the Forest Stewardship Council**

"The Forest Stewardship Council ('FSC') is an international non-profit that promotes responsible forest management by offering a forest certification system for forests and forest products." Compl. ¶ 6. As Plaintiffs explain, "[c]ompanies who work with the FSC are entitled to display various FSC logos to reflect the company's commitment to various levels of responsible forest management." *Id.* ¶ 45. Plaintiffs allege that P&G relies on the FSC's "chain of custody" and "controlled wood" designations, and "companies that rely on these designations should use the FSC 'Mix' logo." *Id.* ¶ 68. Plaintiffs' screenshots of the Charmin packaging show that P&G does in fact use the "FSC Mix" logo on the back of its packaging. *See id.* ¶ 47. And even a cursory review of the Charmin packaging makes this clear:



Singh Decl. Ex. 7 (photos of Charmin packaging).[13] Plaintiffs further allege that "[t]he main 'FSC' logo is prominently included on the front of each Charmin" package. Compl. ¶ 46. The FSC's rules allow this. They state that "[a]dditional FSC logos or references to FSC may be used" (including the standalone FSC logo) "when the on-product label" (in this case, the "FSC Mix"

---

[13] The Charmin packaging is incorporated by reference into Plaintiffs' complaint because the complaint "refers extensively" to the packaging and "[t]he packaging and label in fact form[] the very basis of Plaintiff[s'] claims." *Maple v. Costco Wholesale Corp.*, 2013 WL 11842009, at *3 (E.D. Wash. Aug. 1, 2013).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

label) "is visible to the consumer (i.e. the label is accessible without damaging the sales packaging)."[14]

### C.        P&G Closely Partners with the Rainforest Alliance

The Rainforest Alliance Forest Allies initiative "is a community of practice focused on protecting, restoring, and enabling responsible management of tropical forests."[15] "Organizations that are part of our Forest Allies initiative and are actively meeting the requirements of Forest Allies membership can use this label on FSC certified products meeting eligibility criteria, and in promotional materials or other communications that promote membership in Rainforest Alliance's Forest Allies initiative and related activities." *Id.*

Plaintiffs do not dispute P&G's rights or authority to use the Rainforest Alliance logos, and they acknowledge that, "[i]n 2016, P&G began sourcing pulp from Forest Stewardship forests certified by the Rainforest Alliance and started featuring the 'Rainforest Alliance Certified' seal on Charmin packages." *Id.* ¶ 71.    Plaintiffs do not allege that Charmin failed to meet the requirements for using the seal before the Rainforest Alliance began its transition to a new seal. *See id.* Plaintiffs also admit that "P&G has altered its packaging to only include the 'Forest Allies' seal, which makes no claims as to the product's provenance or certification." *Id.* ¶ 73.    However, Plaintiffs claim that P&G is deceiving consumers because "P&G continues to use the 'Rainforest Alliance Certified' seal in reference to its products on the Charmin Sustainability Promise website, even though this seal is obsolete." *Id.* ¶ 71.    But as the Rainforest Alliance explains, consumers "may still see the legacy Rainforest Alliance Certified seal … on product packaging."[16] The legacy seal is "slowly being phased out," and "[f]or a smooth roll-out," the Rainforest Alliance has

---

[14] Singh Decl. Ex. 8 (Forest Stewardship Council, Requirements for Use of the FSC Trademarks by Certificate Holders § 4.5 (2021), https://connect.fsc.org/document-centre/documents/resource/225).    The FSC's requirements are incorporated by reference into the complaint because the complaint cites and extensively refers to them. *See, e.g.,* Compl. ¶¶ 66, 68; *see Eugster v. Wash. State Bar Ass'n,* 2015 WL 5175722, at *1 n. 3 (W.D. Wash. Sept. 3, 2015) ("At the motion to dismiss stage, the court may properly treat a website quoted and cited in the complaint as incorporated by reference.").

[15] Singh Decl. Ex. 9 (*Using Our Logo and Seal,* Rainforest Alliance, https://www.rainforest-alliance.org/business/marketing-sustainability/using-our-logo-and-seal/ (last updated Dec. 11, 2024)).  The complaint incorporates this website by reference because it cites and provides a link to the website. Compl. ¶ 73 & n.39; *see Eugster,* 2015 WL 5175722, at *1 n. 3.

[16] Singh Decl. Ex. 9 (*Using Our Logo and Seal*).

"planned [a] careful timeline for products transitioning from using the legacy marks."  *Id.*
Plaintiffs do not allege that P&G lacks authorization from the Rainforest Alliance to use the legacy
Rainforest Alliance Certified seal during the transition.

D.     **Plaintiffs' Lawsuit Against P&G**

On January 16, 2025, eight individuals who reside in Washington, California, Illinois, and
Massachusetts (the "Named Plaintiffs") filed this lawsuit against P&G.   Compl. ¶¶ 18–25.
Plaintiffs allege that P&G makes false or misleading statements to consumers about its
sustainability practices.  Plaintiffs' claims center around the "Keep Forests as Forests" campaign
and the "Protect-Grow-Restore" logo that appears on Charmin packaging and marketing materials:



*Id.* ¶ 6.

Plaintiffs allege that "[t]he 'Keep Forests as Forests' campaign makes three promises to
consumers."  *Id.* ¶¶ 6, 43.  *First*, Plaintiffs allege that, "[f]or its 'Protect' promise, Charmin claims
to only use pulp certified by the Forest Stewardship Council or 'FSC.'"  *Id.*  *Second*, Plaintiffs
allege that, "[f]or its 'Grow' promise, Charmin promises that 'for every tree used at least two are
regrown in its place.'"  *Id.*  *Third*, Plaintiffs allege that, "[f]or its 'Restore' promise, Charmin touts
its partnership with the Arbor Day Foundation to plant one million trees in forests affected by
natural disasters."  *Id.*  Plaintiffs further allege that P&G "uses the logo of third-party certification
entities, like the FSC and the Rainforest Alliance, who evaluate and support responsible forest

management practices." *Id.* ¶ 7.  Plaintiffs claim all of these statements are "misleading" because the wood pulp used to make Charmin products is supposedly "sourced from harvests that rely on harmful logging practices such as clear cutting and burning of Canada's boreal forest." *Id.* ¶ 10. Plaintiffs also claim that "P&G's messaging" about forestry companies in the supply chain's replanting efforts "intentionally misleads consumers to believe that its Charmin suppliers are converting the specific boreal forest areas logged with replanting activities that mimic the intact, biodiverse ecosystem that was there before P&G's harvesting occurred." *Id.* ¶ 11.

While Plaintiffs vaguely allege they purchased Charmin toilet paper after reviewing these purportedly deceptive representations, they do not identify the specific representations they allegedly reviewed and relied upon in making their purchasing decisions, when they saw those representations, or when they made any purchases. *See id.* ¶¶ 18–25.  Nor do Plaintiffs allege where the allegedly omitted information should or could have been revealed. *Id.*  Plaintiffs allege that if they had known about the harvesting practices that P&G's suppliers allegedly use, they "would not have purchased the products or would have paid less for them," although they do not describe what harvesting practices they *thought* P&G's suppliers used based on P&G's advertising. *Id.*  Plaintiffs assert forty-seven causes of action under the laws of twenty-nine states.[17]  Plaintiffs' purport to bring these claims on behalf of a putative Washington Class, California Class, Illinois Class, Massachusetts Class, as well as two Multi-State Classes. *Id.* ¶ 93.

## LEGAL STANDARDS

**Rule 12(b)(1):**     Under Rule 12(b)(1), a plaintiff must establish the "irreducible constitutional minimum of [Article III] standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs bear the burden of demonstrating that they have Article III standing. *Hamilton v. NuWest Grp. Holdings LLC*, 2023 WL 130485, at *4 (W.D. Wash. Jan. 9, 2023).  "To have standing to assert a claim, a plaintiff must have suffered an injury-in-fact that is fairly traceable to

---

[17] Plaintiffs' claims in this case consist of: (i) alleged violations of state consumer protection laws (Counts I, V, VII, IX, XIV, XIV, XVI, XX, XXIII, XXV, XXVII, XXIX, XXXI, XXXIII, XXXV, XXXVII, XXXIX, XLI, XLIV, and XLVI); and (ii) common law fraudulent concealment claims (Counts II–IV, VI, VIII, X–XIII, XV, XVII–XIX, XXI–XXII, XXIV, XXVI, XXVIII, XXX, XXXII, XXXIV, XXXVI, XXXVIII, XL, XLII–XLIII, XLV, and XLVIII).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the actions of the defendant, and likely to be redressed by a favorable decision." *Id.* at *3.  Standing is required "for each claim [a plaintiff] seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

*Rule 12(b)(2):*  "To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), Plaintiffs bear the burden to make a *prima facie* showing of general or specific jurisdiction over" the defendant.  *Ervin v. Irani*, 2014 WL 4966909, at *3 (W.D. Wash. Oct. 3, 2014).  Plaintiffs must "demonstrate facts that if true would support jurisdiction over the defendant [and] the plaintiff cannot simply rest on the bare allegations of its complaint."  *HDT Bio Corp. v. Emcure Pharma., Ltd.*, 704 F. Supp. 3d 1175, 1184 (W.D. Wash. 2023).  In a class action, each named plaintiff must show that the Court can exercise personal jurisdiction over the defendant with respect to each of the claims.  *See Maadanian v. Mercedes-Benz USA, LLC.*, 2023 WL 4546376, at *1 (W.D. Wash. July 14, 2023).

*Rule 12(b)(6):*  Rule 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must disregard the complaint's conclusory allegations and legal conclusions, which are not entitled to any assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief.  *Id.* at 679.

## ARGUMENT

### I.    Plaintiffs Fail to Plausibly Allege that They Were Actually Deceived

Rule 8 "requires plaintiffs to include enough facts to raise a right to relief above a speculative level."  *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007).  "[P]laintiffs must include sufficient factual enhancement to cross the line between possibility and plausibility." *Eclectic Prop. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).  Moreover, to bring a consumer protection claim, Plaintiffs "must demonstrate that a 'reasonable consumer' is likely to be misled by the representation."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) (applying the "reasonable consumer" test to claims brought under the consumer protection

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

laws of California, New York, and North Carolina).[18] "This requires more than a mere possibility that [the defendant's statements] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* By a similar token, to bring fraud-based common law claims like fraudulent concealment, Plaintiffs must plead that her reliance on the defendant's alleged misrepresentations "is reasonable under the surrounding circumstances." *BP West Coast Prods., LLC v. Shalabi*, 2012 WL 2277843, at *4 (W.D. Wash. June 14, 2012); *see also Ferrie v. Woodford Rsch., LLC*, 2020 WL 3971343, at *10 (W.D. Wash. July 14, 2020) (explaining that a plaintiff may establish fraudulent concealment by proving "the nine elements of fraud").[19]

In this case, Plaintiffs' own allegations demonstrate that P&G's statements are true and would not mislead a reasonable consumer. Plaintiffs never deny that: (1) P&G is authorized to use the "FSC Mix" logo that appears on Charmin packaging, and all Charmin products are certified for purposes of that FSC designation; (2) the forestry companies in P&G's supply chain replant two trees for every one they harvest; (3) P&G has partnered with the Arbor Day Foundation to plant one million trees in forests affected by natural disasters; and (4) P&G properly uses the Rainforest Alliance Forest Allies logo on its Charmin packaging. Plaintiffs' inability to contest these facts dooms their claims. Plaintiffs may prefer that P&G take different approaches to producing Charmin toilet paper—such as "increas[ing] its reliance on recycled fibers" and engaging in different "replanting efforts"—but that does not render P&G's statements to consumers false or misleading. Compl. ¶¶ 64, 77.

---

[18] *See also Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5 (Wash. App. 2019) (applying the reasonable consumer test to plaintiff's claims under the Washington Consumer Protection Act); *Cristia v. Trader Joe's Co.*, 2022 WL 17551552, at *3 (N.D. Ill. Dec. 9, 2022) (holding that "[c]ourts apply a 'reasonable consumer' standard to examine the likelihood of deception" under the Illinois Consumer Fraud and Deceptive Business Practices Act); Exhibit A (chart showing reasonable consumer standards for each of Plaintiffs' consumer protection claims).

[19] Exhibit B (chart showing reasonable reliance standards for each of Plaintiffs' fraudulent concealment claims).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**A.    *Protect:* Plaintiffs Do Not Deny that Charmin Products Are FSC Certified and Appropriately Use the "FSC Mix" Logo**

Plaintiffs claim that P&G misleads consumers by displaying "the FSC logo on the front of its Charmin Toilet Paper packaging" and claiming that "100% of its paper is FSC certified." Compl. ¶ 69.  To start, no Plaintiff alleges she relied on—or misunderstood—the FSC logo in purchasing Charmin.  And Plaintiffs do not dispute that all Charmin products are FSC certified—albeit not with the certifications Plaintiffs would prefer.  *Id.* ¶ 68.  Indeed, Plaintiffs acknowledge that "[c]ompanies who work with the FSC are entitled to display various FSC logos to reflect the company's commitment to various levels of responsible forest management."  *Id.* ¶ 45.  And the complaint expressly states that companies like P&G that allegedly rely on the FSC "chain of custody" and "controlled wood" designations are permitted to "use the FSC 'Mix' logo."  *Id.* ¶ 68.  Plaintiffs do not make a single allegation that P&G uses the "FSC 100%" logo that they claim would be inappropriate under the circumstances.  *Id.* ¶¶ 45–46, 68.  And Plaintiffs' allegations that Charmin does not meet the requirements of the "FSC 100%" certification do not render P&G's use of *different* FSC logos (which P&G is authorized to use) false or misleading.

Moreover, the "FSC Mix" logo on the back of the Charmin packaging resolves any ambiguity as to the meaning of the FSC logo displayed on the front.[20]  Where "a front label is ambiguous, the ambiguity can be resolved by reference to the back label."  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023).  "[A] reasonable consumer would necessarily have required more information before concluding" that the FSC logo on the front of the Charmin packaging was making an "affirmative promise."  *Id.* at 1097–98.  The "FSC Mix" logo on the back of the Charmin packaging makes clear that the product satisfies the criteria for FSC mix certification—a fact that Plaintiffs admit in their complaint.  Compl. ¶ 68.  Thus, it would be unreasonable for a consumer to believe that Charmin toilet paper satisfies the FSC 100% certification standards when P&G does not use that logo.  *See McGinity*, 69 F. 4th at 1099.[21]

---

[20] Singh Decl. Ex. 7 (photo of Charmin packaging).

[21] Plaintiffs also allege that two retailers' websites state that "all our pulp is 100% FSC certified," and Plaintiffs incorrectly assert that P&G controls the "'product detail' and 'thumbnail' information" on these retailers' websites. Compl. ¶¶ 48–50.  But even assuming the truth of these assertions for purposes of this motion, P&G's pulp

In an effort to bolster their flimsy allegations, Plaintiffs attack the certifying entities P&G allegedly uses to verify its compliance with the FSC's certification requirements.  To be clear, the FSC relies on "certifiers" who are "independent of FSC and the companies they are auditing" to "assess forest management and chain of custody operations using the FSC standards."[22]  Plaintiffs allege that P&G "relies on wood pulp certifications from the Sustainable Forestry Initiative … and the Programme for the Endorsement of Forest Certification," which have purportedly "been criticized as weak and ineffective."  *Id.* ¶ 69.  Relegated to a footnote is who contends this— Greenpeace—not a government body or regulatory agency.  *See id.* ¶ 69 nn.37–38.  Regardless, those are merely "critiques of the methodology" of the certifying body, "which is not enough to render plausible the allegation that Defendant made a materially misleading statement when it allegedly described its" products as complying with such certification.  *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 153 (S.D.N.Y. 2022).

Where, as here, Plaintiffs do not "allege that [P&G's] statements regarding compliance, regulation, or licensing are inaccurate, and instead argue[] that compliance, regulation, and licensing are insufficient and unsatisfactory by some accounts," that allegation "does not render [P&G's] representations as to compliance false or misleading."  *Lee v. Can. Goose US, Inc.*, 2021 WL 2665955, at *6 (S.D.N.Y. June 29, 2021); *accord Myers v. Starbucks Corp.*, 2020 WL 13302437, at *5 (C.D. Cal. July 29, 2020) (dismissing claims that "Mars's use of the Rainforest Alliance seal creates a misleading impression of ethical labor practices and sustainability" where plaintiff alleged the third-party organization "runs a business-friendly certification ... that lacks social and environmental standards and is poorly enforced").

---

undisputedly is all FSC certified, and Plaintiffs never allege that they reviewed or relied on these particular statements on these particular retailers' websites.  This shortcoming in Plaintiffs' allegations underscores their failure to satisfy the particularity requirements of Rule 9(b).  *See infra* Section II.

[22] Singh Decl. Ex. 6 (*Become Certified*, Forest Stewardship Council, https://us.fsc.org/en-us/certification/become-certified (last visited Mar. 20, 2025)).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 12

**B.**    ***Grow:* Plaintiffs Do Not Deny that the Forestry Companies in P&G's Supply Chain Replant At Least Two Trees for Every One Harvested**

Plaintiffs claim that P&G misleads consumers by stating that "for every tree used at least two are regrown in its place." Compl. ¶ 43. Yet Plaintiffs do not actually allege that this statement is false. To the contrary, Plaintiffs acknowledge that the forestry companies in P&G's supply chain replant the trees they harvest. *Id.* ¶ 63.

Plaintiffs' real complaint seems to be that P&G's suppliers do not "mimic the intact ecosystem that was there before P&G's harvesting occurred." *Id.* But this absurd premise does not render P&G's statements false or deceptive. Plaintiffs do not allege facts plausibly establishing that a reasonable consumer who reads the environmental statements on a package of Charmin stops to think about the methods suppliers use to replant trees. Even if a consumer did stop to ponder the issue, no reasonable consumer would think that the forestry companies in P&G's supply chain are replanting fully-grown trees in ancient boreal forests in a way that immediately replicates the exact biodiversity that existed before harvesting. This would be impossible. To the extent they think about the methods used to replant trees at all, a reasonable consumer would understand that trees do not regrow overnight. *See, e.g.*, *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) ("Only an unreasonable consumer would be confused or deceived by Cadbury's failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly.").

Plaintiffs also assert that the forestry companies in P&G's supply chain sometimes "spray chemical herbicides like aerial glyphosate spray … to intentionally eliminate all growth other than just a handful of tree species most valuable for logging." Compl. ¶ 63. As an initial matter, to the extent the forestry companies use herbicides, they do so because it is required by the Canadian government and meant to help regenerate the tree species that were present before the harvesting occurred.[23] Even setting that aside, however, a mere allegation that forestry companies do not always replant trees in precisely the manner that Plaintiffs would prefer does not render P&G's statements false. P&G does not tell consumers that the forestry companies in its supply chain

---

[23] *See* Singh Decl. Ex. 5 (D.G. Thompson & D.G. Pitt).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 13

replant trees without using herbicides or that they immediately regenerate forests with exactly the same biodiversity that existed before trees were cut down.  Any reasonable consumer would understand that P&G cannot make that promise.

Indeed, "[a] reasonable consumer would not understand" P&G's statements about replanting trees "as promising something that is impossible." *Moore*, 4 F.4th at 883–84 (affirming district court's dismissal of consumer protection claims due to the "sheer implausibility of Plaintiffs' alleged interpretation," which "a consumer of any level of sophistication could not reasonably interpret" the challenged label to mean).  P&G's statements are not rendered "false and deceptive merely because [they] will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation[s] [are] addressed." *La Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at *8 (C.D. Cal. May 18, 2023) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal.Rptr.2d 486, 495 (Cal. Ct. App. 2003)).

In a similar vein, Plaintiffs allege that "P&G fails to disclose that, in reality, its suppliers are replanting single-species conifers, evenly spaced, and with even ages."  Compl. ¶ 63.  But even assuming that these allegations are true, an omission is only actionable when it is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).  Plaintiffs cannot satisfy either of those criteria.  The replanting practices the forestry companies in P&G's supply chain allegedly use are not contrary to any representation P&G makes.  Plaintiffs do not allege that P&G says anything about how the forestry companies in its supply chain replant trees—only that P&G says its suppliers replant trees after harvesting them.  And Plaintiffs cannot establish that P&G has a duty to disclose the details of these forestry companies' replanting practices.  A duty to disclose only arises where the omission:  (1) "relates to … [a] safety hazard"; or (2) is "material, central to the product's function."  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022); *Hodsdon*, 891 F.3d at 864 (no duty to disclose alleged use of child or slave labor in chocolate products' supply chain as it did not affect "the chocolate's function as chocolate").  The

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

replanting process does not render Charmin toilet paper unsafe, nor does it affect the product's function.

Plaintiffs further allege that the Charmin website violates the "Green Guides"—guidelines issued by the Federal Trade Commission "to help marketers avoid making environmental claims that are unfair or deceptive"—because the website "likely conveys that P&G is replacing trees in a manner that preserves the same level of biodiversity in the same location where the old-growth forests were harvested." Compl. ¶ 13, 76. The Charmin website says no such thing. It never indicates that the forestry companies in P&G's supply chain are replicating the biodiversity that existed before trees were harvested. Instead, the website uses "clear and prominent qualifying language that limits the claim to a specific benefit" in accordance with the Green Guides. 16 C.F.R. § 260.4(c). It clearly states that, when P&G says it is "committed to helping keep forests as forests," it means that, "for every tree used, at least two are regrown in its place." Compl. at 6, 32. P&G complies with the Green Guides because it has "clearly defined the basis" for its representations and has thus "substantiated and qualified" them. *See Lizama v. H&M Hennes & Mauritz LP*, 2023 WL 3433957, at *8 (E.D. Mo. May 12, 2023) (holding defendant complied with the Green Guides).

Plaintiffs also allege that P&G's statements about replanting trees violate the Green Guides because they are supposedly "virtually impossible to verify given the information the company shares with investors." Compl. ¶¶ 13, 75. Beyond this conclusory allegation, however, Plaintiffs provide no support for their allegation that the number of trees replanted is "virtually impossible" to verify. Rather, Plaintiffs merely allege that P&G does not "*share* how it verifies the trees are regrown, where they are regrown, and how long they monitor the trees to ensure they do, in fact, grow and reach maturity." *Id.* ¶ 75 (emphasis added). Plaintiffs insist P&G therefore violates Section 260.2 of the FTC Green Guides (16 C.F.R. § 260.2). But the Green Guides do not require companies to disclose to consumers—or investors—how they verify the information underlying their environmental claims. The Green Guides simply indicate that marketers should have "a reasonable basis" for their claims, which "often requires competent and reliable scientific

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

evidence."  16 C.F.R. § 260.2.  Plaintiffs do not—and cannot—allege that P&G lacks a reasonable basis for its claims.

### C.    *Restore:* **Plaintiffs Do Not Deny that P&G Has Partnered with the Arbor Day Foundation to Replant One Million Trees**

Plaintiffs allege in conclusory fashion that P&G somehow misleads consumers by "tout[ing] its partnership with the Arbor Day Foundation to plant one million trees in forests affected by natural disasters."  Compl. ¶¶ 43, 57.  But that is literally all Plaintiffs allege about the alleged "Restore" promise.  Plaintiffs do not allege that P&G has not, in fact, partnered with the Arbor Day Foundation to plant one million trees.  And Plaintiffs never allege how P&G's statements about its partnership are false or misleading.  Plaintiffs' claim regarding the alleged "Restore" promise fails.

### D.    **Plaintiffs Do Not Deny that P&G Properly Uses the Rainforest Alliance Forest Allies Logo on Charmin Packaging**

Plaintiffs allege that P&G misleads consumers by using "the 'Rainforest Alliance Certified' seal in reference to its products on the Charmin Sustainability Promise website, even though this seal is obsolete."  Compl. ¶ 71.  Yet Plaintiffs' own complaint—and the website incorporated by reference—show that the seal is not obsolete.  The very website Plaintiffs cite in their complaint explains that consumers "may still see the legacy Rainforest Alliance Certified seal … on product packaging."[24]  The website further explains that the legacy seal is "slowly being phased out," and "[f]or a smooth roll-out," the Rainforest Alliance has "planned [a] careful timeline for products transitioning from using the legacy marks."[25]  Moreover, Plaintiffs do not allege that they have been deceived by the Rainforest Alliance seal shown on the Charmin website.  Plaintiffs do not even assert that they viewed the Charmin website—let alone that they were misled by it.  *See* Compl. ¶¶ 18–25.

Plaintiffs also claim that P&G's use of the Rainforest Alliance Certified seal on its website "overstate[s] the environmental attribute or benefit of using Charmin products and therefore

---

[24] Singh Decl. Ex. 9 (*Using Our Logo and Seal*); *see* Compl. ¶ 73 n.39 (citing the Rainforest Alliance webpage).
[25] Singh Decl. Ex. 9 (*Using Our Logo and Seal*).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

violates … the FTC Green Guides." *Id.* ¶ 74.  Not so.  Plaintiffs acknowledge that P&G historically has "sourc[ed] pulp from Forest Stewardship forests certified by the Rainforest Alliance."  Compl. ¶ 71.  Therefore, Plaintiffs admit that P&G has met the requirements for using the legacy Rainforest Alliance Certified seal and is therefore authorized to display that seal on its website.

Plaintiffs also acknowledge that "P&G has altered its Charmin packaging to only include the 'Forest Allies' seal, which makes no claims as to the product's provenance or certification." *Id.* ¶ 73.  Nevertheless, Plaintiffs claim that the "Forest Allies" seal "is practically identical to the previous seal and therefore highly likely to mislead consumers."  *Id.*  But P&G cannot be faulted for using a seal that the Rainforest Alliance has created and allowed P&G to use on its products. Once again, Plaintiffs are taking issue with the certifying body that allowed P&G to use the seal on its products, but Plaintiffs' complaints about that body's policies are not sufficient to render P&G's statements false or misleading.  *See Myers*, 2020 WL 13302437, at *5 (dismissing false advertising claims based on "Mars's use of the Rainforest Alliance seal" because Mars's packaging "does not make any claims about … the scope of the Rainforest Alliance Program"); *Can. Goose*, 2021 WL 2665955, at *6; *Dwyer*, 598 F. Supp. 3d at 153.  Moreover, as Plaintiffs admit, "P&G is one of two founding members" of the Rainforest Alliance Forest Allies program.  Compl. ¶ 72. Thus, P&G has partnered closely with the Rainforest Alliance and has worked to promote its mission.  There is nothing misleading about advertising P&G's involvement with and support for the Rainforest Alliance on the Charmin packaging.

### E.    P&G's Statements to Investors About Its Deforestation Policies Have No Bearing on Plaintiffs' Consumer Claims

Plaintiffs also claim that P&G makes misleading statements about its commitment to "no deforestation in its supply chain," but the only examples Plaintiffs point to are statements from investor relations reports and webpages.  *See* Compl. ¶¶ 9, 58, 62.  This is a consumer case, not an investor case.  Thus, it is unclear (and never alleged) how statements to investors have any bearing on Plaintiffs' consumer claims.  And Plaintiffs do not allege that they viewed or relied on statements in P&G's investor relations materials when deciding whether to purchase Charmin.  *Id.*

¶¶ 18–25.  Even if they did, it is implausible that most consumers would review P&G's investor relations materials before deciding whether to purchase Charmin.  Moreover, Plaintiffs admit that P&G's investor relations materials use a recognized "technical definition of 'deforestation'" and make clear how P&G is using the term.  *Id.* ¶ 62.  While Plaintiffs may disagree with P&G's policy, it is not misleading.  *See Lizama*, 2023 WL 3433957, at *8 (defendant complied with the Green Guides where it "clearly defined the basis" for its representations).  Thus, Plaintiffs fail to plausibly allege that reasonable consumers have been misled by any statements concerning P&G's commitment to investors to prevent deforestation.

## II.    Plaintiffs Do Not Plead Their Claims with the Particularity Required by Rule 9(b)

Under Rule 9(b), a party "alleging fraud…must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "This means the complaint must "'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  Moreover, even when a plaintiff claims to have been misled by a defendant's omissions, the plaintiff must still "specify *which* specific advertisements or statements he personally saw."  *Palmer v. Apple Inc.*, 2016 WL 1535087, at *3 (N.D. Cal. Apr. 15, 2016).  The plaintiff must also "describe the content of the omission and where the omitted information should or could have been revealed."  *Id.* at *5 (quoting *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

Here, all of Plaintiffs' claims are "grounded in fraud."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2023) (applying Rule 9(b) to consumer protection claims); *Baughn v. Johnson & Johnson*, 2015 WL 4759151, at *3 (W.D. Wash. Aug. 12, 2015) (granting dismissal after applying Rule 9(b) to fraudulent concealment claim); *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1005 (N.D. Cal. 2023) (applying Rule 9(b) to "partial misrepresentation" claims).  They all rest on the premise that Plaintiffs purportedly were misled by P&G's statements about the sustainability of Charmin toilet paper.  *See, e.g.*, Compl. ¶¶ 10–14, 18–25, 59–76.  The Ninth

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Circuit has held that where, as here, a claim is "grounded in fraud," "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103–04.

The complaint falls far short of pleading the what, where, when, and how of the alleged fraud as required by Rule 9(b). *See Salameh*, 726 F.3d at 1133. Plaintiffs all allege the exact same thing—that they "viewed advertisements touting the 'sustainability' of Charmin Toilet Paper *like those* included in this Class Action Complaint." Compl. ¶¶ 18–25 (emphasis added). But Plaintiffs never specify which advertisements they allegedly viewed, when they viewed the advertisements, where they viewed them, or how the advertisements misled them. There are no particularized allegations that Plaintiffs ever viewed or relied on the "Protect-Grow-Restore" logo, the FSC or Rainforest Alliance logos, the statements on the Charmin website, or statements on retailers' websites. *See id.* Nor do Plaintiffs describe the content of the alleged omissions or where the allegedly omitted information should or could have been revealed. *See id.* Therefore, Plaintiffs do not adequately allege that they were deceived by P&G's statements about its sustainability practices, and all of their claims should be dismissed on this basis. *See, e.g.*, *Nicholas v. Amazon.com, Inc.*, 740 F. Supp. 3d 1099, 1104 (W.D. Wash. 2024) (dismissing claims where plaintiff failed to "provide any details regarding what specific elements of the [statements] were deceptive, or when, where, or how she was misled by them"); *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1266 (W.D. Wash. 2023) (dismissing claims where complaint "suffer[ed] from a lack of details about Plaintiff's own experience"). This is a separate basis for dismissing the complaint in its entirety.

## III.    Fraudulent Concealment Is Not an Independent Cause of Action Under Many of the Applicable State Laws

In addition, the Court should also dismiss many of Plaintiffs' fraudulent concealment claims because fraudulent concealment is not an independent cause of action under the laws of Connecticut, the District of Columbia, Illinois, Indiana, Massachusetts, and Texas.[26] Accordingly, this is a separate basis

---

[26] *Brown v. Otake*, 138 A.3d 951, 955 (Conn. 2016) ("[T]he count alleging fraudulent concealment must be stricken because Connecticut does not recognize an independent cause of action for fraudulent concealment."); *Orellana v. Croplife Int'l*, 711 F. Supp. 2d 81, 95 (D.D.C. 2010) ("[F]raudulent concealment … is not an actionable theory of liability under the law of the District of Columbia."); *Wisniewski v. Diocese of Belleville*, 943 N.E. 2d 43, 72–73 (Ill. App. Ct. 2011) ("[F]raudulent concealment … is not a cause of action in and of itself; rather, it acts as an exception to the time limitations imposed on other, underlying causes of action."); *Chancellor v. Bank of Am. N.A.*, 2015 WL

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

for dismissing Counts X (Connecticut), XI (District of Columbia), XVII (Illinois), XVIII (Indiana), XXII (Massachusetts), and XLIII (Texas).

## IV.    The Court Lacks Personal Jurisdiction Over P&G for Claims of Out-of-State Named Plaintiffs

The Named Plaintiffs reside in four states and assert claims under each of the states in which they reside.  Compl. ¶¶ 18–25, 103–16, 146–59, 210–27, 254–60.  But this Court lacks personal jurisdiction over P&G with respect to the claims of the Named Plaintiffs who reside outside Washington (Counts VII, VIII, XVI, XVII, XXII).

Where, as here, the state's long-arm statute allows the exercise of personal jurisdiction to the fullest extent permissible under the Constitution, "the jurisdictional analysis under state law and federal due process are the same." *Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015) ("Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits.").  Under the Due Process Clause, a court may only exercise jurisdiction over a defendant if it has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).  "[A] corporation may be subject to personal jurisdiction only when its contacts with the forum support either specific or general jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014).  P&G does not have any contacts with Washington that support either specific or general jurisdiction over the out-of-state Named Plaintiffs' claims.

### A.    P&G Is Not Subject to General Jurisdiction in Washington

This Court lacks general jurisdiction over P&G.  As the Supreme Court has explained, "general jurisdiction requires affiliations so continuous and systematic as to render [the foreign

---

5730103, at *5 (N.D. Ill. Sept. 29, 2015) (dismissing fraudulent concealment claims under Illinois law with prejudice because "fraudulent concealment is a statutory tolling doctrine and not an independent cause of action"); *Fikes v. Whitesell*, 2011 WL 5025523, at *7 (S.D. Ind. Oct. 20, 2011) ("Fraudulent concealment is not an independent cause of action.  Instead, it operates 'as an equitable device to estop a defendant from asserting a statute of limitations [defense].'"); *Niedner v. Ortho-McNeil Pharm., Inc.*, 58 N.E.3d 1080, 1087 n.7 (Mass. App. Ct. 2016) ("Massachusetts does not recognize an independent claim for fraudulent concealment."); *Iverson v. Dolce Mktg. Grp.*, 2014 WL 1415106, at *3 n.1 (Tex. Ct. App. Mar. 28, 2014) ("Fraudulent concealment is an affirmative defense to statutes of limitations and not an independent cause of action.").

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

corporation] essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] … bases for general jurisdiction." *Id.* at 137. "Only in an exceptional case will general jurisdiction be available anywhere else." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG*, 571 U.S. at 139 n.20.

Plaintiffs do not—and cannot—allege facts demonstrating that P&G is "at home" in Washington. *Id.* at 139 n.19. It is undisputed that P&G is organized under the laws of the State of Ohio, and its principal place of business is in Cincinnati, Ohio. Compl. ¶ 26. And Plaintiffs have not alleged any facts suggesting this is "an exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19; *Noramex, LLC v. Am. Paper Recycling Corp.*, 2005 WL 2921988, at *2 (W.D. Wash. Nov. 4, 2005) (no general jurisdiction even where plaintiff repeatedly purchased defendant's products in Washington); *Raymond v. Robinson*, 15 P.3d 697, 700 (Wash. Ct. App. 2001) (no general jurisdiction even where defendant placed advertisements in national magazines that reached Washington consumers, directly contacted Washington consumers, and sold ten percent of its units to Washington consumers over five years). Therefore, this Court lacks general jurisdiction over P&G.

### B. P&G Is Not Subject to Specific Jurisdiction in Washington for Out-of-State Named Plaintiffs' Claims

This Court also lacks specific jurisdiction over P&G with respect to the claims of the Named Plaintiffs who do not reside in Washington because their claims did not arise out of any forum-related activities. As the Supreme Court held in *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." 582 U.S. 255, 264 (2017). "[T]he overwhelming majority of federal courts,"

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

including courts in this District, "have found that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions ... [and to] federal courts sitting in diversity." *La Fosse v. Sanderson Farms, Inc.*, 2020 WL 3617786, at *4 (N.D. Cal. July 2, 2020).[27] Thus, "[e]ach named plaintiff in a class action must demonstrate the Court's power to decide the claims he or she has asserted." *Maadanian*, 2023 WL 4546376, at *1.

The out-of-state Named Plaintiffs cannot make that showing because their claims do not arise out of P&G's contacts with Washington. They do not allege any "activity" or "occurrence" that took place in the forum state. *Bristol-Myers*, 582 U.S. at 264. And they do not allege any "affiliation between the forum and the underlying controversy." *Id.* Instead, the out-of-state Named Plaintiffs assert state-law claims relating to the marketing and sale of Charmin toilet paper in *other states*—namely, California, Illinois, and Massachusetts. Compl. ¶¶ 19–25. Because their claims are based on events that took place "entirely outside the forum," the out-of-state Named Plaintiffs "cannot show that any of their claims … arise from [P&G's] contacts in Washington." *Maadanian*, 2023 WL 4546376, at *1. Therefore, the Court lacks personal jurisdiction over their claims, and they must be dismissed.

## V.    Plaintiffs Lack Standing to Bring State-Law Claims Under the Laws of States Where They Do Not Reside

Plaintiffs assert forty-seven consumer protection and fraudulent concealment claims under the laws of twenty-nine states. But the complaint only includes Named Plaintiffs from four of those states. The Named Plaintiffs lack standing to bring claims under the laws of the twenty-five states in which they do not reside and do not allege they were injured (Counts III–VI, IX–XV, XVIII–XXI, XXIII–XLVIII).

"To have standing to assert a claim, a plaintiff must have suffered an injury-in-fact that is fairly traceable to the actions of the defendant, and likely to be redressed by a favorable decision." *NuWest Grp.*, 2023 WL 130485, at *3. "Standing is claim-and-relief-specific, such that a plaintiff

---

[27] *See, e.g.*, *Maadanian*, 2023 WL 4546376, at *1; *Goldstein v. General Motors LLC*, 445 F. Supp. 3d 1000, 1011–12 (S.D. Cal. 2020); *Chen v. Dunkin' Brands, Inc.*, 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17, 2018), *aff'd*, 954 F.3d 492 (2d Cir. 2020); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

must establish Article III standing for each of her claims and for each form of relief sought." *Id.*. In the Ninth Circuit, "the majority of courts to consider this question have concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *Brenner v. Vizio, Inc.*, 2018 WL 2229274, at *2 (W.D. Wash. May 16, 2018).[28]

Named Plaintiffs allege that they purchased Charmin toilet paper in Washington, California, Illinois, and Massachusetts. Compl. ¶¶ 18–25. They "do not allege to have individual standing in any other state." *NuWest Grp.*, 2023 WL 130485, at *4. Indeed, Named Plaintiffs do not claim that they reside in, or have purchased Charmin toilet paper in, any states besides Washington, California, Illinois, and Massachusetts. Compl. ¶¶ 18–25. "[B]ecause the class representative[s] ha[ve] the burden of proving Article III standing," the Court should dismiss "all claims based on any other state law." *NuWest Grp.*, 2023 WL 130485, at *4; *accord Brenner*, 2018 WL 2229274, at *2–3.

## VI.    Many of Plaintiffs' Claims Are Untimely

### A.    The Washington Plaintiff's Claims Are Barred by the Statutes of Limitations

As discussed above, this Court lacks personal jurisdiction over P&G with respect to the out-of-state Named Plaintiffs, and the Named Plaintiffs lack standing to assert claims under the laws of the twenty-five states where no Named Plaintiffs reside. *See supra* Sections I–II. That leaves only Melissa Lowry, the sole Named Plaintiff who resides in Washington and allegedly purchased Charmin products here. But Lowry's claims are barred by the applicable statutes of limitations, and neither the discovery rule nor the fraudulent concealment doctrine saves her claims.

---

[28] *See, e.g., NuWest Grp.*, 2023 WL 130485, at *4 (dismissing claims brought by named plaintiffs for violations of state wage-payment statutes in states where named plaintiffs did not allege they worked); *Slattery v. Athena Cosmetics, Inc.*, 740 F. Supp. 3d 1009, 1020 (C.D. Cal. 2024) ("Since Plaintiff is a Florida resident, she lacks standing to pursue the state law claims of out-of-state residents."); *Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 WL 1116715, *1 (N.D. Cal. March 1, 2018) ("District courts in our circuit have dismissed state law class claims for lack of standing before the class certification stage where no named plaintiff resides in or otherwise interacted with the state."); *Mollicone v. Universal Handicraft, Inc.*, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) ("the majority of courts to consider this question have concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal").

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 1.     Lowry's claims accrued no later than 2020

A claim under the Washington Consumer Protection Act ("WCPA") "must be commenced within four years after the cause of action accrues." *Pattison v. Omnitrition Int'l, Inc.*, 2018 WL 2984820, at *3 (W.D. Wash. June 14, 2018) (citing RCW 19.86.120); *accord Lapinski v. Bank of Am., N.A.*, 2014 WL 347274, at *6 (W.D. Wash. Jan. 30, 2014).   A claim for fraudulent concealment under Washington law must be brought within three years.   *Casimir v. Remington Arms Co.*, 2013 WL 179756, at *3 (W.D. Wash. Jan. 16, 2013) (citing RCW 7.72.060(3)). Lowry's claims, however, accrued more than four years ago.

Lowry alleges that she "has routinely purchased Charmin Toilet Paper" "[o]ver approximately the past 20 years." Compl. ¶ 18. And Lowry "knew or should have known all the facts underlying the essential elements of her claims" at least by 2020, if not before.   *Pattison*, 2018 WL 2984820, at *4. Indeed, Plaintiffs' own complaint identifies several events that put Lowry on notice of her claims several years ago.   *First*, Plaintiffs cite a 2015 report from Greenpeace that "criticized" certain wood pulp certifications.   Compl. ¶ 69 & n.37.   *Second*, Plaintiffs allege that, "in October 2019, after giving Charmin Toilet Paper an 'F' for its environmental impact in its annual toilet paper sustainability report, the Natural Resources Defense Council ('NRDC') protested a P&G shareholder meeting to urge the company to stop sourcing its wood pulp from Canada's boreal forest and instead increase its reliance on recycled fibers." *Id.* ¶ 77.   *Third*, Plaintiffs allege that, in October 2020, "67% of P&G shareholders voted in favor of a resolution put forward by Green Century Equity Fund that called on the company to report on how and whether it can eliminate deforestation and intact forest degradation." *See id.*

These allegations demonstrate that Plaintiffs could have discovered the practices they now complain about more than five years ago (if not earlier) had they exercised due diligence.   *See, e.g.*, *Pattison*, 2018 WL 2984820, at *4 (plaintiff was on notice of her claims when the FDA "issued publically available warnings" to consumers); *Hellgren v. Providential Home Income Plan Inc.*, 2006 WL 8447964, at *3 (N.D. Cal. Oct. 26, 2006) (similar), *aff'd*, 291 Fed. Appx. 70 (9th Cir. 2008).   Once Lowry was on notice of her claims—by 2020 at the latest—"her four-year statute of limitations for her [WCPA] claim and her three-year statute of limitations for her [fraudulent

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

concealment] claim[] began to run." *Pattison*, 2018 WL 2984820, at *4. Even though Lowry may have "subsequently purchased additional" Charmin toilet paper, "she had the right to apply to the court for relief at the time of her first purchase" after sufficient information about the basis for her claims became available to the public. *See id.* Thus, at the latest, Lowry had until October 2024—four years after the introduction of the shareholder resolution—to bring her WCPA claim and had until 2023 to bring her fraudulent concealment claim. But Lowry waited to bring this lawsuit until January 16, 2025, after the applicable statutes of limitation had run.

## 2.    The discovery rule is not applicable

Plaintiffs claim that "all applicable statutes of limitation have been tolled by operation of the discovery rule." Compl. ¶ 87. That is incorrect. "[T]he discovery rule does not toll the limitations period." *Pattison*, 2018 WL 2984820, at *6. Rather, it "is an exception to the general rule of accrual, and has been applied by Washington courts to claims where injured parties do not, or cannot know that they have been injured." *Id.* "[U]nder the discovery rule, a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or *should have known* the basis for the cause of action." *Saepoff v. N. Cascade Tr. Servs., Inc.*, 2019 WL 4597504, at *4 (W.D. Wash. Sept. 23, 2019) (emphasis added); *First Md. Leasecorp v. Rothstein*, 864 P.2d 17, 20 (Wash. Ct. App. 1993). Actual knowledge is "inferred for purposes of the statute if the aggrieved party, by the exercise of due diligence, could have discovered [the alleged conduct]." *Leonard v. Recontrust Co., N.A.*, 2016 WL 304802, at *8 (W.D. Wash. Jan. 26, 2016), *aff'd sub nom. Bruce v. Recontrust Co., N.A.*, 719 F. App'x 713 (9th Cir. 2018).

As detailed above, the complaint makes clear that Plaintiffs could have—and should have—discovered the alleged conduct many years before they brought this lawsuit as it was all a matter of public record. *See Hellgren*, 2006 WL 8447964, at *3 ("[W[hen the plaintiff … has the opportunity to obtain knowledge from sources open to [her] investigation such as public record the statute commences to run."), *aff'd*, 291 Fed. Appx. 70 (9th Cir. 2008) (unpublished). Plaintiffs attempt to save their stale claims by making conclusory allegations that they had "no way of knowing about P&G's deception," and "could not have discovered through the exercise of

reasonable diligence that P&G was concealing the conduct complained of [by] misrepresenting the Company's true position." Compl. ¶¶ 84–85. But their own allegations belie that assertion. Moreover, the complaint "does not include any allegations regarding why a reasonable inquiry could or would not have discovered the numerous public warnings." *Pattison*, 2018 WL 2984820, at *6. Therefore, the discovery rule is not applicable to Lowry's causes of action. *See Leonard*, 2016 WL 304802, at *8 (finding discovery rule did not apply "where the facts constituting the fraud were a matter of public record").

### 3. Lowry fails to plead fraudulent concealment tolling or estoppel

Plaintiffs conclusorily allege that the "statutes of limitations have also been tolled by P&G's knowing and active fraudulent concealment," and that "P&G is estopped from relying on any statutes of limitations" because it purportedly "concealed … the true character, quality, and nature of the harvesting and replanting efforts." Compl. ¶¶ 88–92. But a plaintiff asserting that the statute of limitations should be tolled based on fraudulent concealment or estoppel must show that "the defendant engaged in affirmative conduct which would lead a reasonable person to believe that no claim for relief existed." *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1406 (9th Cir. 1993); *Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 985–86 (C.D. Cal. 2022) ("Absent a fiduciary relationship, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required.").[29]

Plaintiffs do not allege any "*active conduct* by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed"—that is, a misrepresentation separate and apart from the allegedly deceptive statements. *Shepard v. Winter*, 2007 WL 3070495, at *7 (W.D. Wash. Oct. 19, 2007). While Plaintiffs allege that P&G did not disclose "the environmentally devastating Charmin Toilet Paper supply chain," Compl. ¶ 89, that alleged concealment is the same conduct that forms the basis of Plaintiffs' underlying claims. Thus, it does not establish fraudulent concealment for purposes of tolling the statutes of limitations. *See In re Park West Galleries, Inc.*, 732 F. Supp. 2d 1181, 1189–90 (W.D. Wash. 2010) (defendants may have engaged in fraudulent

---

[29] The analysis for fraudulent concealment and equitable estoppel is the same because "[i]n the Ninth Circuit, equitable estoppel [is] termed fraudulent concealment." *Miller v. United States*, 2011 WL 43616, at *4 (E.D. Wash. Jan. 6, 2011).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

concealment if they "had stated that they would not assert the statute of limitation as a defense or had promised to reimburse plaintiffs' losses only to renege the day after the limitations period expired").

Further, a plaintiff must plead fraudulent concealment allegations with particularity pursuant to Rule 9(b), which Plaintiffs have failed to do. *See A.T. v. Everett Sch. Dist.*, 2017 WL 4811361, at *5 (W.D. Wash. Oct. 25, 2017). They provide no details about the alleged fraudulent concealment. Instead, they simply make boilerplate allegations. Compl. ¶ 88; *see Kuboyama v. Wells Fargo Bank, NA*, 561 F. App'x 640, 3 (9th Cir. 2014) (affirming rejection of "plaintiffs' equitable tolling argument at the motion to dismiss stage because the contention relies on [c]onclusory allegations and unwarranted inferences"). Accordingly, all of Lowry's claims are barred by the statutes of limitations and should be dismissed.

## B.    Many Other Claims Are Likewise Time-Barred

As detailed above, Plaintiffs' claims fail for a variety of reasons. *See supra* Sections I–V. In the event that any of their non-Washington claims survive, however, many of those claims are time-barred. Plaintiffs' consumer protection claims have statutes of limitations ranging from one to six years.[30] And Plaintiffs' fraudulent concealment claims have statutes of limitations ranging from two to six years.[31]

---

[30] *See* Ariz. Rev. Stat. Ann. § 12-541 (1 year); Cal. Bus. & Prof. Code § 17208 (4 years); Conn. Gen. Stat. § 42-110G(f) (3 years); Idaho Code § 48-619 (2 years); 815 ILCS 505/10a(e) (Illinois) (3 years); Md. Code Ann., Cts. & Jud. Proc. § 5-101 (Maryland) (3 years); Mich. Comp. Laws § 445.903 (later of, six years after the occurrence of the conduct that is the subject of the action; or one year after the last payment); Minn. Stat. Ann. § 541.05, 1(2) (6 years); Mont. Code Ann. § 27-2-203 (2 years); N.H. RSA § 358-A:3(IV-a) (New Hampshire) (3 years); N.M. Stat. Ann. §§ 57-1-12 (New Mexico) (4 years); N.Y. Gen. Bus. Law § 349(h) (3 years); Ohio Rev. Code Ann. § 1345.10(C) (2 years); 42 Pa. C.S.A. §§ 5502 and 5527(b) (Pennsylvania) (6 years); S.C. Code Ann. § 39-5-150 (South Carolina) (3 years); T.C.A. § 47-18-110 (Tennessee) (1 year from discovery of the unlawful act or practice; or 5 years from the transaction giving rise to the claim for relief); Utah Code §§ 13-2-1(2) & 13-2-6(6)(b) (5 years); Wash. Rev. Code. Ann. § 19.86.120 (4 years).

[31] *See* Ala. Code 1975 § 6-2-3 (2 years); Alaska Stat. Ann. § 09.10.070 (2 years); Aiz. Rev. Stat. Ann. § 12–543(3) (3 years); Cal. Civ. Proc. Code § 338(d) (3 years); Fla. Stat § 95.11(3)(i) (4 years); Idaho Code § 5-218(4) (3 years); 735 ILCS 5/13-215 (Illinois) (5 years); 14 M.R.S.A. § 859 (Maine) (6 years); Md. Code Ann., Cts. & Jud. Proc. § 5-101 (Maryland) (3 years); M.G.L. c. 260, § 2A (Massachusetts) (3 years); Mich. Comp. Laws § 600.5813 (6 years); Minn. Stat. Ann. § 541.05, subd. 1(6) (Minnesota) (6 years); Ohio Rev. Code Ann. § 2305.09 (4 years); N.H. RSA § 508:4 (New Hampshire) (3 years); 42 Pa. C.S.A. §§ 5502 and 5524(7) (Pennsylvania) (2 years); S.C. Code Ann. § 15-3-530(7) (South Carolina) (3 years); *Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 487 (S.D.N.Y. 2009) (6 years);  Utah Code § 78B-2-305(3) (3 years); 12 V.S.A. § 511 (Virginia) (6 years).

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 27

The discovery rule does not delay the accrual of any of those statutes of limitations because Plaintiffs could have—and should have—discovered the basis for their claims at least five years ago.  *See, e.g.*, *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) (California's "delayed discovery exception" requires plaintiff to "specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence"); *Alonso v. Weiss*, 2015 WL 7008129, at *1 (N.D. Ill. Nov. 12, 2015) ("Under Illinois's discovery rule, these claims accrue when the plaintiff knows or reasonably should know of his injury and knows that it was wrongfully caused."); *Gary v. Waste Mgmt., Inc.*, 2012 WL 1622231, at *3 (D. Mass. May 8, 2012) ("The discovery rule, tolls a limitations period until a prospective plaintiff learns or should have learned that he has been injured …. [T]he limitations period starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused him injury."); Exhibit C (chart showing applicable discovery rules for each state claim).

Likewise, the statutes of limitations cannot be tolled based on allegations of fraudulent concealment or estoppel because Plaintiffs do not allege any conduct "above and beyond" the alleged wrongdoing that forms the basis of Plaintiffs' claims.  *See, e.g.*, *Kay v. Wells Fargo Co. N.A.*, 2007 WL 2141292 at *5 (N.D. Cal. July 24, 2007) ("Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff suing in time."); *Power Quality & Elec. Sys., Inc. v. BP W. Coast Prods. LLC*, 2017 WL 6375760, at *6 (N.D. Cal. Dec. 12, 2017) ("[T]o establish equitable estoppel a plaintiff must point to some fraudulent concealment, some active conduct by the defendant to prevent the plaintiff from suing in time."); *Hamilton v. O'Connor Chevrolet, Inc.*, 2003 WL 22953337, at *4 (N.D. Ill. Dec. 12, 2003) ("The doctrine of fraudulent concealment tolls the statute of limitations when the plaintiff establishes that the defendant took active steps to prevent the plaintiff from suing in time."); *West v. Kalicmi,* 2008 WL 4542987, at *2 (N.D. Ill. Apr. 29, 2008) (same for equitable estoppel under Illinois law); *Rakes v. United States*, 352 F. Supp. 2d 47, 82 (D. Mass. 2005) ("Fraudulent concealment on the part of the defendant tolls the

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 28

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

statute of limitations only when two elements are met: (1) the defendant, relying on the statute of limitations, acted to conceal facts related to its misconduct and (2) the plaintiff failed to discover the misconduct despite acting with due diligence."); *Harry v. Am. Brokers Conduit*, 2017 WL 129997, at \*6 (D. Mass. Jan. 12, 2017) ("Equitable estoppel may bar a defendant from asserting the statute of limitations as an affirmative defense if the plaintiff can show…that the statements of the defendant lulled the plaintiff into the false belief that it was not necessary to commence action within the statutory period of limitations…." (cleaned up)); Exhibit D (chart showing applicable fraudulent concealment and estoppel standards for each state claim).

Thus, the Court should dismiss Plaintiffs' consumer protection claims under the laws of Arizona, Connecticut, Idaho, Illinois, Maryland, Montana, New Hampshire, New York, Ohio, South Carolina, and Tennessee (Counts V, IX, XIV, XVI, XX, XXVII, XXIX, XXXIII, XXXV, XXXIX, and XLI, respectively), and their fraudulent concealment claims under the laws of Alabama, Alaska, Arizona, California, Idaho, Maryland, Massachusetts, New Hampshire, Pennsylvania, South Carolina, and Utah (Counts III, IV, VI, VIII, XV, XXI, XXII, XXX, XXXVIII, XL, and XLV, respectively), to the extent they are based on purchases predating the applicable statutes of limitations.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' claims in their entirety with prejudice under Rules 12(b)(1), 12(b)(2), and 12(b)(6).

DATED this 20th day of March, 2025.

Respectfully submitted,

*/s/ John Goldmark*
John Goldmark, WSBA #40980
Nicholas Valera, WSBA #54220
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 757-8068
Email: johngoldmark@dwt.com
Email: nickvalera@dwt.com

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 29

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

David J. Lender (*pro hac vice*)
Aaron J. Curtis (*pro hac vice* pending)
Elaina Aquila (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Email: david.lender@weil.com
Email: aaron.curtis@weil.com
Email: elaina.aquila@weil.com

David R. Singh (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Email: david.singh@weil.com

*I certify that this memorandum and the exhibits attached hereto contain 14,915 words, in compliance with the Local Civil Rules and the Stipulated Motion and Order re: Briefing Schedule (Dkt. 11).*

THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS
(Case No. 2:25-CV-00108-JHC) - 30

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax